IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DANIEL LEE SIEBERT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| RICHARD ALLEN, Commissioner, ) | |
| Alabama Department of Corrections, ) | |
| ) | |
| GRANTT CULLIVER, Warden, ) | Case No.: 2:07-CV-295-MEF |
| Holman Correctional Facility, and ) | |
| ) | |
| OTHER UNKNOWN EMPLOYEES ) | |
| AND AGENTS, ) | |
| Alabama Department of Corrections, ) | |
| ) | |
| Individually, and in their ) | |
| official capacities, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

1.   This is a civil rights action brought under 42 U.S.C. § 1983 and the United States Constitution for violations and threatened violations of Plaintiff Daniel Lee Siebert's rights to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution. Mr. Siebert is a death-sentenced Alabama prisoner who seeks declaratory and injunctive relief to prevent the Defendants from using Alabama's current lethal injection procedures to execute him. The Defendants' improper use of anesthesia as a precursor to execution unnecessarily risks infliction of severe pain and

suffering. In addition, because the chemicals used for execution require the proper induction and maintenance of anesthesia, the Defendants' failure to use medically approved procedures and properly trained personnel creates an unacceptable risk that Mr. Siebert will suffer excruciating pain during the course of his execution.

## JURISDICTION

2. Jurisdiction over this matter arises under 42 U.S.C. § 1983, 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), 28 U.S.C. § 2201, and 28 U.S.C. § 2202.

## VENUE

3. Venue is appropriate in the Middle District of Alabama under 28 U.S.C. § 1391(b).

## THE PARTIES

4. Plaintiff Daniel Lee Siebert is a United States citizen and a resident of the State of Alabama. Mr. Siebert is a death-sentenced prisoner currently being held in the custody of the Alabama Department of Corrections ("ADOC") at Holman Correctional Facility in Atmore, Alabama.

5. Defendant Richard Allen is the Commissioner of the ADOC. Defendant Grantt Culliver is the Warden of the Holman Correctional Facility in Atmore, Alabama. Other Unknown Employees and Agents of the ADOC are involved in the development and execution of lethal injections. Plaintiff does not yet know the identity of these persons. All of the Defendants are being sued in their individual and official capacities. The named Defendants are citizens and residents of the State of Alabama.

## JUSTICIABLE CASE OR CONTROVERSY

6. There is a real and justiciable case or controversy between the parties.

7. Plaintiff Daniel Lee Siebert is a death-sentenced prisoner who has been convicted of capital murder in the state courts of Alabama. Mr. Siebert filed a petition for a writ of habeas corpus with the United States Supreme Court which was denied on March 19, 2007.

8. On information and belief, the ADOC has adopted a written and confidential execution protocol for administering capital punishment by lethal injection.

9. Plaintiff challenges the constitutionality of Alabama's lethal injection procedures under 42 U.S.C. § 1983.

10. Upon information and belief, there is no administrative grievance process available at Holman Correctional Facility by which death-sentenced prisoners can challenge the procedures to be employed in their execution.

11. Absent judicial intervention or executive clemency, Mr. Siebert will be executed pursuant to Alabama's lethal injection procedures. There is a justiciable case or controversy regarding the constitutionality of Alabama's lethal injection procedures.

## GENERAL ALLEGATIONS

12. A jury in Lee County, Alabama, found Mr. Siebert guilty of capital murder on June 17, 1987. Mr. Siebert was sentenced to death on August 19, 1987.

13. Mr. Siebert's conviction and sentence were affirmed on direct appeal, and his state post-conviction petition was dismissed as untimely.

14. Mr. Siebert filed for a writ of habeas corpus with the United States District Court for the Middle District of Alabama, which was denied on October 4, 2005. Siebert v. Campbell, 2005 WL 2456032, No. 3:01CV1097-A (M.D. Ala. Oct. 4, 2005). On July 13, 2006, the Eleventh Circuit affirmed the district court's judgment denying Mr. Siebert habeas relief, Siebert v. Allen, 455 F.3d 1269 (11th Cir. 2006), and on October 4, 2006, the Eleventh Circuit denied Mr. Siebert's petition for rehearing and rehearing en banc, Siebert v. Allen, No. 05-16646-P (11th Cir. Oct. 4, 2006) (table decision). Mr. Siebert filed a petition for a writ of certiorari with the United States Supreme Court, which was denied on March 19, 2007. Siebert v. Allen, —U.S.—, 2007 WL 98145 (2007).

15. Under Alabama law, the ADOC is responsible for carrying out executions, all of which take place at Holman Correctional Facility. ALA. CODE 1975 §§ 15-18-82 to -82.1. Alabama law does not prescribe specific drugs, dosages, drug combinations, sequences, or manner of administering lethal chemicals to carry out executions, nor does it prescribe any certification, training, or licensure required of those who participate in either the anesthesia process or the execution.

16. Upon information and belief, Alabama's execution procedures are deemed confidential, and the Defendants will not publicly disclose any details about the procedures involved in carrying out executions in Alabama. Defendants have filed for a protective order in another case challenging Alabama's lethal injection protocols. McNair v. Allen, No. 2:06CV695-WKW, (M.D. Ala.), Doc. 16.

17. Plaintiff asserts upon information and belief that Alabama uses drugs to

achieve first anesthesia, then paralysis, and finally execution by cardiac arrest. The chemicals used include Thiopental, Pavulon, and Potassium Chloride. This combination will likely subject Mr. Siebert to an excruciatingly painful and torturous death.

18.  On information and belief, the first drug, Thiopental (also known as sodium pentothal), is an ultra-short-acting barbiturate that depresses the central nervous system to produce unconsciousness and anesthesia. Thiopental derives its utility from its rapid onset and rapid redistribution through the body at surgical doses. Typically, Thiopental is used in the induction phase of anesthesia to temporarily anesthetize patients for sufficient time to, for example, intubate the trachea.

19.  If it is necessary to maintain a patient in a surgical plane of anesthesia for longer than just a few minutes, physicians typically use drugs that are longer lasting than Thiopental. If Thiopental is used not only to induce, but also to maintain, a surgical plane of anesthesia, a qualified person must be present to continually monitor the patient to ensure that the Thiopental has been correctly administered (repeated intravenous doses are usually required) and is maintaining the patient in a state of unconsciousness.

20.  Next, on information and belief, Defendants administer pancuronium bromide, also referred to as Pavulon, which paralyzes voluntary muscles, including the diaphragm. Pavulon does not affect consciousness or the perception of pain. To the extent that the first chemical, Thiopental, is improperly administered and fails to establish and maintain a sufficient plane of anesthesia, the Pavulon serves only to mask from observers (but not the prisoner) the pain and suffering that would attend a paralyzed diaphragm. In addition, the

paralysis that Pavulon induces ultimately causes an intense, painful death by asphyxiation. Pavulon masks the telltale physical signs that would signal a properly trained observer whether or not a prisoner had been sufficiently anesthetized.

21. Finally, the drug that is used to fatally poison the prisoner is potassium chloride. Potassium chloride disrupts the normal electrical activity of the heart and stops it from pumping blood, thereby causing cardiac arrest. As it travels in the bloodstream from the site of injection towards the hart, potassium chloride activates all the nerve fibers inside the vein, causing a burning sensation as it courses through the body and ravages the internal organs.

22. This causes excruciating pain that is agonizing for a recipient who has not been properly anesthetized. Because of this risk of excruciating pain, the use of potassium chloride requires an appropriate anesthesia protocol prior to its administration to ensure an adequate depth of anesthetic plane. however, anesthetic depth cannot be reliably determined during Alabama executions because Pavulon blocks an accurate assessment by observers by paralyzing all of the muscles which would otherwise move when a prisoner is in excruciating pain. Because no one can reliably assess anesthetic depth using this process (and make appropriate adjustments), the procedures the Defendants use can result in the extreme terror and suffering of conscious suffocation.

23. The American Veterinary Medical Association (AVMA) states that the use of neuromuscular paralyzing drugs, including pancuronium bromide (Pavulon), solely or in conjunction with other drugs, is unacceptable as a method of euthanasia. The AVMA further

states that the use of potassium chloride in a euthanasia protocol requires a surgical plane of anesthesia, which is characterized by loss of consciousness, loss of reflex muscle response, and loss of response to noxious stimuli. The AVMA recommends the use of a longer lasting barbiturate for animal euthanasia than the Thiopental that is used in Alabama executions of death-sentenced prisoners.

24. Defendants do not conduct lethal injections that comport with the appropriate standards of practice for inducing and monitoring anesthesia as a precursor to execution. Nor do Defendants take effective measures to ensure that a prisoner will not suffer a conscious and painful death, constituting cruel and unusual punishment under the current anesthesia procedures.

25. Defendants' anesthesia procedures lack medically necessary safeguards and, therefore, substantially increase the risk that an inmate such as Mr. Siebert will suffer unnecessary severe pain during the course of his execution. For example, on information and belief, there is no standardized time to administer each of the three chemicals. There are no procedures for ensuring that the anesthetic agent is properly flowing into the prisoner, and no procedures for ensuring that the prisoner is properly sedated prior to the administration of other chemicals, as would be required in any medical or veterinary procedure before the administration of a neuromuscular blocking agent (such as pancuronium bromide) or the administration of a painful potassium chloride overdose.

26. Defendants' existing procedures do not require the personnel who perform the tasks in the anesthesia and execution processes to have any minimum qualifications or

expertise. Defendants do not adequately ensure that the individuals responsible for inducing and maintaining unconsciousness are credentialed, licensed, and proficient in the knowledge, skills, and procedures necessary to establish an appropriate plane of anesthesia throughout the lethal injection process, notwithstanding the fact that it is a complex medical procedure requiring expertise to be performed correctly.

27. The absence of medical personnel who are credentialed, licensed, and proficient in the field of anesthesiology and the lack of adequate procedures greatly increases the risk that a prisoner will not receive the necessary amount of anesthetic prior to being paralyzed by the pancuronium bromide and then experiencing the extremely painful internal "burn" of the potassium chloride, and greatly increases the risk that a conscious prisoner will experience excruciating pain and suffering.

28. The lack of adequate standards for administration of chemicals, the lack of qualifications of the personnel involved in the process, and the combination of the drugs the Defendants use as a precursor to an execution, as well as for the execution, create a grave and substantial risk that Mr. Siebert will be conscious throughout the execution process and, as a result, will experience an excruciatingly painful and protracted death.

## CAUSE OF ACTION

**VIOLATION OF THE RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT PURSUANT TO THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

29. Commissioner Allen, Warden Culliver, and Other Unknown Employees and Agents of the Alabama Department of Corrections are acting under color of Alabama law in

undertaking to execute Plaintiff Daniel Lee Siebert by lethal injection using an insufficient, improperly designed and improperly administered procedure for inducing and maintaining anesthesia prior to execution, and by using chemicals that cause severe pain in the process of causing death, such that Plaintiff will unnecessarily suffer an excruciating death in violation of his right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

30. Although it is possible to conduct executions in a constitutionally compliant manner, Defendants have chosen not to do so. While Defendants could select additional or alternative chemicals and retain qualified medical personnel to administer its chosen chemicals to ensure the constitutionality of its lethal injection procedure, Defendants have failed to do so and have acted with deliberate indifference. Defendants' current lethal injection procedures violate evolving standards of decency. See Estelle v. Gamble, 429 U.S. 87, 102 (1976) (noting that the Eighth Amendment requires courts to assess "evolving standards of decency that mark the progress of a maturing society") (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958); Gregg v. Georgia, 428 U.S. 153, 173 (1976) (stating that the Eighth Amendment prohibits infliction of unnecessary and wanton pain).

## PRAYER FOR RELIEF

For these reasons, Plaintiff Daniel Lee Siebert respectfully requests this Court to:

A. Enter a declaratory judgment that Defendants' inadequate anesthesia and execution procedures violate Plaintiff's right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States

Constitution;

B.  Grant injunctive relief to enjoin the Defendants from executing Plaintiff with inadequate anesthesia and execution procedures which violate Plaintiff's right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution;

C.  Grant reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and the laws of the United States, as well as costs of suit; and

D.  Grant any further relief as it deems just and proper.

Dated: April 9, 2007.

Respectfully submitted,

*Anne E. Borelli*
ANNE E. BORELLI
Federal Defenders
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: anne_borelli@fd.org
AL Bar Code: BOR-016

Thomas M. Goggans
Ala. S.J.I.S. GOG001
2030 East Second Street
Montgomery, AL 361056
Phone: 334-834-2511
Fax: (334) 834-2512
E-mail: tgoggans@tgoggans.com

Counsel for Daniel Lee Siebert, Plaintiff

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DANIEL LEE SIEBERT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RICHARD ALLEN, Commissioner, )<br>Alabama Department of Corrections, )<br>)<br>GRANTT CULLIVER, Warden, )<br>Holman Correctional Facility, and )<br>)<br>OTHER UNKNOWN EMPLOYEES )<br>AND AGENTS, )<br>Alabama Department of Corrections, )<br>)<br>Individually, and in their )<br>official capacities, )<br>)<br>Defendants. ) | Case No.: 2:07-CV-295-MEF |

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2007, I served a copy of this complaint by first-class mail on each of the following:

Richard Allen
Commissioner
Alabama Department of Corrections
3001 S. Ripley St.
P.O. Box 301501
Montgomery, AL 36130-1501

Grantt Culliver
Warden
Holman Prison

Holman 3700
Atmore, AL 36503-3700

>Respectfully submitted,
>
>*/s/ Anne E. Borelli*
>ANNE E. BORELLI
>Assistant Federal Defender
>201 Monroe Street, Suite 407
>Montgomery, Alabama 36104
>Phone: (334) 834-2099
>Fax: (334) 834-0353
>E-mail: anne_borelli@fd.org
>AL Bar Code: BOR 016
>
>*/s/*
>Thomas M. Goggans
>Ala. S.J.I.S. GOG001
>2030 East Second Street
>Montgomery, AL 361056
>Phone: 334-834-2511
>Fax: (334) 834-2512
>E-mail: tgoggans@tgoggans.com