**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

DANIEL LEE SIEBERT,                )
                                   )
     Plaintiff,                    )
                                   )
v.                                 ) No. 2:07-cv-295-MEF-WC
                                   )
RICHARD ALLEN, et al.,             )
                                   )
     Defendants.                   )

**DEFENDANTS' REPLY TO SIEBERT'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS**

Daniel Siebert ("Siebert") has been on Alabama's Death Row for over twenty years for the capital murder of Sherri Weathers and her two children, Chad and Joey. Siebert v. State, 555 So. 2d 772, 773-75 (Ala. Crim. App. 1989), aff'd, Ex parte Siebert, 555 So. 2d 780 (Ala. 1989).[1] Siebert exhausted his state and federal appeals when the Supreme Court denied certiorari on March 19, 2007. Siebert v. Allen, 127 S.Ct. 1823 (2007). It was at that point, out of appeals and soon facing execution, that Siebert filed a § 1983 action challenging Alabama's execution procedures.

---

[1] Siebert was sentenced to death for committing another capital offense on the same evening. Siebert v. State, 778 So. 2d 842 (Ala. Crim. App. 1989), aff'd, Ex parte Siebert, 562 So. 2d 600 (Ala. 1990).

See Doc. 1 (filed on April 9, 2007). Because Siebert unjustifiably delayed in filing this lawsuit, the defendants moved to dismiss it on laches and statute-of-limitations grounds. Doc. 13. In addition, the defendants moved to dismiss Siebert's complaint because it failed to state a claim upon which relief can be granted. Id. Siebert filed a response to the defendants' motion to dismiss, see Doc. 19, to which the defendants submit this reply.

## I. SIEBERT'S COMPLAINT SHOULD BE DISMISSED ON STATUTE-OF-LIMITATIONS GROUNDS

In assessing whether Siebert's claim is untimely filed, this Court should keep in mind that the claim here makes a facial challenge against Alabama's execution procedures, not the execution itself. Siebert must establish that Alabama's execution procedures pose an unconstitutional risk of unnecessary and wanton infliction of pain, and that state officials are deliberately indifferent to these risks. Farmer v. Brenan, 511 U.S. 825, 834 (1994); Nelson v. Campbell, 541 U.S. 637, 643-44 (2004). Therefore, much of Siebert's response is irrelevant because it centers on his execution and his characterization of that event as a "future tortious act." Doc. 19 at 11.

A.    **This Court Should Follow The Eleventh Circuit's Opinions Holding That A Triggering Date Begins When A § 1983 Plaintiff Has A Present And Complete Cause of Action**

Siebert argues that the defendants' analogy between challenges to a State's execution procedures and challenges to a State's revised parole protocol is inappropriate. See Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir. 2003)(holding that the plaintiff's § 1983 action was time-barred because his limitation period began to run when the State changed its parole policy and the plaintiff gained knowledge of this fact); Brown v. Georgia Bd. of Pardons and Paroles, 335 F.3d 1259 (11th Cir. 2003)(same); Lesley v. David, 186 Fed. Appx. 926 (11th Cir. 2006)(unpublished opinion)(same). According to Siebert, the analogy is inappropriate because:

> In Lovett, Brown, and Lesley, the adoption of a new policy led to immediate application, which immediately injured the plaintiffs. Injury to Mr. Siebert did not follow immediately upon enactment of Alabama's lethal injection statute or the adoption of the current protocol. Injury to Mr. Siebert will occur only when the then-currently effective protocol is employed to execute him.

Doc. 19 at 14. Siebert's argument is wrong for two reasons.

3

First, Siebert wrongly asserts that "in <u>Lovett</u>, <u>Brown</u>, and <u>Lesley</u>, the adoption of a new policy led to immediate application, which immediately injured the plaintiffs." <u>Id</u>. To the contrary, the States' decisions to change their parole protocol in <u>Lovett</u>, <u>Brown</u>, and <u>Lesley</u> held future – not immediate – implications for the plaintiff inmates. Like Siebert, the plaintiff inmates in those cases were seeking <u>injunctive</u> relief to prevent a future harm (that is, the loss of the potential for an earlier parole); not damages in restitution for a prior harm.

For example, the plaintiff in <u>Lesley</u> was informed in June 1999 that he was eligible for parole in November 2005. <u>See</u> <u>Lesley</u>, 186 Fed. Appx. 926, 2006 WL 1760816, at *1. The next month (July 1999), however, the Florida Parole Commission "instituted new, harsher parole guidelines, resulting in a new parole date of November 2030," and Leslie was informed of the revised parole guidelines in 1999. <u>Id</u>.

Like Siebert, Lesley filed a § 1983 action seeking "a declaratory judgment and injunctive relief" to force Florida to reinstate his previous parole date. <u>See</u> <u>Lesley</u> <u>v. David</u>, No. 405-CV-00343-MP/WCS, 2005 WL 3536276 at *1-2

(N.D. Fla. 2005). Lesley filed this injunctive § 1983 action in September 2005; six years after the protocol change but two months <u>before</u> his originally scheduled (but lost) November 2005 parole reconsideration date. Thus, just like Siebert, Leslie was seeking injunctive relief based on a past protocol change that had future consequences on himself. And, as this Court should do here, the Court of Appeals held (as it did in <u>Lovett</u> and <u>Brown</u>) that Lesley's limitation period began to run when the parole protocol changed and Lesley knew about it – not when the protocol's revision would first affect Lesley.

The second, and more important, reason Siebert wrongly dismisses the defendants' analogy is because he (intentionally) misses the point of an accrual-based system of determining the triggering date for statute of limitations. In § 1983 actions, the triggering date is not determined by a debate over 'actual versus potential' or 'immediate versus future' injuries. It is not based on the definition of 'injury' at all. Instead, the triggering date "occurs when the plaintiff has a complete and present cause of action" and can act on it. <u>Wallace v. Kato</u>, __ U.S. __, 127 S.Ct. 1091, 1095 (2007).

As he defines it in his response, Siebert currently challenges "his execution under the particular protocol in place at the time his execution appears, at least potentially, imminent." Doc. 19 at 14. The "particular protocol," id., to be used during Siebert's imminent execution became effective in July 2002. Obviously, Siebert has a "complete and present cause of action" against that protocol presently, or this case would not be proceeding. Id. And as defendants have consistently argued, Siebert has had a "complete and present cause of action" against the protocol ever since it changed in July 2002. Consequently, the statute of limitation on Siebert's challenge to the protocol began to run in July 2002.

The Eleventh Circuit supported this interpretation in Lovett, Brown, and Lesley. In each of those cases, the Court held that the statute of limitations began to run when the State's parole guidelines changed and the plaintiff inmate learned of the change because, at that point, the plaintiff had a complete and present cause of action. These decisions included equitable causes of action seeking injunctive relief to prevent future harms based on past protocol changes. Thus, Siebert is wrong in

arguing these cases have nothing to say about the application of the statute of limitations in this case. To the contrary, these cases show why defendants, and the Sixth Circuit in <u>Cooey v. Strickland</u>, 479 F.3d 412 (6th Cir. 2007), <u>rehearing denied</u>, __ F.3d __, 2007 WL 1574663 (6th Cir. 2007), are right in claiming that the limitation period begins to run after direct review ends or when lethal injection became the method of execution – not when execution occurs.

### B. The Recent Decision of <u>Panetti v. Quaterman</u> Has No Bearing On The Statute-of-Limitations Issue

Siebert asserts that <u>Cooey</u> is in conflict with the Supreme Court opinion issued in <u>Panetti v. Quarterman</u>, __ U.S. __, 127 S.Ct. 2842, 2007 WL 1836653 (2007). Doc. 19 at 15-16. In <u>Panetti</u>, the Court ruled, among other things, that the habeas petitioner's claim of competency to be executed was not barred by the prohibition against successive habeas petitions, see 28 U.S.C. § 2244, given that such a claim is not ripe until the petitioner's date of execution was set and there was the possibility that petitioner's mental capacity had recently further diminished. <u>Id.</u> at *11. The distinctions here should be obvious. First, a competency to be executed claim is

7

naturally based upon an inmate's present competency, thus such a claim is only ripe when execution is imminent. Second, _Panetti_ deals with a claim that can be raised in a habeas petition and not a claim that only can be raised in a § 1983 action.

The Eighth Circuit, in reversing a grant of a stay of execution, recently addressed the effect of _Panetti_ in considering the equities in a lethal-injection challenge. _Nooner v. Norris_, __ F.3d __, 2007 WL 1964649 (8th Cir. July 9, 2007). In particular, the Court ruled as follows:

> Nor do we believe that the Supreme Court's recent decision in _Panetti v. Quarterman_, No. 06-6407, 2007 WL 1836653 (June 28, 2007), is applicable to Mr. Davis's case. _Panetti_ deals with mental competence to be executed, a condition of the mind which may not manifest itself until so late a time that a stay becomes necessary in order to evaluate properly the asserted mental deficiency. That cannot be said about an execution protocol which, as we have pointed out, has been long known and unchanged in its implementation for years, thereby permitting an evaluation of its constitutionality without the necessity of the issuance, in effect, of an eleventh hour stay.

_Id._ at *4. For the foregoing reasons, _Panetti_ has no relevance on the defendants' statute of limitations arguments.

## II.  THIS COURT SHOULD DISMISS SIEBERT'S § 1983 LAWSUIT ON LACHES GROUNDS

Siebert's claims are also due to be dismissed based on the doctrine of laches.  This Court should follow yesterday's decision from the Eleventh Circuit that ruled a death-row inmate's lethal-injection lawsuit was properly dismissed because it was filed with unjustifiable delay. Grayson v. Allen, 07-12364-P (11th Cir. July 16, 2007)(slip op.)  In that case, the Court ruled that "[g]iven the strong presumption against the grant of dilatory equitable relief, we conclude that the district court did not abuse its discretion in dismissing Grayson's § 1983 action due to his unnecessary delay."  Grayson at 19 (slip op.)

### A.  This Court should follow Grayson

This Court should follow Grayson v. Allen, 2007 WL 1491009 (M.D. Ala. May 21, 2007), aff'd, Grayson v. Allen, 07-12364 (11th Cir. July 16, 2007)(slip op.), and dismiss Siebert's § 1983 action on laches grounds.  This case lines up almost perfectly with Grayson.  Both inmates unjustifiably delayed in filing their § 1983 lethal-injection challenges.  Grayson filed his lethal-injection lawsuit after his federal post-conviction appeal was denied and after he litigated a prior § 1983 action requesting DNA

testing.  Siebert also filed his § 1983 lethal-injection challenge after the conclusion of his federal post-conviction appeals.

Just like Grayson, Siebert requests injunctive relief in his late-filed lethal-injection challenge.  In affirming the dismissal of Grayson's lethal-injection lawsuit, the Eleventh Circuit set forth the applicable law that demonstrates such challenges should be dismissed if they are filed too late:

> Injunctive relief is an equitable remedy that is not available as a matter of right.  In the § 1983 suit by a death row inmate in Hill v. McDonough, __ U.S. __, 126 S.Ct. 2096 (2006), the Supreme Court noted that a number of federal courts "have invoked their equitable powers to dismiss [§ 1983] suits they saw as speculative or filed too late in the day."  Id. at __, 126 S.Ct. at 2104 (citing Hicks v. Taft, 431 F.3d 916 (6th Cir. 2005); White v. Johnson, 429 F.3d 572 (5th Cir. 2005); Boyd v. Beck, 404 F.Supp. 2d 879 (E.D.N.C. 2005)); see also Rutherford v. Crosby (Rutherford I), 438 F.3d 1087, 1091-92 (11th Cir.)(per curiam)(collecting cases), rev'd on other grounds, Rutherford v. McDonough, __ U.S. __, 126 S.Ct. 2915 (2006).  While the Supreme Court did not pass judgment on these § 1983 cases, it recognized the "significant" problem created by such delay and stated that "federal courts can and should protect States from dilatory

or speculative suits…." <u>Hill</u>, __ U.S.
__, 126 S.Ct. at 2104.

Additionally, the equitable
principles at issue when inmates facing
imminent execution delay in raising their
§ 1983 method-of-execution challenges are
equally applicable to requests for both
stays and injunctive relief. <u>See
Rutherford v. McDonough</u> (<u>Rutherford II</u>),
466 F.3d 970, 976 (11th Cir.)(affirming
<u>dismissal</u> of § 1983 suit challenging
lethal injection based on petitioner's
unnecessary delay in filing suit), <u>cert.
denied</u>, __ U.S. __, 127 S.Ct. 465 (2006);
<u>Rutherford I</u>, 438 F.3d at 1092 ("[W]here
petitioner's scheduled execution is
imminent, there is no practical
difference between denying a stay on
equitable grounds and denying injunctive
relief on equitable grounds in a §
lawsuit."). Accordingly, courts
considering dismissal of a dilatory's §
1983 suit seeking injunctive relief
should recognize the 'strong equitable
presumption against the grant of a stay
where a claim could have been brought at
such a time as to allow consideration of
the merits without requiring entry of a
stay.'" <u>Rutherford II</u>, 466 F.3d at 974
(quoting <u>Hill</u>, __ U.S. at __, 126 S.Ct.
at 2104 (quotation marks and citation
omitted)); <u>see also</u> <u>Nelson v. Campbell</u>,
541 U.S. 637, 649-50, 124 S.Ct. 2117,
2126 (2004)(requiring district courts to
consider whether an inmate unnecessarily
delayed in bringing the claim before
granting a stay "[g]iven the State's
significant interest in enforcing its
criminal judgments"); <u>Gomez v.
U.S.Dist.Ct. for N.Dist. of Cal.</u>, 503
U.S. 653, 654, 112 S.Ct. 1652, 1653
(1992)(per curiam)(noting that "last-
minute attempts to manipulate the

> judicial process" may be a ground for
> denying a stay).

<u>Grayson</u> at 7-9 (slip op.)  Just as Grayson did, Siebert filed his § 1983 lawsuit at the conclusion of his federal habeas appeals and when execution of his duly-adjudicated judgment is imminent.

In that situation, the Eleventh Circuit ruled that it obvious that the inmate's motivation in filing a lethal-injection is to delay his execution rather than to seek an alteration in the State's execution protocol.  In particular, the Eleventh Circuit in <u>Grayson</u> stated:

> As emphasized earlier, Grayson did not file this second § 1983 action until he again faced the clear possibility that the Alabama Supreme Court would imminently set his execution date.  <u>See</u> <u>Jones</u>, 485 F.3d at 639-40.  If Grayson truly had intended to challenge Alabama's lethal injection protocol, he would not have deliberately waited to file suit until a decision on the merits would be impossible without entry of a stay or an expedited litigation schedule.  [Footnote omitted.]  <u>See</u> <u>Rutherford II</u>, 466 F.3d at 974.  We thus conclude that the district court properly found that Grayson offered no justification for why he could not have brought this § 1983 action earlier, and that Grayson's dilatory filing of this suit 'leave little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in

which it is carried out.'"   Jones, 485
F.3d at 640(citation omitted).

Grayson at 17-18 (slip op.)   Accordingly, because Siebert

delayed filing his lethal-injection after his federal post-

conviction appeals concluded and when execution is imminent,

his lawsuit should be dismissed under the authority of

Grayson.

Regarding the prejudice element under laches, the State

is prejudiced by Siebert's late filing because "the State's

strong interest in meting out a sentence of death in a

timely manner acquires 'an added moral dimension' when

post-trial proceedings have run their course."   Grayson,

2007 WL 1491009 at *9 (quoting Calderon v. Thompson, 523

U.S. 538, 556 (1998)).   Indeed, the State, on April 17,

2007, moved the Alabama Supreme Court to set Siebert's

execution and expects that Court to set such a date in the

near future.   See Jones v. Allen, 485 F.3d 635, 639 n.2

(Apr. 27, 2007)("As a matter of common sense, completion of

collateral review eliminates the last possible obstacle to

execution, and Jones should have foreseen that the

execution date would likely be set promptly upon completion

of collateral review.").   Siebert's late-filed claim will

impede the State from carrying out its duly-adjudicated

judgment if Siebert litigates this lawsuit, including any resultant appeal. See Grayson, 2007 WL 1491009 at *11 ("As noted above, full adjudication entails adequate time to conduct discovery, depose experts, engage in appropriate motion practice, litigate on the merits, and complete any appeals."). Because this lawsuit cannot be fully adjudicated without a court having to grant a stay, the State has demonstrated prejudice from Siebert's late filing.

**B.    Grayson Is Not Distinguishable**

Siebert asserts that his case can be distinguished from Grayson for three reasons. Doc. 19 at 31-32. The defendants address these in turn. First, Siebert contends that Grayson is distinguishable because the Court there was dealing "with the necessity of a stay of execution." Doc. 19 at 31. However, the Grayson Court, even though it noted the "unique circumstances" presented by that case, did not mention Grayson's looming execution as a reason to dismiss the case on laches grounds. Grayson, 2007 WL 1491009 at *11 (listing the "unique circumstances"). Siebert next contends Grayson is distinguishable because it is in a different procedural posture. Doc. 19 at 32. The court in

14

Grayson ruled on a motion for summary judgment as opposed to here where this Court is considering a motion to dismiss. This is a distinction without a difference because the defendants here do not support their motion to dismiss with any evidentiary materials.[2] Even assuming the facts alleged in Siebert's complaint to be true, they are due to be dismissed because they were asserted too late – after the end of federal habeas review, days before the State moved for an execution date, and years after Siebert knew or should have known of his claim.

Finally, Siebert contends his case is distinguishable because Grayson had litigated a § 1983 action prior to filing his § 1983 lethal-injection action. Doc. 19 at 32. The court in Grayson, contrary to Siebert's contention, did not find Grayson's lethal-injection challenge dilatory solely on the grounds that Grayson had litigated a previous § 1983 action. In fact, Grayson merely referenced the previous litigation in finding that the lethal-injection action, just like Grayson's § 1983 action seeking DNA

---

[2] Even though Grayson does refer to evidentiary materials, see Grayson at n.11, n.14, and n.15, those references do not appear to be essential to the court's ruling that the doctrine of laches applied to bar the lawsuit. If this Court chooses to consider evidentiary materials, it may treat defendants' motion as one for summary judgment. This motion should be granted either way.

testing, was dilatory because it could have been filed sooner. <u>Grayson</u>, 2007 WL 1491009 at *6. Specifically, the court stated: "The same observations apply here; this action could have been filed sooner, before Grayson was in the shadow of an execution date." <u>Id.</u> Similarly, Siebert could have filed his action sooner and not initiated it when he is the shadow of his soon to be scheduled execution date. Siebert's attempt to create a distinction on the basis that Grayson had litigated a previous § 1983 action before initiating his present lethal-injection challenge should be rejected.

### C. Siebert's Excuses For Not Raising His Lethal-Injection Challenge Sooner Should Be Rejected

Siebert offers numerous excuses why he filed his § 1983 lethal-injection challenge in April 2007 even though Alabama changed its default method of execution to lethal injection in July 2002. The defendants address each in turn.

#### 1. The Eleventh Circuit has flatly rejected the contention that method-of-execution challenges are ripe only after the conclusion of federal habeas review

Siebert contends he should not have to file a § 1983 lethal-injection action until after his federal post-

16

conviction appeals had come to an end. Specifically, "Siebert could not reasonably bring suit respecting the Defendants' employment of the State of Alabama's lethal injection protocol against him until all other avenues of review were shut off and likelihood of his execution became 'immediate.'" Doc. 19 at 25. Siebert thus believes he is entitled to a fourth layer of appeal after his federal habeas post-conviction proceedings have concluded.

Siebert's contention that his lethal-injection challenge is premature and unripe until the conclusion of federal habeas review should be rejected. Because a § 1983 lawsuit and federal habeas corpus petition are mutually exclusive causes of action, there is no impediment to filing a § 1983 action while state or federal appeals are actively being pursued. See Nelson v. Campbell, 541 U.S. 637, 643 (2004); Hutcherson v. Riley, 468 F.3d 750, 754 (11th Cir. Oct. 24, 2006). Issues that are not cognizable in habeas corpus are cognizable under § 1983. Parallel litigation thus poses no difficulty.

In the context of addressing a recent application for a stay of execution, the Eleventh Circuit addressed inmates who choose to file their lethal-injection challenges only

at the conclusion of federal habeas review.  <u>Jones v. Allen</u>, 485 F.3d 635 (11th Cir. Apr. 27, 2007).[3]  The Eleventh Circuit concluded, among other things, that such a strategy is a risky one that can result in a stay of execution being denied because there is not sufficient time to consider the § 1983 lawsuit:

> We agree with the district court's finding of fact that one of the most naturally foreseeable risks facing an inmate who waits to file his method-of-execution challenge until many months after his federal habeas petition has been denied on appeal is that an execution date will be set during the pendency of the proceedings, thus necessitating the entry of a stay if full adjudication and an appeal are to be had. This risk is particularly foreseeable in Alabama, where the Alabama Supreme Court is authorized to enter an order fixing an inmate's date of execution 'at the appropriate time.'  Ala. R. App. P. 8(d)('The supreme court <u>shall</u> <u>at</u> <u>the</u> <u>appropriate</u> <u>time</u> enter an order fixing a date of execution.' (emphasis added in <u>Jones</u>)  It is common practice in Alabama for the State to seek an execution date soon after the Supreme Court denied *certiorari* review of an inmate's federal habeas petition.  As a matter of common

---

[3] Although <u>Jones</u> dealt with a request for a stay, the Eleventh Circuit has specified that equitable principles in the context of a stay of execution are equally applicable to all types of equitable relief (Siebert has requested equitable relief here) sought by inmates facing execution.  <u>Rutherford v. Crosby</u>, 438 F.3d 1087, 1092 n.3 (11th Cir. 2006); <u>see also</u> <u>Grayson</u> at 8 (slip op.)("Additionally, the equitable principles at issue when inmates facing imminent execution delay in raising their § 1983 method-of-execution challenges are equally applicable to requests for both stays and injunctive relief.").

sense, completion of collateral review eliminates the last possible obstacle to execution, and Jones should have foreseen that the execution date would likely be set promptly upon completion of collateral review.

\*    \*    \*    \*    \*    \*    \*    \*    \*

Waiting to file suit until the Supreme Court has denied *certiorari* review of an inmate's federal habeas petition, or, as Jones did, waiting until a petition for *certiorari* has been pending for over three months, is simply too late to avoid the inevitable need for a stay of execution. See Harris v. Johnson, 376 F.3d 414, 417 (5th Cir. 2004)("The brief window of time between the denial of certiorari and the state's chosen execution date … is an insufficient period in which to serve a complaint, conduct discovery, depose experts, and litigate the issue on the merits.").

\*    \*    \*    \*    \*    \*    \*    \*    \*

Jones says that he did not pursue his method-of-execution claim any earlier than November 2006 because it was not ripe for consideration before that time. Jones argues that ripeness occurred only when there was a 'strong possibility' that he 'actually faced execution' by lethal injection. We need not determine with specificity when Jones's claim became ripe. But see Gomez v. U.S. Dist. Ct. for N.D. Cal., 503 U.S. 653, 654, 112 S.Ct. 1652, 1653, 118 L.Ed. 2d 293 (1992)("This claim [a challenge to lethal injection] could have been brought more than a decade ago.'). However, we can say in any event that, even under Jones's

> definition of ripeness, there was far more than a 'strong possibility' that Jones would be put to death by lethal injection by January 2006 (when we denied relief on Jones's habeas petition). <u>See Harris</u>, 376 F.3d at 418 (requiring method-of-execution claim to be pursued even when death by lethal injection is merely 'an event <u>reasonably</u> <u>likely</u> to occur in the future")(emphasis in original). Indeed, by January 2006, given the extremely small chance of securing *certiorari* review in the Supreme Court, it was all but guaranteed that Jones would die by lethal injection. Yet Jones has offered no reason at all for his decision to wait nearly ten additional months to file this suit.

<u>Jones</u>, 485 F.3d at 639 n.2. Thus, as demonstrated above, Siebert's contention that his claim is premature or unripe because of his pending federal habeas appeal has been flatly rejected by the Eleventh Circuit.

Furthermore, Siebert's contention here ignores that "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a sentence." <u>Hill</u>, 126 S.Ct. at 2104. In other words, after a death-row inmate has exhausted his appeals and his sentence has been duly adjudicated, it is then the appropriate time for the State to position itself to carry out that judgment. Thus, the State of Alabama here moved the Alabama Supreme Court to set Siebert's execution date

as soon as possible after the conclusion of Siebert's federal habeas appeals, when the automatic-stay provisions under Rule 8 of the Alabama Rules of Appellate Procedure no longer applied to Siebert.  See Ala. R. App. P. 8(d) (Stays in Criminal Cases").

The following cases, which also address the issue of unjustifiable delay in filing a lethal-injection challenge in the context of whether or not to grant a stay, have held likewise concerning inmates who file § 1983 actions long after they could have originally been brought.  See Hicks v. Taft, 431 F.3d 916, 916-917 (6th Cir. 2005) (rejecting motion for stay of execution in § 1983 lethal injection challenge where the action was filed on the "eve of execution" and discussing Dennis v. Taft, where stay was denied even though the § 1983 was filed four months prior to the scheduled execution date); Harris v. Johnson, 376 F.3d 414 (5th Cir. 2004) (stay denied in § 1983 case filed ten weeks before scheduled execution date); Nooner v. Norris, __ F.3d __, 2007 WL 1964649 (8th Cir. July 9, 2007)(ruling there is no impediment to filing a § 1983 action challenge after direct review becomes final).  These decisions do not necessarily turn on the fact of the exact

moment that a § 1983 action becomes ripe; instead they uniformly turn on whether the inmate could have brought the suit at an earlier time, far removed from when the State could have sought an execution date. See e.g., Rutherford, 466 F.3d at 974-976; Hill, 464 F.3d at 1259 ("[T]he fact remains that, during the pendency of his various collateral challenges, Florida had considered the same type of claim upon which Hill now seeks relief.  In light of this context, Hill cannot claim that it was impossible for him to initiate his federal suit any earlier."); Harris, 376 F.3d at 418 ("For the entirety of his eighteen years on death row, Harris knew of the state's intention to execute him in this manner.  It was during that period-in which the execution was not so much an imminent or impending danger as it was an event reasonably likely to occur in the future-that he needed to file his challenge.  By waiting as long as he did, Harris leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out.").  Because Siebert has wholly failed to show that he could not have brought this suit earlier, his conclusory argument that he delayed filing

because his lawsuit was premature or unripe should be rejected.

>        **2.     Siebert's unjustifiable delay cannot be blamed on the lack of knowledge about Alabama's execution protocol**

Siebert contends he delayed the filing of his lethal-injection challenge because the Alabama Department of Corrections keeps its execution protocol confidential. Doc. 19 at 27-28. The Eleventh Circuit rejected a similar argument in evaluating the complaint filed in Jones, which is virtually identical to the complaint filed here by Siebert. Jones, 485 F.3d at 640 n.3. The Jones Court ruled that any alleged lack of knowledge of the protocol offered no justifiable excuse for delay especially when the crux of the complaint centered on the three-drug cocktail, which is used by virtually every other State that carries out executions. Id. In fact, despite his alleged lack of knowledge of the execution protocol, Siebert was able to articulate in his complaint specific allegations concerning the Alabama's execution procedures. See Doc. 1; see also Jones at 640 n.3 ("Any such assertion [that he could not file a lawsuit because Alabama's execution protocol is confidential] is belied by his complaint, which alleges

'upon information and belief' that the State uses 'Thiopental, Pavulon, and Potassium Chloride … to achieve first anesthesia, then paralysis, and finally … cardiac arrest.'"). "Thus, [Siebert] knew of the basis of his claim before he filed his complaint." Id.

The Eleventh Circuit in <u>Grayson</u> also rejected "lack of knowledge" about the execution procedures as a justifiable excuse for a late-filed claim. In particular, the Court stated:

> Grayson claims that he had no knowledge about the execution team's training and the procedure for preparing the drugs and syringes, administering the drugs, and monitoring the execution. However, Grayson makes no claim that he had any such knowledge when he filed his second § 1983 complaint in November 2006. If Grayson was ignorant about these facts yet was able to file a second § 1983 complaint in November 2006 alleging improper training and procedures, there is no reason why Grayson could not have filed a similar § 1983 complaint based "upon information and belief" months, if not years, earlier.

<u>Grayson</u> at 12 (slip op.) Accordingly, Siebert could have filed his cookie-cutter complaint years ago.

Siebert also contends that <u>Cooey v. Strickland</u>, 479 F.3d 412 (6th Cir. 2007), supports his contention that lethal-injection challenge can be raised only when the

inmate has knowledge of that State's execution protocol. Doc. 19 at 28 n. 17. In fact, the Cooey Court expressly rejected that contention, ruling that a cause of action accrues for statute-of-limitations purposes at the later of two points: (1) the conclusion of direct appeal, or (2) when the State adopted lethal injection. Cooey, 479 F.3d at 421-22. Specifically, the Cooey Court stated that: "Actual knowledge … is not the appropriate measure; the test is whether he knew or should have known based upon reasonable inquiry, and could have filed suit and obtained relief." Cooey, 479 F.3d at 422. Furthermore, as the Grayson Court held, "[n]o change in the law, or the protocol, or the level of [Siebert's] knowledge of the procedure prompted the timing of [Siebert's] suit." Grayson at *9.

Finally, to the extent that Alabama keeps its execution protocol confidential, that fact would seem to provide motivation for a death-row inmate to file suit sooner rather than later and to learn the allegedly unknown details through the discovery process. In that instance, the lawsuit can be litigated without the time pressures associated with a late-filed claim such as Siebert's. As

the <u>Grayson</u> Court ruled, "[i]f Grayson's sole motivation in bringing the present action were simply to ensure a constitutionally appropriate safeguard against cruel and unusual pain, other courts have litigated the same or similar issues and have provided justifications for doing so in a timely fashion." <u>Grayson</u>, 2007 WL 1491009 at *8.

In conclusion, Siebert did not delay filing his lethal-injection challenge due to his alleged lack of knowledge regarding Alabama's execution procedures.

### 3. Siebert could have raised a lethal-injection claim in his habeas petition

Siebert could have raised a lethal-injection claim in his habeas petition when Alabama adopted lethal injection as its default method of execution in 2002. Siebert disingenuously contends that he could not have raised a lethal-injection claim in his habeas petition because such a claim, which challenges conditions of confinement, should be raised in a § 1983 lawsuit. See Doc. 19 at 30-31. However, in 2002, when Siebert's habeas petition was pending, method-of-execution claims were properly raised in a federal habeas petition. <u>In re Provenzano</u>, 215 F.3d 1233, 1235-36 (11th Cir. 2000). Moreover, the Eleventh Circuit, in ruling that an inmate unjustifiably delayed in

filing his lethal-injection challenge, emphasized that such claims could have been raised in a federal habeas petition. See Jones, 485 F.3d at 639 ("When the Alabama Legislature changed the method of execution to lethal injection, Jones could have then amended his habeas petition to challenge lethal injection as well.").

Of course, in May 2004, the manner of raising such challenges changed when Nelson, 541 U.S. at 650, "opened the door to § 1983 actions challenging lethal injection." Grayson, 2007 WL 1491009 at *7. "Hill seized the opportunity first, but the opportunity was open to all, including [Siebert.]" Id. at *7. Despite the change in the manner of raising such challenges, Siebert filed his § 1983 lawsuit three years after Nelson and almost a year after Hill.

Thus, Siebert could have raised a lethal-injection challenge in either his federal habeas petition or a timely-filed § 1983 suit. As the Grayson Court held, "[t]hese are windows of time that, if used wisely by Grayson, could have avoided the current dilemma. If Grayson faces a risk, it is a risk he assumed by unwisely sleeping on his rights." Grayson, 2007 WL 1491009 at *7.

27

In conclusion, this Court should follow District Court's and the Eleventh Circuit's opinion in <u>Grayson</u> and dismiss Siebert' lawsuit.

## III. CONCLUSION

For the reasons stated in this reply and in the defendants' motion to dismiss, Siebert's § 1983 lawsuit should be dismissed.

Respectfully submitted,

TROY KING
ALABAMA ATTORNEY GENERAL


/s/  J. Clayton Crenshaw
J. CLAYTON CRENSHAW (CRE007)
ASSISTANT ATTORNEY GENERAL

## CERTIFICATE OF SERVICE

This is to certify that on the 17th day of July, 2007, a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will electronically send a copy of the same to the following: **Anne E. Borelli and Thomas M. Goggans.**


/s/  J. Clayton Crenshaw
J. CLAYTON CRENSHAW
ASSISTANT ATTORNEY GENERAL

OF COUNSEL:
Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7300 Office
(334) 353-3637 Fax
Email: ccrenshaw@ago.state.al.us