IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DANIEL LEE SIEBERT, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:07-cv-295-MEF-WC |
| | ) | |
| RICHARD ALLEN, et al, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

On April 9, 2007, Daniel Lee Siebert ("Siebert"), an Alabama death row inmate now

scheduled for execution on October 25, 2007, filed this civil rights action in which he seeks

declaratory and injunctive relief aimed at stopping the State of Alabama from executing him

using its current lethal injection protocol. Siebert alleges that Alabama's method of

execution violates his rights under the Eighth and Fourteenth Amendment of the United

States Constitution and brings suit pursuant to the Civil Rights Act of 1871, 42 U.S.C. §

1983. ("§ 1983"). This cause is now before the Court on the Defendants' Motion to Dismiss

(Doc. # 13) the Complaint and on Defendants' Motion to Dismiss Siebert's Amended

Complaint (Doc. # 24). The Court has carefully considered the arguments in support of and

in opposition to these motions and the applicable law. For the reasons set forth in this

Memorandum Opinion and Order, the Court finds that the Motion to Dismiss is due to be

DENIED as MOOT because the Complaint to which it is directed has been supplanted by the

filing of the Amended Complaint.   Additionally, for the reasons given below, the Motion to

Dismiss Siebert's Amended Complaint is due to be GRANTED in part and DENIED in part.

## JURISDICTION AND VENUE

Due to the nature of Siebert's claims, this Court has subject matter jurisdiction over

this action pursuant to 28 U.S.C. §§ 1331 and 1343.   Based on the allegations of the

Complaint, the Court further finds that venue is appropriate and that both defendants are

subject to personal jurisdiction in this Court.

## BACKGROUND, FACTUAL ALLEGATIONS, AND PROCEDURAL HISTORY

On June 17, 1987, a jury in Lee County, Alabama[1] convicted Siebert of the February

19, 1986 murder of Sherri Weathers ("Weathers") and her two young sons.   *Siebert v. State,*

555 So. 2d 772, 773-75, 779 (Ala. Cr. App. 1989), *aff'd by Ex parte Siebert*, 555 So. 2d 780

(Ala. 1989).[2]   The details of Siebert's crime and of his confession are set forth in the opinion

of the Alabama Court of Criminal Appeals affirming Siebert's conviction and death sentence.

*Siebert v. State,* 555 So. 2d at 773-75.   On August 28, 1997, Siebert was sentenced to death

for these crimes.   *Id*. at 779.[3]   Siebert pursued an unsuccessful direct appeal of his conviction

---

[1]   Because of pretrial publicity in Talladega County, Alabama where the murders
occurred, Siebert filed a motion for change of venue which resulted the case against him for
the murder of Sherri Weathers and her children being transferred for trial in Lee County,
Alabama.

[2]   *See also* Compl. at ¶ 12.

[3]   *See also* Compl. at ¶ 12.

2

and sentence.[4]  *See* Compl. at ¶ 13.

After the completion of his unsuccessful direct appeal, Siebert pursued an equally unsuccessful collateral attack in the state court system.  On June 30, 1992, Siebert filed a petition for post-conviction relief pursuant to Alabama Rule of Criminal Procedure 32 in the court of his conviction. *Siebert v. State,* 778 So. 2d 842, 846 (Ala. Cr. App. 1999).  After a lengthy hearing, the Circuit Court denied Williams' Rule 32 petition.  *Id.*  Siebert unsuccessfully appealed the denial of his Rule 32 petition.[5]  *See* Compl. at ¶ 13.

After exhausted his available legal challenges in the state courts of Alabama.  On September 14, 2001, Siebert filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2254 in the United States District Court for the Middle District of Alabama.  Initially, the district court dismissed this petition on the grounds that it was barred by the statute of limitations. *Siebert v. Haley*, 193 F. Supp. 2d 1260 (M.D. Ala. 2002) (Albritton, J.).  The Eleventh Circuit Court of Appeals reversed this decision was reversed. *Siebert v. Campbell*, 334 F.3d 1018 (11th Cir. 2003).  After remand, the district court dismissed Siebert's petition

---

[4]  On April 28, 1989, the Alabama Court of Criminal Appeals affirmed Siebert's conviction and sentence. *Siebert v. State*, 555 So. 2d 772 (Ala. Crim. App. 1989).  It later denied his petition for rehearing.  On December 15, 1989, the Alabama Supreme Court affirmed his conviction and sentence. *Ex parte Siebert*, 555 So. 2d 780 (Ala. 1989).  On June 28, 1990, the United States Supreme Court denied Siebert's petition for writ of certiorari. *Siebert v. Alabama,* 497 U.S. 1032 (1990).

[5]  On December 30, 1999, the Alabama Court of Criminal Appeals affirmed denial of Rule 32 petition. *Siebert v. State*, 778 So. 2d 842 (Ala. Crim. App. 1999).  On September 15, 2000, the Alabama Supreme Court denied Siebert's petition for writ of certiorari on Rule 32 petition. *Ex parte Siebert*, 778 So. 2d 857 (Ala. 2000).

because it found that his claims were procedurally defaulted, and on appeal this ruling was affirmed. *Siebert v. Allen*, 455 F.3d 1269 (11th Cir. 2006). On March 19, 2007, the United States Supreme Court denied certiorari on Siebert's federal habeas challenge. *Siebert v. Allen,* 127 S. Ct. 1823 (2007).[6]

On July 1, 2002, the State of Alabama changed its primary method of execution from electrocution to lethal injection and gave death row inmates thirty days from the date on which the Alabama Supreme Court's affirmed their death sentences to elect electrocution instead. *See Grayson v. Allen*, 491 F.3d 1318, 1320 (11th Cir. 2007); Ala. Code § 15-18-82.1. It is undisputed that Siebert did not elect electrocution and by operation of law must be executed by lethal injection.

On April 9, 2007, Siebert filed this lawsuit challenging the methods and procedures the State of Alabama employs in carrying out executions by lethal injection. Siebert names two defendants: Richard Allen, the Commissioner of the Alabama Department of Corrections, and Grantt Culliver, the Warden of Holman Correctional Facility (collectively referred to as "Defendants").[7] Compl. at ¶ 5. Siebert's claims, as articulated in his initial

---

[6] *See also* Compl. at ¶ 14.

[7] The Complaint also purports to bring claims against other unknown employees and agents of the Alabama Department of Corrections involved in the development and execution of lethal injections. Compl. at ¶ 5. Of course, there is no fictitious party practice in federal courts. *See, e.g.,* Fed. R. Civ. P. 10(a); *New v. Sports & Recreation, Inc.,* 114 F.3d 1092, 1094 n.1 (11th Cir. 1997); *Harris v. Palm Harbor Homes, Inc.,* 198 F. Supp. 2d 1303, 1304 n.6 (M.D. Ala. 2002); *Edwards v. Alabama Dep't of Corr.,* 81 F. Supp. 2d 1242, 1257 (M.D. Ala. 2000). Accordingly, there are only two proper party defendants to this lawsuit.

Complaint, are best characterized as a general challenge to the execution process. Compl. at ¶ 1. Siebert alleges that the State of Alabama conducts executions by lethal injection using Thiopental[8], Pavulon[9], and potassium chloride to anesthetize, paralyze, and induce cardiac arrest. Compl. at ¶¶ 17-21. Siebert further alleges that the three drug protocol Alabama uses in lethal injection executions is likely to cause him severe pain and suffering. Compl. at ¶¶ 1, 20, 22, 24-25, 28. In addition to challenging the actual drugs Alabama uses in executions, Siebert alleges that Alabama's anesthesia procedures lack medically necessary safeguards and increase the risk that he will suffer unnecessary pain. Compl. at ¶¶ 8, 9 & 15-28. He also challenges the qualifications of those tasked with injecting the drugs and the lack of the involvement of properly licensed and credentialed medical personnel. *Id.*[10]

Invoking this Court's equitable powers, Siebert seeks an injunction barring Defendants from executing him with inadequate anesthesia and execution procedures that violate the Eighth Amendment prohibition against cruel and unusual punishment. He also seeks a declaratory judgment that Defendants' inadequate anesthesia and execution procedures violate that prohibition. Finally, he seeks an award of attorney's fees pursuant

---

[8] This drug is also known as sodium pentothal. Compl. at ¶ 9.

[9] This drug is also known as pancuronium bromide. Compl. at ¶ 11.

[10] Substantively, Siebert's original challenge to the lethal injection protocol believed to be used by the State of Alabama is nearly identical to the challenged raised by several other death row litigants including the plaintiffs in *Grayson* and *Williams*. *See generally Williams v. Allen*, No. 07-13638, 2007 WL 2368028 at *1 (11th Cir. Aug. 21, 2007); *Grayson v. Allen,* 491 F.3d 1318 (11th Cir. 2007), *cert. denied*, 2007 WL 2086662 (July 26, 2007).

5

to 42 U.S.C. § 1988 and the costs of this lawsuit.

Consistent with its practice of asking the Supreme Court of Alabama to set execution dates for death-sentenced prisoners shortly after the United States Supreme Court denies certiorari review of such prisoners' federal habeas petitions,[11] the State of Alabama filed a motion asking the Supreme Court of Alabama to set an execution date for Siebert. *See* Ex. A to Doc. # 13. This request was filed on April 17, 2007. *Id.* Siebert filed an opposition to the motion. *See* Ex. 1 to Doc. # 19.

Defendants filed a motion seeking dismissal of the Complaint. *See* Doc. # 13. Defendants argued that the Complaint fails to state a claim for which relief can be granted. Defendants also argued that the statute of limitations on the claims had run before the filing of the Complaint. Finally, Defendants argued that Siebert's claims for equitable relief were

---

[11] As the Eleventh Circuit Court of Appeals has explained,

> [t]he Alabama Supreme Court is authorized to enter an order fixing an inmates date of execution "at the appropriate time." Ala. R. App. P. 8(d) ("The supreme court *shall at the appropriate time* enter an order fixing a date of execution." (emphasis added)). It is common practice in Alabama for the State to seek an execution date soon after the Supreme Court denies *certiorari* review of an inmate's federal habeas petition. As a matter of common sense, completion of collateral review eliminates the last possible obstacle to execution, and [a death-sentenced inmate] should [foresee] that the execution date would likely be set promptly upon completion of collateral review.

*Jones v. Allen*, 485 F.3d 635, 639 n.2 (11th Cir. 2007).

barred by his unreasonable delay in bringing them.  Siebert opposed the motion.

In late May of 2007, Siebert began experiencing symptoms of what was at that time an unknown illness.  Siebert received a preliminary diagnosis that indicated he was suffering from pancreatic cancer and hepatitis C.  After receiving this preliminary diagnosis, Siebert filed an Amended Complaint (Doc. # 21).  This Amended Complaint restates all claims originally included in the Complaint.  It also adds claims that because of his hepatitis C and pancreatic cancer and any possible treatment[12] he might receive for those diseases complications in the lethal injection process are likely to arise and result in an unacceptable risk of unnecessary pain in violation fo the protections against cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitutions.  *See* Am. Compl. at ¶¶ 2, 20-23.  Thus, in addition to making a general challenge to Alabama's method of execution, Siebert now also urges a specific challenge to that method of execution as it will be applied to him with his particular medical problems and the particular potential drug interactions between drugs he is taking for his medical problems and the drugs used in the lethal injection execution protocol.[13]  The other significant change to the allegations Siebert made in the Amended Complaint was the inclusion of facts relating to another Alabama

---

[12]  As used in this opinion, "treatment" is intended to refer to treatment that is palliative in nature *and* treatment that is intended to attempt to cure, treat, or retard the progression of Siebert's diseases.

[13]  Siebert refers to this as a *Nelson* challenge.

murder conviction for which he received a death sentence.[14]

On July 30, 2007, the Alabama Supreme Court entered an Order setting an execution date of October 25, 2007 for Siebert. Despite the fact that his execution date is rapidly approaching, Siebert has not asked this Court to expedite its consideration of this case in any way. Additionally, Siebert has not sought a stay of the execution of his death sentence.

On August 6, 2007, Defendants filed Defendants' Motion to Dismiss Siebert's Amended Complaint (Doc. # 24). Urging the same grounds articulated in their original motion, Defendants ask this Court to dismiss Siebert's Amended Complaint. Siebert opposed this motion which is now fully briefed and ready for a ruling.

## LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. Prior to the Supreme Court's recent decision in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007), a

---

[14] After murdering Weathers and her sons, Siebert killed Weathers' neighbor Linda Jarman ("Jarman") and stole her automobile. *Siebert v. State*, 562 So . 2d 586 (Ala. Cr. App. 1989). A jury in Talladega County, Alabama convicted Siebert of the capital offense of murder during a robbery in the first degree. *Id. See also* Am. Compl. at ¶ 13. The trial court sentenced Siebert to death for this crime. *Id.* In connection with the investigation of the murders of Jarman and the Weathers family, Siebert gave a statement implicating himself in several murders including the murders of Jarman and the Weathers family. *See Siebert v. State*, 562 So . 2d 586. With respect to the Jarman murder conviction, Siebert has exhausted his direct appeal. *See Siebert v. State*, 562 So. 2d 586 (Ala. Crim. App. 1989), *aff'd by Ex parte Siebert*, 562 So. 2d 600 (Ala. 1990), *cert. denied by, Siebert v. Alabama*, 498 U.S. 963 (1990). His state court post-conviction request for relief pursuant to Rule 32 was also unsuccessful. *See Siebert v. State*, 778 So. 2d 842 (Ala. Crim. App. 1999), *cert. denied, Ex parte Siebert*, 778 So. 2d 857 (Ala. 2000). Siebert's federal habeas challenge to his conviction for Jarman's murder is still pending. The Supreme Court of Alabama has not yet set an execution date on this conviction.

motion to dismiss could only be granted if a plaintiff could prove "no set of facts . . . which would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986). Now, in order to survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. Plaintiff's "[f]actual allegations must be enough to raise a right to relief above a speculative level on the assumption that the allegations in the complaint are true." *Id*. at 1965. It is not sufficient that the pleadings merely "le[ave] open the possibility that the plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 1968 (internal quotation and alteration omitted). In considering a defendant's motion to dismiss, a district court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the plaintiff. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). *Accord, Nelson v. Campbell*, 541 U.S. 637, 640 (2004) (where a court is considering dismissal of a complaint at the pleading stage, it must assume the allegations of the complaint are true). Furthermore, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985).

## DISCUSSION

Because the Defendants' Motion to Dismiss (Doc. # 13) is directed only at the Complaint and because the Amended Complaint supplants the Complaint, the Defendants'

9

Motion to Dismiss is due to be DENIED as MOOT.  Defendants' Motion to Dismiss

Siebert's Amended Complaint is based on three separate bases: a contention that the statute

of limitations has expired, a contention that Siebert's claims are barred by his unreasonable

delay in filing this suit, and a contention that Siebert's Amended Complaint fails to state a

claim for which relief can be granted.  As the Court has previously explained, some of

Siebert's claims are general or generic challenges to the lethal injection protocol[15] that could

have been raised by any inmate under a death sentence in Alabama who failed to elect to be

executed by electrocution.  Some of Siebert's claims are unique or specific only to him.  In

this Court's views, these claims should be analyzed separately.

**A.  Siebert's General Challenge to Alabama's Lethal Injection Protocol**

In June of 2006, the United States Supreme Court held that a death row inmate in

Florida could bring a claim pursuant to § 1983 raising a challenge to the constitutionality of

the particular method of lethal injection planned for his execution even though he had already

brought an unsuccessful federal habeas corpus petition which did not include such a claim.

*Hill v. McDonough*, 126 S. Ct. 2096 (2006).[16]  By filing this lawsuit, Siebert seeks to do just

---

[15]  The Court is using the phrase "lethal injection protocol" to encompass not only the specific drug sequence used to effect executions, but also to encompass the procedures and personnel employed in executions.

[16]  In accordance with then existing precedent from the Eleventh Circuit Court of Appeals, the United States District Court for the Northern District of Florida had dismissed Hill's complaint due to for failure to comply with the requirements for a successive habeas petition. 126 S. Ct. at 1099, 2101. The Eleventh Circuit Court of Appeals affirmed. *Id.* On January 25, 2006, the United States Supreme Court granted Hill's petition for writ of *certiorari.* 126 S. Ct. 1189 (2006). On June 12, 2006, the United States Supreme Court

that. He challenges the lethal injection protocol used by the State of Alabama for executions since a change in Alabama law in 2002.[17]

When the United States Supreme Court clarified that an action such as this one could be brought pursuant to § 1983,[18] it clearly stated that "[f]iling an action that can proceed under § 1983 does not entitle the complainant to an order staying an execution as a matter of course." 126 S. Ct. at 2104. Furthermore, it recognized that "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a sentence" which interest was not diminished by the recognition of the ability of the inmate to file an action pursuant to § 1983. *Id.* The Supreme Court further explained that its decision recognizing the ability of death row inmates to bring such claims was not intended to deprive federal courts of the means to protect the interest of the State and the victims of crime in the timely enforcement of a sentence. *Id.* Indeed, the Supreme Court made plain that "[t]he federal courts can and should protect States from *dilatory* or speculative suits[.]" *Id.* (emphasis

---

decided the case and reversed the Eleventh Circuit Court of Appeals. 126 S. Ct. 2096.

[17] While Siebert *argues* that the State of Alabama has changed its protocol over time, he has not included this allegation in either the Complaint or the Amended Complaint. *Compare* Doc. # 1 & Doc. # 21 *with* Doc. # 19 at pp. 18-21 & Doc. # 26 at p. 10. Absent such an allegation, Defendants are not required to admit, deny, or prove that the protocol has remained unchanged.

[18] The Court does not mean to suggest that Siebert was precluded from bringing this action prior to the Supreme Court's decision in *Hill*. To the contrary, unfavorable circuit precedent does not foreclose all avenues for relief or excuse delay in raising § 1983 lethal injection claims. *Grayson*, 491 F.3d at 1322-23. After all, the plaintiff in *Hill* was not deterred by the unfavorable precedent from the Eleventh Circuit and his suit is what ultimately changed the law in this circuit. *Id.*

11

added).

Since the Supreme Court's decision in *Hill*, the Eleventh Circuit Court of Appeals has

on several occasions affirmed the dismissal of cases brought by inmates sentenced to death

challenging the method of execution pursuant to § 1983. *See, e.g.*, *Arthur v. Allen*, No. 07-

13929, 2007 WL 2709942 at *1 (11th Cir. Sept. 17, 2007) (affirming dismissal of a § 1983

challenge to Alabama's lethal injection protocol on the basis of laches); *Williams v. Allen*,

___ F.3d ___, No. 07-13638, 2007 WL 2368028 at *1 (11th Cir. Aug. 21, 2007) (affirming

dismissal of general challenge to Alabama's lethal injection protocol because inmate's delay

in filing § 1983 action was unreasonable); *Grayson v. Allen*, 491 F.3d 1318 (11th Cir. 2007)

(explaining that district court properly dismissed action because of plaintiff's unnecessary

delay in seeking equitable relief pursuant to § 1983);[19] *Rutherford v. McDonough*, 466 F.3d

970 (11th Cir. 2006), *cert. denied*, 127 S. Ct. 465 (2006) (affirming the district court's

dismissal of § 1983 complaint on equitable grounds).[20] In deciding *Rutherford*, the Eleventh

---

[19]  Siebert contends that this Court should not consider *Grayson* because it was
decided by the district court on a motion for summary judgment and not a motion to dismiss.
The Court notes that the language of the Eleventh Circuit decision in *Grayson* emphasizes
the appropriateness of *dismissal* of an unnecessarily delayed action seeking injunctive relief.
More importantly, *Grayson* is merely a logical extension or further refining of the holding
of *Rutherford* which specifically addressed the appropriateness of a ruling on a motion to
dismiss. Finally, the Eleventh Circuit Court of Appeals reaffirmed that this procedural
distinction was one without difference when it affirmed the dismissal of *Williams v. Allen*,
2007 WL 2368028 *1.

[20]  In fact, the Eleventh Circuit twice affirmed the district court's dismissal of
Rutherford's § 1983 challenge to Florida's lethal injection protocol, which alike Alabama
uses sodium thiopental, pancuronium bromide, and potassium chloride. *Rutherford v. Cosby*,
466 F.3d 970, 1089-93, 1099-1100, & n.3 (11th Cir. 2006); *Rutherford v. Cosby,* 438 F.3d

Circuit explained that when an inmate sentenced to death seeks to challenge the method of execution in a suit brought pursuant to § 1983 that includes a prayer for a permanent injunction, well-established equitable principles must be applied and these principles are equally applicable to all types of equitable relief whether that relief is permanent or temporary. 466 F.3d at 976. *Accord, Williams*, 2007 WL 2368028 at *2; *Grayson*, 491 F.3d at 1322 ("Additionally, the equitable principles at issue when inmates facing imminent execution delay in raising their § 1983 method-of-execution challenges are equally applicable to requests for both stays and injunctive relief."). This means that a district court faced with a motion to dismiss a claim for prospective injunctive relief pursuant to § 1983 by an inmate seeking to challenge the method of execution must consider the interests of the State in

---

1087 (11th Cir. 2006). Rutherford filed his § 1983 suit challenging Florida's lethal injection procedure and seeking a permanent injunction less than a week before his scheduled execution. *Rutherford v. Crosby*, 438 F.3d at 1092. The district court dismissed on two alternative grounds: (1) Rutherford's claim was properly brought as a habeas corpus proceeding, and he had not obtained the requisite order from the Eleventh Circuit permitting him to file a second or successive petition; and (2) even if the complaint states a cognizable claim under § 1983, he had unnecessarily delayed in bringing his claim and thus was not entitled to injunctive relief. 438 F.3d at 1089. In its first hearing of Rutherford's appeal, the Eleventh Circuit Court of Appeals affirmed on both grounds. 466 F.3d at 973. Thereafter, the United States Supreme Court granted a stay of execution to Rutherford, granted *certiorari*, and vacated the Eleventh Circuit's judgment with instructions for the case to be reconsidered in light of *Hill*. *See, e.g., Rutherford v. Crosby*, 126 S. Ct. 1191 (2006) (granting a stay); *Rutherford v. McDonough*, 126 S. Ct. 2915 (2006) (granting *certiorari*, vacating and remanding). On remand, the Eleventh Circuit reiterated its prior holding that the case was due to be dismissed because Rutherford could and should have brought it is earlier and again affirmed the district court on this basis. 466 F.33d at 973-78. Thereafter, the United States Supreme Court denied Rutherford's petition for writ of *certiorari* on that issue.

enforcing its criminal judgments without undue interference from the federal courts and the

interests of the family of the victims interest in the timely enforcement of a death sentence.

*See Hill*, 126 S. Ct. at 2104; *Rutherford*, 466 F.3d at 976.  Additionally, the district court

must consider whether the plaintiff has been dilatory in bringing his claim.  *Rutherford*, 466

F.3d at 974.

Of course, one might have read *Rutherford* as narrowly holding that a § 1983 action

challenging a method of execution and seeking injunctive relief is due to be dismissed if the

plaintiff has delayed unnecessarily in bringing the claim by waiting until less than a week

before a scheduled execution date to file his claim.  466 F.3d at 974.  Obviously in that case,

such a plaintiff would know "that the discovery, evidentiary hearing, and decision on the

merits that he demands could not possibly be accomplished in that short period of time."  *Id.*

The Eleventh Circuit's more recent decisions in *Grayson* and *Williams*, however, clarify that

unreasonable delay encompasses more than waiting until less than a week before a scheduled

execution to file suit.[21]

---

[21]  This is not so surprising a result.  It is not realistic to expect this type of case to be
able to be litigated in less than a year.  Discovery, briefing dispositive motions, evidentiary
hearings, and the like take a great deal of time.  The burdens of docket congestion or the
complexity of issues may further slow litigation.  The appeal process also takes time.  Thus,
a litigant should know that waiting until weeks or months before his execution date is likely
to be set or until after the request for the setting of an execution date has been made to file
this type of suit is a high risk strategy.  Waiting to file suit during the brief window of time
between the denial of *certiorari* on the inmate's federal habeas petition and the state's chosen
execution date allows an insufficient period in which to litigate the issues raised on the
merits.  *See, e.g., Jones v. Allen,* 485 F.3d at 639 n.2 (discussing the foreseeability of the
risks of waiting until too late to file suit and the inadequacy of the length of time between the

The Eleventh Circuit Court of Appeals held in *Grayson* that the death-sentenced inmate's challenge pursuant to § 1983 seeking declaratory and injunctive relief due to an alleged future violation of the inmate's rights under the Eighth and Fourteenth Amendment was appropriately dismissed because the inmate delayed unnecessarily in bringing the action and "did not leave sufficient time for full adjudication on the merits." 491 F.3d 13624-26. In reaching this conclusion, the Eleventh Circuit held that the plaintiff in *Grayson* had waited until his execution was imminent. *Id.* In that case, the execution had twice been "imminent": once "when his § 2254 post-conviction proceedings were completed" and once again when the Eleventh Circuit affirmed the dismissal of an earlier filed § 1983 action that had resulted in a temporary stay of his execution. *Id.* at *7. Thus, *Grayson* has clarified that *Rutherford* applies not only to cases filed within days of execution, but that the rule announced in *Rutherford* applies to § 1983 suits for injunctive relief that are not filed in sufficient time to allow full adjudication on the merits without entry of a stay. *See generally, Grayson*, 491 F.3d 1318. The Eleventh Circuit reaffirmed this holding in *Williams*. In that case, the Eleventh Circuit held that Williams delay[22] in raising his § 1983 challenge to Alabama's lethal injection protocol was unnecessary and inexcusable. 2007 WL 2368028

---

denial of *certiorari* on the federal habeas petition and the execution date for litigation of the merits).

[22] Williams did not file his § 1983 claim until after quest for his federal habeas was complete and after the State of Alabama filed its motion asking that the Alabama Supreme Court set an execution date for Williams. *Id.* at *1.

at *3.[23]  These binding precedents must govern this Court's analysis of the motions to dismiss now pending before it.

Like the plaintiffs in *Grayson* and *Williams*, Siebert waited to bring this action.  He filed this lawsuit nearly seventeen years after the conclusion of his unsuccessful direct appeal of his conviction and sentence.  He filed this lawsuit nearly seven years after the conclusion of his unsuccessful Rule 32 proceedings.  He filed this suit more than six years after he commenced his federal habeas corpus suit.  He filed this suit nearly five years after he knew that the State of Alabama would use lethal injection to execute him.  He filed this suit approximately fifteen months after the United States Supreme Court granted the writ of *certiorari* in the *Hill* case.  He filed this suit approximately ten months after the United States Supreme Court issued its decision in *Hill*.  He filed this lawsuit after the conclusion of his unsuccessful federal habeas corpus action.[24]  While he did not wait until after the State of Alabama asked the Alabama Supreme Court to set an execution date, he certainly did wait until after it was nearly certain that such a request was imminent.  In this Court's view,

_____

[23]  Siebert argues *Williams* is distinguishable because in that case there was no claim that Alabama's lethal injection protocol had been modified since its inception.  Pointing to arguments made in briefs and not allegations in the Complaint or the Amended Complaint, Siebert contends that he has claimed that the protocol has changed over time and that this is another reason for not finding that he has delayed unreasonably in bringing suit.

[24]  The district court ruled against Siebert on his federal habeas petition more than a year before he filed this lawsuit.  When the Eleventh Circuit affirmed the district court ruling on that case on July 13, 2006, Siebert did not file this lawsuit.  Instead he waited until April 9, 2007, nearly three weeks after the United States Supreme Court denied *certiorari* on Siebert's federal habeas claims relating to the murders of Weathers and her sons.

16

Siebert waited to file this lawsuit until after there was no possible way for this Court to adjudicate the merits of the claims in this lawsuit without entry of a stay.

While Siebert could not have brought this lawsuit challenging the lethal injection protocol employed by the State of Alabama for executions before 2002, when it adopted that method of execution, he certainly could have done so at any time after that date. His delay in bringing his generic, general challenge was unnecessary and inexcusable.[25] Like the plaintiff in *Grayson*, if Siebert "truly had intended to change Alabama's lethal injection protocol, he would not have deliberately waited to file suit until a decision on the merits would be impossible without the entry of a stay or an expedited litigation schedule." *Grayson*, 491 F.3d at 1326. The Court finds no justification for Siebert's failure to bring this

---

[25] Siebert contends that his claim was not ripe prior to the United States Supreme Court's denial of *certiorari* on his petition for federal habeas corpus relief on March 26, 2007. The Eleventh Circuit has rejected this argument. *See Williams*, 2007 WL 2368028 *2; *Jones v. Allen*, 485 F.3d at 639 n.2. Indeed, there is no convincing reason why, after Alabama made lethal injection its primary method of execution, any inmate who is reasonably likely to be executed in the future could not have brought a method-of-injection challenge. *See* 485 F.3d at 640. Additionally, the Court rejects Siebert's related argument that he cannot be found to have delayed unnecessarily in filing his suit because the harm he seeks to avoid has not yet occurred. While Siebert is correct that he is seeking prospective injunctive relief to avoid what he alleges would be a future violation of his constitutional rights, he is not correct that he cannot be found to have delayed unreasonably because that future harm has not yet occurred. Obviously, the future harm had not occurred in *Williams*, in *Grayson* or in *Rutherford* either. Like this case, those cases sought prospective injunctive relief relating to an execution to be conducted at a date in the future. There is simple no way to square Siebert's argument in this regard and the holdings of those cases. Indeed, Siebert's arguments as to why his delay was "reasonable" lack support in the law of this Circuit and many have already been rejected by the Eleventh Circuit. *See, generally, Williams*, 2007 WL 2368028 *1; *Grayson*, 491 F.3d 1318; *Jones*, 485 F.3d 635; *Rutherford*, 466 F.3d 970.

17

action earlier and his dilatory filing of this suit leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out.  Both the State of Alabama and the family of the victim of Siebert's crime have strong interests in seeing Siebert's punishment carried out after waiting more than nearly twenty years since the sentence was imposed.  *Grayson*, 491 F.3d at 1326.

In light of the prior binding precedents from the Eleventh Circuit Court of Appeals, this Court is compelled to find that with respect to Siebert's general challenges to the execution protocol, Siebert is not entitled to injunctive relief because he delayed in filing his method-of-execution § 1983 suit until his execution was imminent.  He did not file this lawsuit until after the last possible obstacle to the State of Alabama setting his execution date had passed.  Given the strong presumption against the grant of equitable relief to those who have been dilatory in requesting it, the general challenges to the execution protocol in Siebert's suit are due to be dismissed because he unnecessarily delayed in bringing suit until his execution was imminent and until there was not sufficient time to allow full adjudication on the merits of his claims without entry of a stay of his execution.  For this reason, Defendants' motion to dismiss is due to be GRANTED with respect to Siebert's general challenge to the Alabama lethal injection protocol with respect to the execution of his sentence for the murder of Weathers and her children.

In light of this Court's conclusion that dismissal of these general claims is warranted on equitable grounds, the Court need not and will not address the State of Alabama's

alternative argument that Siebert's claim is barred by the statute of limitations as to these claims. Having decided that Siebert's general claims relating to lethal injection protocol are due to be dismiss, the Court must now turn its attention to Siebert's other claims which relate specifically to him.

## B. The Siebert Specific Challenges

When he filed his Amended Complaint, Siebert raised two new types of claims pursuant to § 1983. First, he alleges that because of recently discovered changes in his physical condition[26] would mean that execution of him using Alabama's lethal injection protocol would likely result in an unacceptable risk of unnecessary pain in violation of the protections against cruel and unusual punishment found in the Eighth Amendment. Second, he has added allegations intended to address the use of the Alabama lethal injection protocol on him for the death sentence he received for the Jarman murder in Talladega County.[27]

With respect to these two claims, the Court cannot find that Siebert unreasonably delayed in filing his claims pursuant to § 1983 seeking injunctive relief. With respect to the claims arising out of the newly discovered changes in his physical condition, Siebert did not delay unreasonably in bring this action within a reasonable time of discovering the change

---

[26]  These changes are attributable to his recent diagnosis with hepatitis C and pancreatic cancer and to treatment he would likely receive for those conditions, including drug treatment.

[27]  Initially, Siebert was only challenging the implementation of the Alabama lethal injection protocol to carry out the execution of sentence for the murder of Weathers and her sons. There exists a significant difference in the procedural posture of the two parts of the case. Siebert has not completed his federal habeas corpus challenge to the Jarman sentence.

in his condition.  Nothing in the *Williams*, *Grayson*, and *Rutherford* decisions would support the dismissal of Siebert's newly discovered claims that, as applied to him specifically, the Alabama lethal injection protocol would result in a violation of his rights under the Eighth Amendment.  Similarly, the Court cannot find that Siebert has delayed unreasonably in seeking to litigate claims relating to the Alabama lethal injection protocol for the death sentence he received for the murder of Jarman.  Siebert has filed these claims while pursuing his federal habeas challenge.[28]

Although Defendants have made little, if any, effort to explain why the claims added by the Amended Complaint are due to be dismissed either under a theory that the statute of limitations has run on those claims or under a theory that the Amended Complaint fails to state a claim for which relief can be granted, the Court has nonetheless considered Defendants' general assertion to that effect.  The Court simply cannot agree that the statute of limitations has run on those claims.  Moreover, the Court must at this stage credit the allegations of the Amended Complaint.  When those allegations are credited, the Court cannot say that the Complaint fails to state a claim for which relief can be granted.  Accordingly, to the extent that Defendants seek dismissal of the Siebert specific claims, those claims added by the Amended Complaint, their motion is due to be DENIED.

---

[28]  While the Court suspects he has done so only because of his impending execution for the Weathers' murders, the Court cannot say that he has delayed unreasonably with respect to these claims.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1. Defendants' Motion to Dismiss (Doc. # 13), which addressed only the allegations of the Complaint, is DENIED as MOOT due to the filing of the Amended Complaint

2. Defendants' Motion to Dismiss Siebert's Amended Complaint (Doc. # 24) is GRANTED in part and DENIED in part. The new claims Siebert added when he filed the Amended Complaint survive and will be litigated. The general challenges to the constitutionality of the lethal injection protocol relating to the execution of his death sentence for the murder of Weathers and her sons, as articulated in the original Complaint and the Amended Complaint, are DISMISSED.

3. This case is set for a scheduling conference at 10:00 a.m. on October 10, 2007, in the Chambers, Room A-300 of the Frank M. Johnson U.S. Courthouse Complex, One Church Street, Montgomery, Alabama.

4. Counsel for Defendants are DIRECTED to bring all copies of all medical records relating to Siebert's current medical condition and any medications he is currently receiving. Counsel for Defendants are also DIRECTED to bring a copy of the current version of Alabama's Confidential Execution Procedures Protocol. To the extent that it is necessary, Defendants are directed to confer with Siebert's counsel regarding a proposed protective order for this case and to file any motion for protective order prior to the scheduling conference.

DONE this the day of October, 2007.

21

_____/s/ Mark E. Fuller_____
CHIEF UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

1.  **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)  **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

    (b)  **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c)  **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d)  **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e)  **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

    *Rev.: 4/04*

2.    <u>**Time for Filing**</u>: The timely filing of a notice of appeal is mandatory and jurisdictional. <u>Rinaldo v. Corbett</u>, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

    (a)    **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

    (b)    **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

    (c)    **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

    (d)    **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

    (e)    **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.    <u>**Format of the notice of appeal:**</u> Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. <u>See</u> also Fed.R.App.P. 3(c). A <u>pro se</u> notice of appeal must be signed by the appellant.

4.    <u>**Effect of a notice of appeal:**</u> A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).