IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **DANIEL LEE SIEBERT,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**RICHARD ALLEN, Commissioner,** )<br>Alabama Department of Corrections, )<br>)<br>**GRANTT CULLIVER, Warden,** )<br>Holman Correctional Facility, and )<br>)<br>**OTHER UNKNOWN EMPLOYEES** )<br>**AND AGENTS,** )<br>Alabama Department of Corrections, )<br>)<br>**Individually, and in their** )<br>**official capacities,** )<br>)<br>Defendants. ) | Case No.: 2:07-cv-295-MEF-WC |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR PROTECTIVE ORDER**

Plaintiff, Daniel Lee Siebert, by and through undersigned counsel, submits the following response to the Defendants' Motion for Protective Order (Doc. # 45):

1.  Mr. Siebert has no objection to a protective order prohibiting disclosure of the identities of the members of the execution team. (Doc. # 45 at ¶ 3.) Mr. Siebert would object, however, to withholding from counsel of record and appropriate persons either retained or employed by them for litigation of this suit information relevant to the

1

background and training of execution personnel.

2.     Mr. Siebert objects to the proposed terms stated in the Defendants' Motion for Protective Order (Doc. # 45 at ¶ 4) under which he, Mr. Siebert, the person most interested in the details of the protocol, would be barred from receiving any information concerning the execution procedures.

3.     With respect to the Plaintiff's agreement to the Amended Agreed Confidentiality Order filed in *McNair v. Allen*, No. 2:06-cv-695 (M.D. Ala. filed Aug. 7, 2006) (Doc. # 74), Mr. Siebert understood from this Court's Order of October 3, 2007 (Doc. # 39), that the Court expected a joint proposed protective order to be submitted before or at the time of the scheduling conference held on October 10, 2007.  Given that deadline, Mr. Siebert did agree to the same terms as the parties agreed to in *McNair*.  (Submitted to this Court as Doc. # 42-2.)  Mr. Siebert will agree to those terms, should this Court find that prior agreement binding.  However, Mr. Siebert would note that the *McNair* Amended Agreed Confidentiality Order outlines no parameters for information contemplated as "confidential."

4.     The Defendants have submitted no argument to this Court in support of the assertion that "Defendants, the Alabama Department of Corrections, and the State of Alabama have a vital and compelling interest in protecting the confidentiality of the procedures and *all aspects* of the manner of enforcing a death sentence in the State." (Doc. # 45 at ¶ 2 (emphasis added).)  This assertion is belied by the Defendants' own actions in which the Department has publicized certain aspects of the protocol to the public.  *See*, *e.g.*,

LOCKUP: Holman Correctional Facility (MSNBC documentary copyright 2006) (view of the death chamber and brief discussion by Warden Culliver of the drugs injected). *See also* Exhibit A (information provided to the Tuscaloosa News by Brian Corbett, spokesperson for the Alabama Department of Corrections, shortly before the Luther Williams execution).[1]

5. After entry of the Amended Agreed Confidentiality Order in *McNair*, the Defendants in this case, who are the same as the Defendants in *McNair*, indicated to the *McNair* court that they would not object to public trial of the matter, with the proviso that the identities of members of the execution team, if they were called to testify, should be protected. (*McNair* Doc. # 101.) Thus, it appears to be unnecessary to include in a protective order to be entered in this case any cumbersome process of filing under seal documents concerning matters that will eventually be presented in a public forum.

6. In addition, the citizenry of Alabama, in whose name executions are carried out, have a "vital and compelling interest" in the details of those executions. As the Eleventh Circuit has held, "open proceedings may be imperative if the public is to learn about the crucial legal issues that help shape modern society. Informed public opinion is critical to effective self-governance." *Newman v. Graddick*, 696 F. 2d 796, 801 (11th Cir. 1983), *citing Grosjean v. American Press Co.*, 297 U.S. 233, 250 (1936). Thus, any protective order should impose the least restrictions necessary. An uninformed populace cannot make

---

[1] The *McNair* Order was entered on June 27, 2007. On information and belief, Mr. Corbett's release of information to the press occurred approximately two weeks before Mr. Williams' execution on August 23, 2007.

reasoned assessments of questions related to the death penalty.

WHEREFORE, Mr. Siebert requests that this Court take into account the above considerations when determining the limitations to be placed upon public disclosure of discovery exchanged in this case.

Dated: October 16, 2007.

Respectfully submitted,

/s/Anne E. Borelli
ANNE E. BORELLI
AL SJIS: BOR -016
E-mail:anne_borelli_@fd.org

Christine A. Freeman
TN BAR NO.: 11892
E-mail: Christine_Freeman@fd.org

Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353

Thomas M. Goggans
Ala. S.J.I.S. GOG001
2030 East Second Street
Montgomery, AL 361056
Phone: 334-834-2511
Fax: (334) 834-2512
E-mail: tgoggans@tgoggans.com

*Counsel for Daniel Lee Siebert, Plaintiff*

4

## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **DANIEL LEE SIEBERT,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **RICHARD ALLEN, Commissioner,** | ) |
| Alabama Department of Corrections, | ) |
| | ) |
| **GRANTT CULLIVER, Warden,** | ) |
| Holman Correctional Facility, and | )   Case No.: 2:07-cv-295-MEF-WC |
| | ) |
| **OTHER UNKNOWN EMPLOYEES** | ) |
| **AND AGENTS,** | ) |
| Alabama Department of Corrections, | ) |
| | ) |
| **Individually, and in their** | ) |
| **official capacities,** | ) |
| | ) |
| Defendants. | ) |

### CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2007, a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will electronically send a copy of the same to each of the following:

    James Clayton Crenshaw, Esq.
    Office of the Attorney General
    11 South Union Street
    Montgomery, AL 36130
    Tel.: (334) 242-7300
    Fax: (334) 353-8440
    Email: ccrenshaw@ago.state.al.us

James William Davis, Esq.
Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
Tel.: (334) 242-7300
Fax: (334) 353-8440
Email: jimdavis@ago.state.al.us

Jasper Beroufon Roberts, Jr., Esq.
Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
Tel.: (334) 353-4848
Fax: (334) 353-3637
Email: jroberts@ago.state.al.us

Corey Landon Maze
Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
Tel.: (334) 353-4336
Fax: (334) 353-3637
Email: cmaze@ago.state.al.us


          Respectfully submitted,

          /s/ Anne E. Borelli
          ANNE E. BORELLI

# EXHIBIT A

**MAGNOLIA CLIPPING SERVICE**
(601) 856-0911 / (205) 758-8610

**TUSCALOOSA NEWS**
TUSCALOOSA, AL
Circulation = 42000
DAILY
08/12/2007

# What happens at the end of death row

By Stephanie Taylor
Staff Writer

The last days in a death row inmate's life at Holman Prison follow a loose schedule that includes constant surveillance leading up to the execution, which always takes place on a Thursday at 6 p.m.

A common misconception about executions, likely fueled by television, is that the inmate receives any last meal he desires. Not so. There's no lobster thermidor or beef Wellington in prison.

An inmate can request a meal from the cafeteria, and if he has a special request, the cooks may accommodate it if possible. Some inmates have requested their last meal from a catfish restaurant down the street from Holman Prison, said Brian Corbett, spokesman for the Department of Corrections.

But most of the time, an Alabama inmate's last meal will come out of a vending machine. The visiting area at the prison has vending machines that carry chicken and barbecue sandwiches, heartier fare than chips and candy bars.

There are 200 inmates on Alabama's death row. Four are women.

An inmate about to be put to death basically follows this schedule during his final days:

**Tuesday** | The inmate is moved from his cell on death row to a larger, isolated cell near the death chamber. The cell has a shower and access to a telephone and is under 24-hour surveillance. The inmate's regular visitor list of eight people is expanded, as are visiting hours, and he or she can spend time with family or other visitors.

Inmates who have little or no family often receive visits from their attorney, volunteers from Kairos Prison Ministry or other spiritual advisers.

**Wednesday** | The inmate remains under 24-hour surveillance and continues to receive visitors if desired.

**Thursday** | Inmates can receive visitors from about 7:30 a.m. until 4:30 p.m. The inmate is taken to the death chamber at about 5:30 p.m. and receives the medical procedures in preparation for the lethal injection at 6 p.m.

Officials from the Alabama Department of Forensic Sciences claim the body, which is either returned to the state or released to surviving family members for burial.



**Capital Punishment Procedure**

1. 50 cc Sodium Pentothal
2. This is a yellow water-soluble solution that depresses the central nervous system slowing the heart rate and level of the blood pressure. Although each anesthetic drug surely has the potential for the person to produce unconsciousness.
3. 60 cc Saline — This cleans out the IV line.
4. 50 cc Pancuronium bromide or Pavulon — Multiple paralysis patient and he or she stops breathing and will not be able to move although he or she can hear.
5. 60 cc Saline — This cleans out the IV line.
6. 60 cc Potassium chloride — Drug stops the heart.
7. 60 cc Saline — This cleans out the IV line.

*30cc equals 1 ounce
Source: Department of Corrections
STAFF GRAPHIC | ANTHONY BRATINA

During the 2002 regular session, the Alabama legislature passed and former Gov. Don Siegelman signed into law Senate Bill 240, which required the Department of Corrections to provide for execution by means of lethal injection. There have been four executions by lethal injection in the state since that bill was signed. Keith Johnson became the first inmate executed by lethal injection. The procedure began at 6 p.m. and the 46-year-old was pronounced dead at 6:27 p.m.