IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DANIEL LEE SIEBERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD ALLEN, Commissioner, | ) | |
| Alabama Department of Corrections, | ) | |
| | ) | |
| GRANTT CULLIVER, Warden, | ) | |
| Holman Correctional Facility, and | ) | Case No.: 2:07-cv-295-MEF-WC |
| | ) | |
| OTHER UNKNOWN EMPLOYEES | ) | |
| AND AGENTS, | ) | |
| Alabama Department of Corrections, | ) | |
| | ) | |
| Individually, and in their | ) | |
| official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S EMERGENCY MOTION TO RECONSIDER**

Plaintiff Daniel Siebert, by and through undersigned counsel, requests that this Court

reconsider its Order denying Mr. Siebert permission to discuss and file a copy of the State

of Alabama's revised lethal injection protocol with the Alabama Supreme Court. (Doc. #

68.) In support, Mr. Siebert would show:

1. On October 24, 2007, the State of Alabama, represented by the same counsel

representing the Defendants in this case, filed a Response to Mr. Siebert's pleading in the

Alabama Supreme Court, containing detailed information regarding the protocol. *See* Exhibit

1

2.  That Response was not filed under seal.

2.    On October 22, 2007, Mr. Siebert filed an Emergency Motion for Permission, requesting permission from this Court to file with the Alabama Supreme Court a copy of the State of Alabma's revised lethal injection protocol and a motion discussing it under seal. (Doc. # 66.)

3.    The Defendants opposed this Motion.  (*Id.*)

4.    This Court denied permission to file, citing lack of any assurance that "appropriate safeguards exist to protect the confidential nature of the protocol." (Doc. # 66.)

5.    On October 23, 2007, Mr. Siebert filed a Renewed Emergency Motion for Stay of Execution with the Alabama Supreme Court, requesting only that that Court itself demand a copy of the protocol for review.  *See* Exhibit 1.

6.    Attached to the State's pleading in the Alabama Supreme Court is a copy of its Brief of the Appellee filed in the Eleventh Circuit Court of Appeals on October 24, 2007. In that Brief, the State of Alabama discusses at length the Affidavit of Dr. Mark Dershwitz, which analyzes Alabama's protocol in detail.  *See* Exhibit 2, Exhibit A, pp. 12-16.

7.    The State's pleading also cites to the Affidavit of Warden Grantt Culliver.  *See id.*

8.    In addition, on October 23, 2007, a spokesperson for the Department of Corrections appeared on WSFA television discussing details of the revised protocol.  *See* Exhibit 3.  *See also* www.wsfa.com, "News Video" link to "Lethal Injection Request."

2

9.     Given the Defendants selective release of information related to the protocol to the public as well as other courts, justice requires that Mr. Siebert be permitted to respond.

WHEREFORE, Mr. Siebert requests that this Court reconsider its Order denying permission to file the protocol with the Alabama Supreme Court and to discuss it in his pleadings under seal and grant such permission, whether under seal or not under seal.

Dated: October 24, 2007.

Respectfully submitted,

/s/Anne E. Borelli
ANNE E. BORELLI
AL SJIS: BOR -016
E-mail:anne_borelli_@fd.org

Christine A. Freeman
TN BAR NO.: 11892
E-mail: Christine_Freeman@fd.org

Federal Defenders
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353


Thomas M. Goggans
Ala. S.J.I.S. GOG001
2030 East Second Street
Montgomery, AL 361056
Phone: 334-834-2511
Fax: (334) 834-2512
E-mail: tgoggans@tgoggans.com

*Counsel for Daniel Lee Siebert, Plaintiff*

3

## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| DANIEL LEE SIEBERT, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| RICHARD ALLEN, Commissioner, | ) |
| Alabama Department of Corrections, | ) |
| | ) |
| GRANTT CULLIVER, Warden, | ) |
| Holman Correctional Facility, and | )    Case No.: 2:07-cv-295-MEF-WC |
| | ) |
| OTHER UNKNOWN EMPLOYEES | ) |
| AND AGENTS, | ) |
| Alabama Department of Corrections, | ) |
| | ) |
| Individually, and in their | ) |
| official capacities, | ) |
| | ) |
|     Defendants. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2007, a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will electronically send a copy of the same to each of the following:

> James Clayton Crenshaw, Esq.
> Office of the Attorney General
> 11 South Union Street
> Montgomery, AL 36130
> Tel.: (334) 242-7300
> Fax: (334) 353-8440
> Email: ccrenshaw@ago.state.al.us

4

James William Davis, Esq.
Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
Tel.: (334) 242-7300
Fax: (334) 353-8440
Email: jimdavis@ago.state.al.us

Jasper Beroufon Roberts, Jr., Esq.
Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
Tel.: (334) 353-4848
Fax: (334) 353-3637
Email: jroberts@ago.state.al.us

Corey Landon Maze
Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
Tel.: (334) 353-4336
Fax: (334) 353-3637
Email: cmaze@ago.state.al.us


Respectfully submitted,

/s/ Anne E. Borelli
ANNE E. BORELLI

EXHIBIT 1

IN THE SUPREME COURT OF ALABAMA

EXECUTION DATE SET FOR OCTOBER 25, 2007

Ex parte DANIEL LEE SIEBERT )
)
In re: State of Alabama, )
)
 Petitioner, )
)
v. )  Case No. 1890269
)
Daniel Lee Siebert, )
)
 Respondent )

FILED

OCT 23 2007

CLERK
SUPREME COURT OF ALABAMA

## RESPONDENT'S RENEWED MOTION
## FOR EMERGENCY STAY OF EXECUTION

COMES NOW the Repondent, Daniel Siebert, and renews his request that this Honorable Court rule on his Emergency Motion for Stay of Execution.

As this Court is aware, the constitutionality of the three-drug lethal injection execution method is currently being considered by the United States Supreme Court in *Baze v. Rees*, ___ S.Ct. ___, 2007 WL 2850507 (October 3, 2007). Recent actions by the United States Supreme Court indicate that permitting an execution with this method to go forward, prior to the United States Supreme Court reaching its decision in *Baze*, would be improper.

In *Baze v. Rees*, the United States Supreme Court will consider the use in Kentucky's lethal injection executions of

1

the three-drug sequence composed of sodium thiopental, pancuronium bromide, and potassium chloride. These are the same three drugs used by the State of Alabama in this State's lethal injection execution procedure.

Since accepting the *Baze* case for review, the United States Supreme Court has granted stays of execution, or refused to vacate stays of execution, given to other prisoners who are also challenging the constitutionality of the three-drug lethal injection method of execution in their states. Stays of execution have been granted to applicants from Texas and Virginia and have been upheld for a prisoner in Arkansas. See *Turner v. Texas*, ___ S.Ct. ___, 2007 WL 2303693 (September 27, 2007); *Emmett v. Johnson*, ___ S.Ct. ___, 2007 WL 2850507 (October 3, 2007); *Norris v. Jones*, ___ S.Ct. ___, 2007 WL 2999165 (Mem.)(October 16, 2007).

Many other states' appellate and trial courts have followed the same practice, suspending lethal injection executions until the United States Supreme Court has completed its review and issued a decision in *Baze*. State supreme courts in Arizona, Georgia and Nevada have temporarily suspended lethal injection executions. *See State of Arizona v. Jeffrey Landrigan*, Arizona Supreme Court, No. CR-90-0323-AP

2

3

(October 2007); *State of Georgia v. Curtis Osborne*, Georgia

Supreme Court, October 22, 2007, (www.wtbf.com/midatlantic/jbf/

news_index.apx-content-articles-JBF-2007-10-22-

0056.html);*Alderman v. Hall*, Georgia Supreme Court, Case No.

S08W0263 (Order, filed October 18, 2007); *American Civil*

*Liberties Union of Nevada; Mario De La Rosa; and Ahora*

*Newspaper v. Howard Skolnick, Director of Nevada Department of*

*Corrections; and Nevada Department of Corrections*, Nevada

Supreme Court, Case No. 50354 (Order, filed October 15, 2007).

The Florida Supreme Court has heard oral argument in a

lethal injection challenge and, at that argument, some of the

Florida justices questioned why the State was attempting to

proceed with executions, despite *Baze* and related actions of

the United States Supreme Court. See *Mark Dean Schwab; Florida*

Supreme Court, Case No. SC07-1603.

The Texas Court of Criminal Appeals stayed a scheduled

execution as a result of the pending United States Supreme

Court review of one of that State's own prisoner's challenge

to lethal injection. In Re *Heliberto Chi*, Texas Court of

Criminal Appeals, Case No. WR-61,600-03 (Order, per curiam,

October 2, 2007). The Wake County Superior Court has delayed

or stayed five different executions in North Carolina between

November 2006 and March 2007 because of legal challenges to the lethal injection procedure and/or a doctor's role in death sentence process. See North Carolina Dept. of Corrections, website, (http://www.doc.state.nc.us/dop/deathpenalty/executi on_news.htm).

In addition, some states' officials have sought to temporarily delay executions until the Baze decision is issued. The Attorney General for the State of Oklahoma has asked that state's Supreme Court to refrain from setting execution dates until Baze is resolved. Terry Lyn Short v. State of Oklahoma, Case No. D-97-540, Oklahoma Court of Criminal Appeals, "Notice of Exhaustion of State and Federal Appeals" (filed by Attorney General on October 3, 2007) (stating, at paragraph 11, "Out of an abundance of caution and notwithstanding the constitutionality of Oklahoma's lethal injection process, the State suggests that an execution date not be set pending resolution of Baze and that the appropriateness of setting an execution date be revisited when Baze has been decided by the United States Supreme Court."); see also "AG Asks Court to Delay Issuing Execution Date," News Release, Oklahoma Office of the Attorney General, Oct. 3, 2007, (http://www.oag.state.ok.us/oagweb.nsf/0/2602 3BOED33F8F8E862

5736900699E85!OpenDocument).

Executions have also been stayed in other states while federal courts review the states' lethal injection procedures. Judges in Tennessee, Ohio, California, Delaware, Maryland, and Missouri, have stayed executions while those states' lethal injection protocols are fully reviewed. *Harbison v. Little*, ___ F.Supp.2d ___, 2007 WL 2821230, M.D. Tenn., 2007 (September 19, 2007); *Cooey v. Taft*, Case No. 2:04-cv-1156,S.D.Ohio, Opinion and Order (Doc. 151); *Morales v. Tilton*, Case No. 5-6-cv-219-JF-RS, N.D. Calif., Order entered December 15, 2006 (finding California lethal injection procedure creates "an undue and unnecessary risk" of cruel and unusual punishment in violation of the Eighth Amendment. *See* also Associated Press, "Federal judge grants execution delay for inmate who joined lawsuit," (http://www.toledoblade.com/apps/pbcs.dll/article?AID=/20070 910/NEWS02/70910027) (citing stays issued in lethal injection challenges in California, Delaware, Missouri, Maryland, Ohio).

Alabama's current lethal injection protocol was provided to Mr. Siebert on Friday, October 19, 2007. Court orders issued by the United States District Court for the Middle District of Alabama prohibit Mr. Siebert from describing the

details of this new protocol. *Siebert v. Allen*, Case No. 2:07-cv-295-MEF-WC, M.D. Alabama, Doc.s 58, 68. However, this Court should require that the Department of Corrections submit the protocol to this Court for its inspection and review.

According to public pronouncements issued by the Alabama Department of Corrections, the "new" procedures consist solely of basic, non-medical steps "to check if Siebert is unconcious" before the lethal injection drugs are administered: "'Number one, speaking his name, number two, raking a finger or brushing a finger across his eyelashes, and number three, a pinch on the arm,' said Department of Corrections spokesman Brian Corbett. 'All of those are generally accepted practices.'" *See* WSFA Channel 12 (http://wsfa.com/Global/story.asp?S=7249258).

Such steps, do not begin to bring Alabama's protocol within constitutional limits of risk. Alabama's protocol thus continues to present the same controversy and issues as are pending before the United States Supreme Court in *Baze v. Rees*. *See Baze v. Rees*, ___ S.Ct. ___, 2007 WL 2850507 (granting the petition for writ of certiorari as to Questions 1, 2 and 3); *Baze v. Rees*, ___ S.Ct. ___, 2007 WL 2781088

6

(Petition for Writ of Certiorari).[1]

Further, Mr. Siebert has terminal pancreatic cancer. His resulting physical condition reduces his life expectancy to less than ninety days and creates complications for effective lethal injection. It does not appear that this type of individualized problem has ever been addressed by Alabama's execution protocol.

No executions should be undertaken while the basic question of the procedure's constitutionality is before the United States Supreme Court.

WHEREFORE Mr. Siebert again asks this Honorable Court to

---

[1] The questions accepted for review by the United States Supreme Court are:

I. Does the Eighth Amendment to the United States Constitution prohibit means for carrying out a method of execution that create an unnecessary risk of pain and suffering as opposed to only a substantial risk of the wanton infliction of pain?

II. Do the means for carrying out an execution cause an unnecessary risk of pain and suffering in violation of the Eighth Amendment upon a showing that readily available alternatives that pose less risk of pain and suffering could be used?

III. Does the continued use of sodium thiopental, pancuronium bromide, and potassium chloride, individually or together, violate the cruel and unusual punishment clause of the Eighth Amendment because lethal injections can be carried out by using other chemicals that pose less risk of pain and suffering?

7

rescind its Order setting his execution date and stay his
execution pending a decision by the United States Supreme
Court in *Baze v. Rees*.

Dated: October 23, 2007.

Respectfully submitted,

*Anne E. Borelli*

ANNE E. BORELLI
Ala. SJIS: BOR-016
Federal Defenders
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
TEL: (334) 834-2099
FAX: (334) 834-0353
E-mail: anne_borelli@fd.org

LESLIE S. SMITH
Ala. SJIS: SMI-162
Assistant Federal Defender
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
TEL: (334) 834-2099
FAX: (334) 834-0353
E-mail: leslie_smith@fd.org

LAJUANA DAVIS
Ala. SJIS: DAV-088
122 Commerce Street
Montgomery, Alabama 36104
TEL: (334) 269-1803
FAX: (334) 269-1806
E-mail: ldavis@eji.org

*Counsel for Daniel Lee Siebert*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of October, 2007,

a copy of the foregoing was served by hand delivery on:

Mr. Henry Johnson, Esq.
Assistant Attorney General
Office of the Attorney General
11 South Union Street
Montgomery, Alabama 36130-0152

Mr. J. Clayton Crenshaw, Esq.
Assistant Attorney General
Office of the Attorney General
11 South Union Street
Montgomery, Alabama 36130-0152

Anne E. Borelli

9

# EXHIBIT 2

IN THE SUPREME COURT OF ALABAMA

EX PARTE DANIEL LEE SIEBERT          )
                                     )
In re: STATE OF ALABAMA,             )
                                     )
        Petitioner,                  )
                                     )
v.                                   ) Case No. 1890269
                                     )
DANIEL LEE SIEBERT,                  )
                                     )
        Respondent.                  )

### STATE OF ALABAMA'S RESPONSE TO SIEBERT'S RENEWED MOTION FOR STAY OF EXECUTION

The State hereby responds to Siebert's renewed request for a stay of execution. In that filing, Siebert again asserts that this Court should grant a stay of execution because the United States Supreme Court has recently granted certiorari in Baze v. Rees, 2007 WL 2850507 (October 3, 2007), and their resultant decision could possibly rule on the three-drug protocol that most, if not all, States currently use.

Siebert's appeal of the dismissal of his request for a stay is now pending in the Eleventh Circuit Court of Appeals. Thus, this case will presumably soon work its way up to the United States Supreme Court. The United States Supreme Court, the Court that granted certiorari in Baze, is in the best position to grant a stay because that court

knows whether or not its decision in <u>Baze</u> will have a nationwide impact.

Finally, Siebert has not presented this Court with any evidence indicating that he has a likelihood of success on the merits. In addition, Siebert does not allege what this Court should do with this case if it grants a stay. In other words, Siebert has not presented this Court with any legitimate reason to grant a stay. The State has attached a copy of the brief it filed with the Eleventh Circuit Court of Appeals this morning, *see Exhibit A*, to support its contentions that the federal courts are in the best position to grant a stay because they have been presented with evidence regarding the likelihood of success on the merits whereas this Court has not been presented with such evidence. Furthermore, if a stay is granted in federal court the case can be remanded to the district court where Siebert filed his civil rights lawsuit.

Respectfully submitted,

TROY KING (KIN047)
ATTORNEY GENERAL


*s/ J. Clayton Crenshaw*
J. CLAYTON CRENSHAW (CRE007)
ASSISTANT ATTORNEY GENERAL

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of October, 2007, a copy of the foregoing was served on the attorneys for Daniel Lee Siebert by placing the same in the United States Mail, first class postage prepaid and addressed as follows and emailed:

Anne E. Borelli
Leslie Smith
Federal Defenders
201 Monroe Street, Suite 407
Montgomery, Alabama 36104

LaJuana Davis
Equal Justice Initiative of Alabama
122 Commerce Street
Montgomery, Alabama 36104

*s/ J. Clayton Crenshaw*
J. CLAYTON CRENSHAW
ASSISTANT ATTORNEY GENERAL

State of Alabama
Office of the Attorney General
Capital Litigation Division
11 South Union Street
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-3637
Email: ccrenshaw@ago.state.al.us

# EXHIBIT A

No. 07-14956-P

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

———————————— ◆ ————————————

DANIEL SIEBERT,

Plaintiff/Appellant,

VS.

RICHARD ALLEN, et al.,

Defendants/Appellees.

———————————— ◆ ————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
(Civil Action Number 2:07-cv-00295-MEF-WC)

BRIEF OF APPELLEES

Troy King
*Attorney General*

J. Clayton Crenshaw*
James W. Davis
Corey L. Maze
Jasper B. Roberts, Jr.
*Assistant Attorneys General*

Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, AL  36130-0152
(334) 242-7300 Office
(334) 353-3637 Fax

October 24, 2007

**EXECUTION SCHEDULED FOR OCTOBER 25, 2007**

C-1 of 2

*No. 07-14956-P*

*DANIEL SIEBERT V. RICHARD ALLEN, ET AL.*

**CERTIFICATE OF INTERESTED PERSONS**

Undersigned counsel certifies that the following persons may have an interest in the outcome of this case:

1.    Richard Allen, Commissioner of Alabama Department of Corrections;

2.    Anne Borelli, Counsel for Appellant;

3.    J. Clayton Crenshaw, Assistant Attorney General;

4.    Grantt Culliver, Warden of Holman Correctional Facility;

5.    James W. Davis, Assistant Attorney General;

6.    Christine A. Freeman, Counsel for Appellant;

7.    Hon. Mark E. Fuller, United States District Judge;

8.    Thomas M. Goggans, Counsel for Appellant;

9.    Linda Jarman, capital murder victim;

10.   Hon. Troy King, Alabama Attorney General ;

11.   Corey L. Maze, Assistant Attorney General;

12.   Jasper B. Roberts, Jr., Assistant Attorney General;

C-2 of 2

13.    Daniel Siebert, death row inmate and appellant;

14.    Chad Weathers, capital murder victim;

15.    Joseph Weathers, capital murder victim; and

16.    Sherri Weathers, capital murder victim.

J. CLAYTON CRENSHAW (CRE007)
*Alabama Assistant Attorney General*

## JURISDICTIONAL STATEMENT

The plaintiff-appellant has accurately stated the statement of jurisdiction.

## STATEMENT REGARDING ORAL ARGUMENT

The defendants-appellees believe that the briefs have adequately elucidated the issues in this case and that oral argument is unnecessary.

## CERTIFICATE OF TYPE SIZE AND STYLE

The size and style of type used in this brief is fourteen (14) point Times New Roman.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................C-1

JURISDICTIONAL STATEMENT ...........................................................................i

STATEMENT REGARDING ORAL ARGUMENT ..................................................i

CERTIFICATE OF TYPE SIZE AND STYLE .........................................................i

TABLE OF AUTHORITIES .....................................................................................iv

STATEMENT OF THE ISSUES................................................................................1

STATEMENT OF THE CASE AND FACTS ...........................................................2

ARGUMENT..............................................................................................................8

I.    THIS COURT SHOULD NOT GRANT A STAY OF EXECUTION BASED ON THE GRANT OF CERTIOARI IN BAZE V. REES. ...........................................................................................8

II.   SIEBERT IS NOT ENTITLED TO A STAY OF EXECUTION ON HIS DISMISSED CLAIM THAT ALABAMA'S EXECUTION PROCEDURES ARE UNCONSTITUTIONAL ..................................................................................11

    A.   Siebert Failed To Diligently Pursue This Claim In A Timely Manner ...................................................................................12

    B.   Siebert Has Not Established A Significant Likelihood of Success on the Merits..................................................................12

        1.   Alabama's Execution Procedures Were Enacted To Ensure That They Will Not Cause The Unnecessary and Wanton Infliction of Pain .............................12

        2.   Siebert's Complaint Misrepresents the AVMA's Standards Regarding Euthanasia of Animals .......................................................................................16

III.   SIEBERT IS NOT ENTITLED TO A STAY BASED ON
       HIS   UNSUBSTANTIATED   CLAIM   THAT   HIS
       MEDICATION WILL COUNTERACT THE EFFECTS
       OF THE DRUGS USED IN A LETHAL INJECTION ...............................21

IV.   SIEBERT  IS  NOT  ENTITLED  TO  A  STAY  OF
       EXECUTION BASED ON HIS CLAIM THAT THE USE
       OF  ALABAMA'S  LETHAL  INJECTION  PROTOCOL
       ON  HIM  FOR  ANOTHER  DEATH  SENTENCE  HE
       RECEIVED IS UNCONSTITUTIONAL .....................................................24

V.    SIEBERT HAS NOT ESTABLISHED A SUBSTANTIAL
       LIKELIHOOD   THAT   HE   WILL   SUFFER
       IRREPARABLE HARM IF THE STAY IS DENIED.................................26

VI.   SIEBERT  HAS  NOT  ESTABLISHED  THAT  THE
       LIKELY  HARM  TO  HIM  OUTWEIGHS  THE  LIKELY
       HARM TO THE STATE DEFENDANTS ...................................................27

VII.  SIEBERT HAS NOT ESTABLISHED THAT GRANTING
       A STAY IS IN THE PUBLIC INTEREST ...................................................28

CONCLUSION…………...............................................................................31

CERTIFICATE OF COMPLIANCE......................................................................32

CERTIFICATE OF SERVICE ..............................................................................33

# TABLE OF AUTHORITIES

## Cases

Arthur v. Allen, No. 2007 WL 2709942 (11th Cir. Sept. 17, 2007)....................... 12

Arthur v. King __ F.3d __, 2007 WL 2744884 (11th Cir. Sept. 21, 2007).................................................................................................. 22

Baze v. Rees, No. 07-5439........................................................ 7, 8, 10, 11

Boyd v. Beck, 404 F. Supp. 2d 879 (E.D. N.C. 2005) ........................................... 26

Ex parte Siebert, 555 So. 2d 780 (Ala. 1989)...................................................... 2, 28

Ex parte Siebert, 562 So. 2d 600 (Ala. 1990).........................................................2

Gomez v. U.S. Dist. Ct. for the Northern Dist. of Cal., 513 U.S. 653 (1992) ................................................................................. 30

Grayson v. Allen, 491 F.3d 1318 (11th Cir. 2007)................................................. 12

Gregg v. Georgia, 428 U.S. 153 (1976).................................................................. 16

Harbison v. Little, 3:06-01206.................................................................. 17

Harris v. Johnson, 376 F.3d 414 (5th Cir. 2004) ................................................... 30

Herrera v. Collins, 506 U.S. 390 (1993)................................................. 28

Hill v. McDonough, 126 S. Ct. 2096 (2006) ....................................... 12, 22, 26, 30

Hill v. McDonough, 2006 WL 1194528 (Apr. 26, 2006)........................................ 17

In re Sapp, 118 F.3d 460 (6th Cir. 1997)................................................. 28

Johnson v. Breeden, 280 F.3d 1308 (11th Cir. 2002)............................................ 25

Jones v. Allen, 2:06-cv-986-MHT-TFM ......................................................... 13, 15

Malicoat v. Oklahoma, 137 P.3d 1234 (Okla. Crim. App. 2006)........................... 13

McClesky v. Zant, 499 U.S. 467 (1991).................................................................. 27

Nelson v. Campbell, 541 U.S. 637 (2004)........................................... 26, 27, 29, 30

Reid v. Johnson, 333 F. Supp. 2d 543 (E.D. Va. 2004)......................................... 27

Rutherford v. Crosby, 438 F.3d 1087 (11th Cir. 2006)......................................... 11

Rutherford v. McDonough, 466 F.3d 970 (11th Cir. 2006) ............................ 12, 30

Siebert v. Allen, 127 S.Ct. 1823 (2007).....................................................................2

Siebert v. Allen, No. 06-1680 .............................................................................. 24

Siebert v. State, 555 So. 2d 772 (Ala. Crim. App. 1989) ............................ 2, 28, 29

Siebert v. State, 778 So. 2d 842 (Ala. Crim. App. 1989) ........................................2

Walker v. Johnson, 448 F. Supp. 2d 719 (E.D. Va. 2006) .................................... 13

Williams v. Allen, __ F.3d __, No. 07-13638, 2007 WL 2368028
    (11th Cir. Aug. 21, 2007) .................................................................................. 12

## Statutes

United States Code
18 U.S.C. § 3626(a)(1)-(2)...................................................................................... 25

Alabama Administrative Code
§ 420-2-1-.14 (2007)............................................................................................. 15

## Other Authorities

AVMA Guidelines on Euthanasia .................................................................. passim

Journal of the American Veterinary Medical Association and the
      American Journal of Veterinary Research ............................................................. 18
Prison Litigation Reform Act................................................................................ 25, 26

## STATEMENT OF THE ISSUES

1.    Whether the federal district court correctly denied a stay on Siebert's "medical condition" claims, a conclusion supported by the fact that: (a) Siebert filed his amended complaint on July 19, 2007, with vagueness stating that an execution could be problematic due to Siebert's recently diagnosed pancreatic cancer; (b) yet Siebert never requested discovery, or any expedition of this claim, or an evidentiary hearing; (c) and the only "evidence" Siebert presented in support of this allegation is an unsworn letter (dated October 12, 2007, but filed in district court on October 19, 2007) from an oncologist that states only that complications could arise.

2.    Should this Court follow its binding precedent and not grant a stay of execution on the basis that the Supreme Court has granted certiorari in another case raising similar issues.

3.    Whether Siebert should be granted a stay of execution on his general lethal-injection challenge even though: (a) he filed his lawsuit with inexcusable delay, (b) he has not demonstrated a likelihood of success on the merits, (c) the State of Alabama has a recognized interest in the timely enforcement of its duly-adjudicated judgment.

## STATEMENT OF THE CASE AND FACTS

Daniel Siebert ("Siebert") has been on Alabama's Death Row for over twenty years for the capital murder of Sherri Weathers and her two children, Chad and Joey. <u>Siebert v. State</u>, 555 So. 2d 772, 773-75 (Ala. Crim. App. 1989), <u>aff'd</u>, <u>Ex parte Siebert</u>, 555 So. 2d 780 (Ala. 1989).[1]  Siebert exhausted his state and federal appeals when the Supreme Court denied certiorari on March 19, 2007. <u>Siebert v. Allen</u>, 127 S.Ct. 1823 (2007).  It was at that point, out of appeals and facing imminent execution, that Siebert filed a § 1983 action challenging Alabama's execution procedures.  See Doc. 1 (filed on April 9, 2007).

On April 17, 2007, the State of Alabama requested that the Alabama Supreme Court set a date for Siebert's execution.  See Doc. 13, Ex. A.  On July 30, 2007, the Alabama Supreme Court entered an order setting an execution date of October 25, 2007, for Siebert.

Because Siebert unjustifiably delayed in filing this lawsuit, the defendants moved to dismiss it on laches and statute-of-limitations grounds.  Doc. 13.  In addition, the defendants moved to dismiss Siebert's complaint because it failed to state a claim upon which relief can be granted.  <u>Id.</u>

---

[1] Siebert was also sentenced to death for committing a different capital offense on the same evening.  <u>Siebert v. State</u>, 778 So. 2d 842 (Ala. Crim. App. 1989), <u>aff'd</u>, <u>Ex parte Siebert</u>, 562 So. 2d 600 (Ala. 1990).  The federal district court's order refers to that case as the "Jarman murder."  Doc. 70 at 6 n.7.

On July 19, 2007, Siebert filed an amended complaint "on the basis of his recent preliminary diagnosis of hepatitis C and pancreatic cancer." Doc. 21 at ¶ 2. The federal district court interpreted Siebert's allegations as follows: "Siebert … urges a specific challenge to that method of execution as it will be applied to him with his particular medical problems and the particular potential drug interactions between drugs he is taking for his medical problems and the drugs used in the lethal injection protocol." Doc. 39 at 7. The federal district court also found that Siebert's amended complaint raised another claim: "The other significant change to the allegations Siebert made in the Amended Complaint was the inclusion of facts relating to another Alabama murder conviction for which he received a death sentence." Doc. 39 at 7-8 (citing Siebert v. State, 562 So. 2d 586 (Ala. Crim. App. 1989)). The federal district court stated that Siebert "added allegations intended to address the use of the Alabama lethal injection protocol on him for the death sentence he received for the Jarman murder in Talladega County." Doc. 39 at 19.

Despite raising those claims several months ago - on July 19, 2007 - Siebert did not ask the federal district court "to expedite any aspect of this lawsuit." Doc. 70 at 6. Two months after filing his amended complaint, Siebert filed a motion to allow a physician to perform a "general physical examination." Doc. 32 at 1 (filed on September 26, 2007). Siebert further stated that "[s]uch an examination is necessary to Mr. Siebert's presentation of his claims, which include potential

complications between his medical condition, its treatment, and the lethal injection process as conducted by the Defendants." <u>Id.</u> Even though Siebert's motion was granted, see Docs. 35, 40, such an examination had not been scheduled as of the filing of this brief, on October 24, 2007. In addition, Siebert has not presented any evidence to support <u>his</u> conclusion that his medication will counteract the effects of the drugs used in a lethal injection, which is the primary allegation in his amended complaint. Doc. 70 at 17.

On October 3, 2007, the federal district court granted in part and denied in part the defendants' motion to dismiss Siebert's amended complaint. Doc. 39. The court ruled that "this Court is compelled to find that with respect to Siebert's general challenges to the execution protocol, Siebert is not entitled to injunctive relief because he delayed in filing his method-of-execution § 1983 suit until his execution was imminent." Doc. 39 at 18. "Given the strong presumption against the grant of equitable relief to those who have been dilatory in requesting it, the general challenges to the execution protocol in Siebert's suit are due to be dismissed because he unnecessarily delayed in bringing suit until his execution was imminent and until there was not sufficient time to allow full adjudication on the merits of his claims without entry of a stay of his execution." <u>Id.</u> In other words, the federal district court granted the defendants' motion to dismiss "with respect to

Siebert's general challenge to the Alabama lethal injection protocol with respect to the execution of his sentence for the murder of Weathers and her children." Id.

However, the federal district court denied the defendants' motion to dismiss regarding the two newly-raised claims that Siebert alleged in his amended complaint. Doc. 39 at 19-22. The federal district court did not dismiss these claims because it found that Siebert did not unreasonably delay in filing them. Id. As previously stated, the federal district construed these two newly-raised claims as follows:

> First, he alleges that because of recently discovered changes in his physical condition would mean that execution of him using Alabama's lethal injection protocol would likely result in an unacceptable risk of unnecessary pain in violation of the protections against cruel and unusual punishment found in the Eighth Amendment. Second, he has added allegations intended to address the use of the Alabama lethal injection protocol on him for the death sentence he received for the Jarman murder in Talladega County.

Doc. 39 at 19.

Even though the federal district court did not deny Siebert's newly-raised claims, Siebert never sought any discovery nor did he present any evidence to support those allegations. Siebert, rather unbelievably, did not mention the newly-raised claims at all in his emergency motion requesting a stay. See Doc. 44. In addition, Siebert did not present any evidence in his motion for stay to support these claims. See Doc. 44. It was only in his reply brief – when the defendants

could not respond – that Siebert submitted an unsworn letter from an oncologist that speculates that Siebert could regurgitate his stomach contents during an execution and that he might have compromised veins. Doc. 64, Ex. D. Even though the letter is dated October 12, 2007, see id., Siebert withheld it until October 19, when he filed it with the Court. Siebert offered no explanation for failing to file this letter earlier.

On October 18, 2007, the defendants filed the newly-revised protocol in the federal district court, which added a consciousness assessment of the inmate after the anesthesia is injected. See Doc. 56.[2] On September 27, 2007, Governor Riley granted inmate Thomas Arthur a 45-day reprieve for the "sole purpose" of "allow[ing] the Alabama Department of Corrections sufficient time to make modifications to its lethal injection protocol." The Governor further stated that "[i]t is my desire that the Alabama Attorney General will make a motion for, and that the Alabama Supreme Court will promptly set, a new date of execution at the expiration of this 45-day period." The federal district court's order denying the stay accurately states that "[w]hile the revised protocol does not change either the type or quantity of any chemical used, it does add additional measures apparently aimed at verifying that an inmate is unconscious before the Pavulon and potassium

---

[2] The defendants note that Siebert never sought discovery of the protocol that was in place at the time Siebert filed his complaint. See Doc. 1 (filed on April 9, 2007).

6

chloride are injected." See Doc. 70 at 9. The newly-revised procedures are as follows:

> After the sodium pentothal has been administered and before the Pavulon is administered, the team member at the inmate's left side performs an assessment of the consciousness of the inmate by applying graded stimulation. First, he says the inmate's name. If there is no response, he will gently stroke the inmate's eyelashes. If there is no response, he will then pinch the inmate's arm. In the event that the inmate is still conscious at this time, the secondary IV line is used to administer an additional dose of 100 cc of sodium pentothal. The consciousness assessment is then repeated.

Doc. 70 at 12.

Siebert has filed in this Court a motion requesting a stay of his execution and a supporting brief. Instead of discussing evidence to support the allegations in his complaint, Siebert contends he is entitled to a stay because the United States Supreme Court recently granted certiorari to review a method-of-execution case. Baze v. Rees, No. 07-5439. In addition, Siebert's request for a stay references other decisions that have granted a stay of execution based on the grant of certiorari in Baze. For the following reasons, the defendants respectfully request this Court to deny Siebert's request for a stay.

## ARGUMENT

## I.   THIS COURT SHOULD NOT GRANT A STAY OF EXECUTION BASED ON THE GRANT OF CERTIOARI IN <u>BAZE V. REES</u>

Siebert asserts that this Court should grant a stay of execution because the United States Supreme Court granted a writ of certiorari in <u>Baze v. Rees</u>, 07-5439, on September 25, 2007. That petition contends, among other things, that the Kentucky Supreme Court used an inappropriate standard in ruling that Kentucky's execution procedures are constitutional. Contrary to Siebert's assertions, the United States Supreme Court's grant of certiorari review in <u>Baze</u> does not entitle him to a stay.

First, the certiorari grant in <u>Baze</u> is specifically constrained to cases where no execution is pending. Second, the <u>Baze</u> case is unencumbered by any of the procedural hurdles present in Siebert's case. <u>Baze</u> involved a direct challenge to the Kentucky protocol through the state courts; it was timely and thus not filed with the inexcusable delay in which Siebert filed his action. Third, the primary issues presented in <u>Baze</u> appear to be related to the standard to be used when assessing method-of-execution claims on the merits. Conversely, consideration of the merits of Siebert's claim - no matter what forum he chose to present it - would face procedural hurdles for which he has failed to offer any basis to overcome. Thus, Siebert's case falls outside the purview of the Court's grant of certiorari in <u>Baze</u>. Indeed, it is no different from any other eleventh-hour challenge to an execution. It is dilatory and it does not justify the granting of a stay of execution.

The federal district court, in relevant part, ruled as follows regarding Siebert's dilatory filing of the lethal-injection challenge:

While Siebert could not have brought this lawsuit challenging the lethal injection protocol employed by the State of Alabama for execution before 2002, when it adopted that method of execution, he certainly could have done so at any time after that date. His delay in bringing his generic, general challenge was unnecessary and inexcusable. [Footnote omitted.] Like the plaintiff in Grayson, if Siebert "truly had intended to change Alabama's lethal injection protocol, he would not have deliberately waited to file suit until a decision on the merits would be impossible without the entry of a stay or an expedited litigation schedule." Grayson, 491 F.3d at 1326. The Court finds no justification for Siebert's failure to bring this action earlier and his dilatory filing of this suit leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out. Both the State of Alabama and the family of the victim of Siebert's crime have strong interests in seeing Siebert's punishment carried out after waiting more than nearly twenty years since the sentence was imposed. Grayson, 491 F.3d at 1326.

In light of the prior binding precedents from the Eleventh Circuit Court of Appeals, this Court is compelled to find that with respect to Siebert's general challenges to the execution protocol, Siebert is not entitled to injunctive relief because he delayed in filing his method-of-execution § 1983 suit until his execution was imminent. He did not file this lawsuit until after the last possible obstacle to the State of Alabama setting his execution date had passed. Given the strong presumption against the grant of equitable relief to those who have been dilatory in requesting it, the general challenges to the execution protocol in Siebert's suit are due to be dismissed because he unnecessarily delayed in bringing suit until his execution was imminent and until there was not sufficient time to allow full adjudication on the merits of his claims without entry of a stay of his execution. For this reason, Defendants' motion to dismiss is due to be

9

> GRANTED with respect to Siebert's general challenge to
> the Alabama lethal injection protocol with respect to the
> execution of his sentence for the murder of Weathers and
> her children.

Doc. 39 at 17-18. This Court should not reward Siebert's dilatory filing with a stay

of execution.

Siebert further contends that he should be granted a stay, despite his dilatory

filing, because the United States Supreme Court's decision in Baze could possibly

rule on the three-drug protocol that most, if not all, States currently use. Siebert's

§ 1983 lawsuit will presumably soon work its way up to the United States Supreme

Court. Thus, the United States Supreme Court is in the best position to grant a stay

because that Court knows whether or not its opinion in Baze will have a

nationwide impact.

It is common for inmates who have exhausted all of their state and federal

court appeals to attempt to find a reason to submit to a court in an effort to delay an

execution. The grant of certiorari review of a death penalty case by the United

States Supreme Court is a reason frequently raised by inmates who are seeking to

delay imminent execution. This Court, in rejecting such a request, ruled as

follows:

> [T]he Supreme Court is in a better position to decide
> whether it wants a stay of execution issued in this case
> than we are, and it has time to make a decision about a
> stay. All of the papers filed in the district court and in
> this Court throughout this proceeding have been

> contemporaneously lodged with the Supreme Court, and
> that Court will have our opinion within minutes of the
> time we issue it. . . .
>
> … At least four times over the years we have been asked
> to issue a stay of execution based on a grant of certiorari
> in another case raising an issue identical to one that the
> movant was raising in the case before us, an issue
> foreclosed by existing circuit precedent that might be
> overruled by the Supreme Court. All four times we have
> declined to do so because the grant of certiorari does not
> change circuit precedent, and it makes more sense to let
> the Court that is going to be deciding the issue determine
> whether there should be a stay in another case raising it.

Rutherford v. Crosby, 438 F.3d 1087, 1093 (11th Cir. 2006). The State

respectfully requests this Court to follow its binding precedent and deny Siebert's

request for a stay.

## II.   SIEBERT IS NOT ENTITLED TO A STAY OF EXECUTION ON HIS DISMISSED CLAIM THAT ALABAMA'S EXECUTION PROCEDURES ARE UNCONSTITUTIONAL

Siebert does not expressly contend that he is entitled to a stay of execution

based on the dismissed claim that Alabama's execution procedures are

unconstitutional. Instead, Siebert relies on the grant of certiorari in Baze along

with the patchwork of stays that have subsequently been granted, presumably

because of Baze. The district court did not mention the lethal-injection challenge

in its order denying the stay because that claim had previously been dismissed.

See Doc. 39. However, because Siebert mentions this claim in his motion for stay

and in his supporting brief, the defendants offer the following response.

**A.    Siebert Failed To Diligently Pursue This Claim In A Timely Manner**

The federal district court applied binding precedent from this Court and the Supreme Court in dismissing this claim because it was filed with unjustifiable delay.  Doc. 39 at 10-19 (citing <u>Hill v. McDonough</u>, 126 S. Ct. 2096 (2006); <u>Arthur v. Allen</u>, No. 07-13929, 2007 WL 2709942 (11th Cir. Sept. 17, 2007); <u>Williams v. Allen</u>, __ F.3d __, No. 07-13638, 2007 WL 2368028 (11th Cir. Aug. 21, 2007); <u>Grayson v. Allen</u>, 491 F.3d 1318 (11th Cir. 2007); <u>Rutherford v. McDonough</u>, 466 F.3d 970 (11th Cir. 2006)).  Siebert's motion for a stay does not challenge any part of the federal district court's ruling dismissing this claim.  Thus, the federal district court correctly dismissed Siebert's lethal injection challenge because it was filed with inexcusable delay.

**B.    Siebert Has Not Established A Significant Likelihood of Success on the Merits**

Although Siebert has not made any showing of a likelihood of success on the merits of his lethal-injection challenge, defendants offer the following rebuttal to the allegations contained in Siebert's complaint.

**1.    Alabama's Execution Procedures Were Enacted To Ensure That They Will Not Cause The Unnecessary and Wanton Infliction of Pain**

Like every other State that carries out lethal injections, Alabama uses a three-drug cocktail.  <u>See</u> <u>e.g.</u>, <u>Malicoat v. Oklahoma</u>, 137 P.3d 1234, 1236 (Okla. Crim.

12

App. 2006); Walker v. Johnson, 448 F. Supp. 2d 719, 720 (E.D. Va. 2006). The basic protocol is as follows: First, 2.5 grams of sodium thiopental are administered. Doc. 54, Exhibit 1, Dershwitz Declaration at ¶ 5.[3] "Sodium thiopental is a barbiturate that induces sleep within thirty to sixty seconds." Walker, 448 F. Supp. 2d at 720. After the line is flushed with a saline solution, a dose of pancuronium bromide is administered. Exhibit 1 at ¶ 5. "Pancuronium bromide is a neuromuscular blocking agent that paralyzes all muscles except the heart within two to four minutes." Walker, 448 F.Supp.2d at 720. After the line is again flushed with a saline solution, a dose of potassium chloride is administered to the inmate. Doc. 54, Exhibit 1 at ¶ 5. "Potassium chloride is a drug that induces cardiac arrest." Walker, 448 F.Supp. 2d at 720.

Dr. Dershwitz performed an analysis of the effects of a "2,500-mg dose of sodium thiopental [the amount of anesthesia used during an execution] given to an average man with mass of 80 kilograms or about 176 pounds." Doc. 54, Exhibit 1 at ¶ 8. Dr. Dershwitz is uniquely qualified to perform such an analysis. He has conducted extensive research into the pharmacodynamics and the pharmacokinetics of drugs. Id. at ¶ 2. He explains that "[p]harmacokinetics is the study of the time

---

[3] Dr. Mark Dershwitz prepared a declaration that was filed in Jones v. Allen, 2:06-cv-986-MHT-TFM. Dr. Dershwitz is a board-certified anesthesiologist at the University of Massachusetts and Professor of Anesthesiology and Biochemistry and Molecular Pharmacology at the University of Massachusetts. Dershwitz Declaration ¶ 1. The defendants offer Dr. Dershwitz's declaration here in response to the unsupported allegations contained in Siebert's complaint.

course of a drug, while pharmacodynamics refers to the effects of a drug." Id. at ¶

2. Dr. Dershwitz stated the following regarding the likelihood of unconsciousness

after the administration of sodium thiopental:

> It is my opinion, to a reasonable degree of medical
> certainty, that the dose of thiopental sodium used by
> Alabama would render most people unconscious within
> 60 seconds from the time the injection of thiopental
> sodium begins. By the time all 2,500 mg of thiopental
> sodium solution are injected, it is my further opinion, to a
> reasonable degree of medical certainty, that more than
> 99.9999999% of the population would be unconscious.
> Furthermore, this dose of thiopental sodium will cause
> virtually all persons to stop breathing. Thus, although the
> subsequent administration of pancuronium bromide, a
> paralytic agent, would have the effect of paralyzing the
> person and preventing him from being able to breathe,
> virtually every person given 2,500 mg of thiopental
> sodium will have stopped breathing prior to the
> administration of the pancuronium bromide. Thus, even
> in the absence of the administration of pancuronium
> bromide and potassium chloride, the administration of
> 2,500 mg of thiopental sodium by itself would eventually
> cause death in almost everyone.

Doc. 54, Exhibit 1 at ¶ 12. Dr. Dershwitz characterizes the dose of sodium

thiopental as "five to eight times higher than that typically used in clinical

anesthesia." Id. ¶ 28. Dr. Dershwitz finally concludes that "the administration of

the medications as described above … will, beyond a reasonable degree of medical

certainty, result in the rapid and painless death of the inmate." Id. ¶ 38.

Alabama's lethal-injection protocol further provides that two intravenous

fluid drips will be established, one for the primary vein and the other for an

alternative line if needed. Warden Culliver testified by affidavit that two emergency medical technicians (EMT) are on hand to gain peripheral venous access to the inmate before the drugs are administered. Doc. 54, Exhibit 2 at ¶ 2.[4] The Warden further stated that both EMTs are employed with an ambulance service and are credentialed as EMT-Paramedics. Id. Administrative regulations promulgated by the Alabama Department of Public Health state that EMTs who are licensed as EMT-Paramedics can administer intravenous drugs and maintain I.V. drips. Ala. Admin. Code § 420-2-1-.14 (2007).

In the event that peripheral venous access is unsuccessful, a medical doctor (MD-1) is on hand to obtain central venous access. Doc. 54, Exhibit 3 at ¶ 6.[5] MD-1 is credentialed at a hospital to perform various procedures, including "central venous catheter placement." Id. at ¶ 8. MD-1 also stated that his medical malpractice insurance policy allows for the performance of these procedures. Id. Because the EMTs have always succeeded in gaining peripheral venous access, MD-1 has never had to perform a central line procedure to gain venous access on an inmate for execution purposes. Doc. 54, Exhibit 3 at ¶ 9.

---

[4] Exhibit 2 is an affidavit from Warden Culliver that was presented in Jones v. Allen, 2:06-cv-986-MHT, a lawsuit that contended that Alabama's execution procedures are unconstitutional. It is presented here to rebut Siebert's unsupported allegations contained in his complaint.

[5] Exhibit 3 is an affidavit from James Houts, a then Assistant Attorney General, that was filed in Jones v. Allen, 2:06-cv-986-MHT. It is presented here to rebut Siebert's unsupported allegations contained in his complaint.

The execution protocol, as it is written and carried out, does not create a significant and unnecessary risk that Siebert will suffer pain during the execution. Farmer, 511 U.S. at 834 (ruling that the plaintiff inmate must establish a substantial risk of harm); see also Gregg v. Georgia, 428 U.S. 153, 173 (1976)(holding that punishments are cruel when they "involve the unnecessary and wanton infliction of pain"). In addition, an Eighth Amendment violation cannot be established without a showing that defendants will exhibit deliberate indifference in carrying out the execution. Indeed, the evidence indicates that Alabama ensures that the inmate is unconscious by administering a lethal dose of sodium thiopental. Licensed and qualified EMT-Paramedics gain venous access to the inmate in precisely the same way that they could do to any member of the public if they were the first-responders at an accident. In the event that peripheral venous access is unsuccessful, a medical doctor, who is credentialed to perform central line procedures, is present to gain venous access to the inmate if necessary.

##### 2.    Siebert's Complaint Misrepresents the AVMA's Standards Regarding Euthanasia of Animals

Siebert's complaint contends that "the use of neuromuscular paralyzing drugs, including pancuronium bromide (Pavulon), solely or in conjunction with other drugs, is unacceptable as a method of euthanasia." Doc. 21 at 9. Siebert also contends that "the AVMA recommends the use of a longer lasting barbiturate for animal euthanasia than the Thiopental that is used in Alabama executions of death-

sentenced prisoners." Id. Siebert does not provide citations to the AVMA Guidelines to support these allegations.

Allegations comparable to those made in Siebert's complaint are so pervasive in lethal-injection litigation that similar assertions have been mentioned during Supreme Court oral arguments and in a recent decision that ruled Tennessee's execution procedures are unconstitutional. During the oral argument of Hill v. McDonough, Justice Stevens asked the following question: "But your procedure, if I understand it, would be prohibited to be applied to dogs or cats." 2006 WL 1194528 at *35 (Apr. 26, 2006). Several weeks ago, United States District Judge Aleta Trauger, in an order ruling that Tennessee's execution procedures are unconstitutional, stated that "[d]ue to the risk that pancuronium bromide could cause an animal to suffocate to death while paralyzed but fully awake, the use of the drug on animals for purposes of euthanasia is prohibited in Tennessee by the Nonlivestock Humane Death Act." Harbison v. Little, 3:06-01206, slip op. at 18. As the following demonstrates, the AVMA Guidelines do not prohibit the use of anesthesia and a neuromuscular blocking agent via separate syringes.

The defendants, in rebuttal to Siebert's misrepresentation of the AVMA Guidelines, submitted an affidavit from Dr. Gail Golab, the Interim Director of the Animal Welfare Division of the AVMA. Doc. 54, Exhibit 4. Dr. Golab's affidavit

addressed some of the issues regarding the AVMA Guidelines on Euthanasia. <u>Id.</u>

There can be no question that Dr. Golab is qualified to testify on issues regarding

the AVMA Guidelines. <u>Id.</u> at 2. Dr. Golab earned a Ph.D. in Biochemistry in 1987

from Texas A&M University, and a D.V.M., with honors, in 1991 from the

University of Illinois. <u>Id.</u> After three years of private practice, she accepted a

position with the AVMA as a "scientific editor for the Journal of the American

Veterinary Medical Association and the American Journal of Veterinary

Research." <u>Id.</u> In 1998, Dr. Golab "joined the AVMA's Division of Education and

Research as an assistant director," becoming "associate director" in 2006, and

"interim director" in 2007 of the newly created Animal Welfare Division. <u>Id.</u>

The primary misrepresentation in Siebert's complaint concerning the

AVMA Guidelines concerns its contention that a neuromuscular blocking agent

cannot be used in conjunction with anesthesia. Doc. 21 at ¶ 29. The AVMA

Guidelines instead prohibits the following: "A <u>combination</u> of pentobarbital with a

neuromuscular blocking agent is not an acceptable euthanasia agent." AVMA

Guidelines, see Doc. 54, Exhibit 5 at 11 (emphasis added). Dr. Golab states the

following regarding the above-quoted prohibition:

> The quoted text refers to a mixture of a barbiturate and
> neuromuscular blocking agent in the same syringe.
> When used in that fashion, it can be difficult to ascertain
> which would act first and, thereby, an animal might
> become paralyzed while still conscious. This is not the
> case in human lethal injection: drugs are administered in

> order and via separate syringes. The AVMA's statement
> should not be interpreted as a condemnation of the
> appropriate administration of these combinations (i.e., in
> the appropriate order and via separate syringes).

Doc. 54, Exhibit 4 at 3. As Dr. Golab states, the AVMA Guidelines do not express

an opinion on whether a neuromuscular blocking agent can be administered via

separate syringes, as is the case in a lethal injection.

Because the AVMA Guidelines have been so widely misinterpreted, the

AVMA was compelled to place the following statements on the cover of the

Guidelines:

> (a) The guidelines are in no way intended to be used for
> human lethal injection.
>
> (b) The application of a barbiturate, paralyzing agent, and
> potassium chloride delivered in separate syringes and
> stages (the common method used for human lethal
> injection) is not cited in the report.
>
> (c) The report never mentions pancuronium bromide or
> Pavulon, the paralyzing agent used in human lethal
> injection.

Id. at 2-3, Doc. 54, Exhibit 5 (cover page). Dr. Golab stated those statements were

placed on the cover of the AVMA Guidelines for the following reasons:

> These statements were included on the cover because the
> AVMA is concerned that its guidelines are
> inappropriately being used to draw conclusions regarding
> lethal injections administered to individuals as a form of
> capital punishment. The panel's objective in developing
> the report was to give veterinarians guidance for
> relieving pain and suffering of nonhuman animals that

> are to be euthanized. Recommendations in the report are
> intended to be guidelines for veterinarians who must then
> use professional judgment in applying them to the
> various settings where nonhuman animals are to be
> euthanatized. The report cannot and should not be
> extrapolated to apply to lethal injection procedures for
> people.

Doc. 54, Ex. 4 at 3-4.

Siebert's unsupported allegations regarding the AVMA Guidelines are irrelevant to the issues presented in this case because those provisions are regulating how veterinarians euthanize animals. Obviously, thousands of animals are euthanized on a daily basis by veterinarians and the AVMA, along with State statutes, impose various regulations and guidelines. Of course, there is no similar mechanism in place for human lethal injection. In addition, a quick look at the AVMA Guidelines demonstrates that it should not be used as any type of marker to which human lethal injection is comparable. The AVMA Guidelines address euthanasia by some of the following methods: (1) penetrating captive bolt, (2) euthanasia by a blow to the head, (3) gunshot, (4) cervical dislocation, and (5) decapitation. Doc. 54, Exhibit 5 at 13-14. It should be obvious that the AVMA Guidelines cannot be considered and are thus irrelevant in considering whether execution procedures are unconstitutional.

Thus, any reference to the AVMA Guidelines or to animal euthanasia in general is irrelevant to the issues before this Court. The AVMA Guidelines

prohibits only the use of pentobarbital in combination with a neuromuscular blocking agent in the same syringe.[6]   Doc. 54, Exhibit 5 at 3.   The AVMA Guidelines have been so widely misinterpreted that the AVMA found it necessary to include a warning that the Guidelines should not be used to support any contention regarding lethal injection. Doc. 54, Exhibit 5 (cover sheet). In addition, any reference to animal euthanasia in general is irrelevant to the issues presented here. As Dr. Golab states, the Guidelines are to be used only by veterinarians as recommendations on how to carry out animal euthanasia. As is stated on the Guidelines cover sheet, "the guidelines are in no way intended to be used for human lethal injection."

*      *      *

In sum, Siebert is not entitled to a stay of execution based on a claim that has been dismissed. Siebert filed his lethal-injection challenge with inexcusable delay and he has not established a likelihood of success on the merits.

## III.   SIEBERT IS NOT ENTITLED TO A STAY BASED ON HIS UNSUBSTANTIATED CLAIM THAT HIS MEDICATION WILL COUNTERACT THE EFFECTS OF THE DRUGS USED IN A LETHAL INJECTION

In his amended complaint, Siebert "urges a specific challenge to that method of execution as it will be applied to him with his particular medical problems and

---

[6] The AVMA Guidelines indicate that in certain situations the use of pentobarbital in sequence with a neuromuscular blocking agent is appropriate. Exhibit 5 at 18.

the particular potential drug interactions between drugs he is taking for his medical problems and the drugs used in the lethal injection execution protocol." Doc. 39 at 7. Despite raising this claim several months ago - on July 19, 2007 - Siebert presented for the first time on October 19, 2007, information in support of this allegation. Siebert submitted a letter from Dr. Jimmie Harvey of Birmingham Hematology and Oncology Associates, which is dated October 12, 2007. The federal district court noted that it "is without any information whatsoever about Dr. Harvey's education, scholarly publications, qualifications, or expertise." Doc. 70 at 22-23. Moreover, Dr. Harvey's letter "is neither a sworn affidavit, nor a declaration under penalty of perjury." Id. at 23. This Court has ruled that an unsworn document cannot be properly considered by the lower court. Arthur v. King __ F.3d __, 2007 WL 2744884 at *7 (11th Cir. Sept. 21, 2007) ("Because Melson's affidavit was unsworn, it was not properly considered by the district court.")(citing Holloman v. Jacksonville Housing Auth., No. 06-10108, 2007 WL 245555 at *2(per curiam)("unsworn statements, even from *pro se* parties, should not be 'consider[ed] in determining the propriety of summary judgment'") (quoting Gordon v. Watson, 622 F.2d 120, 123 (5th Cir. 1980) (per curiam))). Thus, Dr. Harvey's letter should not be considered by this Court.

For this Court to grant a stay of execution, Siebert has to demonstrate a likelihood of success on the merits. Hill, 126 S. Ct. at 2104. The federal district

court ruled that Dr. Harvey's letter did not establish a likelihood of success on the merits. First, Dr. Harvey's opinion that an inmate could regurgitate during an execution was not related to Siebert's medical condition but rather to any inmate. Doc. 70 at 29 n. 31. The federal district court ruled that the "general Hill-type challenges are not properly before this Court on [the stay motion]." Id. Second, Dr. Harvie's letter does not undermine in any way Dr. Dershwitz's opinion that the dose of sodium thiopental used by Alabama will cause a rapid and painless death. Doc. 70 at 30. Finally, to the extent Dr. Harvey's letter references Siebert's "compromised veins," there is not any indication that he examined Siebert or that any of Siebert's extensive medical records support that conclusion. Doc. 70 at 30. The court concluded that "[i]n light of all the evidence in the record before this Court, the Court finds that Siebert has failed to establish a substantial likelihood of success on the merits of his claim that because of his physical condition the use of the Alabama lethal injection protocol will result in the violation of his constitutional rights." Doc. 70 at 31.

Finally, despite filing the amended complaint on July 19, 2007, see Doc. 21, Siebert never requested discovery on this claim or an expedited ruling on this claim. Siebert also did not present any evidence in support of this allegation until less than a week before his scheduled execution. Siebert never requested an evidentiary hearing to present evidence to support this allegation even though he

had time to do so.  All of these facts lead to the conclusion that Siebert only filed

this claim to delay his execution and not because he thought this claim had any

merit.

## IV.    SIEBERT IS NOT ENTITLED TO A STAY OF EXECUTION BASED ON HIS CLAIM THAT THE USE OF ALABAMA'S LETHAL INJECTION PROTOCOL ON HIM FOR ANOTHER DEATH SENTENCE HE RECEIVED IS UNCONSTITUTIONAL

The federal district court construed this claim to challenge the "use of

Alabama's lethal injection protocol … for the death sentence he received for the

Jarman murder in Talladega County." Doc. 39 at 19.  Siebert's other death penalty

case is pending in the United States Supreme Court on the State's petition for

certiorari that seeks review of the Eleventh Circuit's opinion that ruled Siebert's

habeas petition was timely filed.  Siebert v. Allen, No. 06-1680.  Although Siebert

does not explicitly say so, he seems to suggest that a stay of execution should be

granted so that he can litigate the constitutionality of Alabama's execution

procedures in his death penalty habeas case that is still pending in the United States

Supreme Court.

Siebert does not cite any authority regarding why his other death penalty

case has any relevance to the balance of the equities in this case.  Siebert's

execution has been set for the Weathers murders and his late-filed claim was

dismissed on the relevant equities involved with that case.  There is no precedent

for granting a stay of execution on the grounds that an inmate has another death

24

penalty case that is still being litigated. Such an argument would allow an inmate to benefit from the fact that he committed more than one capital offense. In addition, such a ruling could provide inmates an incentive to commit a capital offense in prison because, so Siebert's frivolous argument goes, as long as an inmate is litigating another case they should be granted a stay of execution. This Court should not allow this kind of a bizarre result.

Furthermore, the district court correctly determined that 18 U.S.C. § 3626(a)(1)-(2), the Prison Litigation Reform Act (hereinafter "PLRA"), disentitles Siebert to a stay of execution to enable him to litigate his general lethal injection Hill–claim as it relates to the sentence he received for the Jarman murder. This Court has summarized the relevant section of the PLRA as follows:

> Section 3626(a)(1)(A) provides in its opening sentence that any prospective relief "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs," and then goes on to provide that prospective relief must not be granted "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

Johnson v. Breeden, 280 F.3d 1308, 1325 (11th Cir. 2002) (quoting 18 U.S.C. § 3626(a)(1)-(2)).

The district court correctly noted "Siebert's motion for a preliminary injunction seeks a stay only of his October 25, 2007 execution." Doc. 70 at 27. Siebert's October 25, 2007, execution was set based solely on the Weathers

Murders. Id. Siebert's execution for the Jarman murder, on the other hand, has not been set. Because Siebert's execution for the Jarman Murder has not been set, a stay of his October 25, 2007, execution cannot correct a violation of any Federal right as it pertains to the prison conditions surrounding his sentence for the that murder. See Id.

In sum, under the PLRA, Siebert is not entitled to a stay of his October 25, 2007 execution to enforce a Federal right that pertains to the prison conditions that will not exist until some "unknown date in the future. . . ." Id.

## V.    SIEBERT HAS NOT ESTABLISHED A SUBSTANTIAL LIKELIHOOD THAT HE WILL SUFFER IRREPARABLE HARM IF THE STAY IS DENIED

Although Siebert will be executed if the stay is denied, this fact, alone, does not amount to "irreparable harm." After all, Siebert is a convicted murderer whose sentence has been upheld on direct appeal as well as throughout both state and federal collateral proceedings. The United States Supreme Court has made it abundantly clear that § 1983 actions, like this one, do not have any relationship to the legitimacy of the inmate's conviction or sentence. Hill, 126 S.Ct. 2096; Nelson, 541 U.S. 637. See also Boyd v. Beck, 404 F. Supp. 2d 879, 887 (E.D. N.C. 2005) ("This case does not involve a question of Boyd's innocence, and North Carolina has a 'significant interest in meting out a sentence of death in a timely fashion.'"); Nelson, 541 U.S. at 644 (quoting McCleskey v. Zant, 499 U.S. 467,

491 (1991)("[T]he power of a State to pass laws means little if the State cannot enforce them.")).  Finally, "in the context of this civil rights action, the harm to [Siebert] does not include the fact of [Siebert's] inevitable death."  Reid v. Johnson, 333 F. Supp. 2d 543, 550 (E.D. Va. 2004).  In sum, the likelihood of Siebert suffering irreparable harm from the manner in which the defendants intend to carry out his sentence is so remote as to be nonexistent.  Siebert's failure to show any likelihood of irreparable harm precludes him from obtaining preliminary injunctive relief. Accordingly, this Court should deny Siebert's request for a stay.

## VI.   SIEBERT HAS NOT ESTABLISHED THAT THE LIKELY HARM TO HIM OUTWEIGHS THE LIKELY HARM TO THE STATE DEFENDANTS

It is well settled that the State has "a significant interest in meting out a sentence of death in a timely fashion."  Nelson v. Campbell, 541 U.S. 637, 650 (2004)(citing Calderon v. Thompson, 523 U.S. 538, 556-57 (1998)); McClesky v. Zant, 499 U.S. 467, 491 (1991)("[T]he power of a State to pass laws means little if the State cannot enforce them.").  The State's interest in finality and in meting out a sentence of death in a timely manner acquires "an added moral dimension" when the lengthy state and federal proceedings reviewing the conviction and sentence have run their course.  See Calderon, 523 U.S. at 556-57.  At this point, the State and the victims of crime can expect the moral judgment of the State to be carried out without delay.  Id. at 556.  "To unsettle these expectations is to inflict a

profound injury to the powerful and legitimate interest in punishing the guilty, an interest shared by the State and the victims of crime alike." Id. (internal citations and quotations omitted).

Even if one were to assume Siebert had demonstrated a sufficient likelihood of harm, that harm would be a dim shadow compared to the certain, profound, and irreparable harm to the State if a stay of execution is issued. Under such circumstances, Siebert must demonstrate a strong and significant likelihood of success on the merits. See In re Sapp, 118 F.3d 460, 465 (6th Cir. 1997). As previously stated, Siebert has made no effort to make such a showing.

## VII.  SIEBERT HAS NOT ESTABLISHED THAT GRANTING A STAY IS IN THE PUBLIC INTEREST

The public interest here is in denying the stay. This is not an instance where there are questions as to Siebert's actual innocence or the due process he received in state-court proceedings. Herrera v. Collins, 506 U.S. 390 (1993). Siebert's speculative Eighth Amendment claim pales in comparison to the interest the general public has in the orderly administration of justice. Put simply, the public has an interest in seeing Siebert held accountable for his horrific crime. Approximately 20 years ago, Siebert was convicted of the murders of Sherri Weathers and her two young sons. Siebert v. State, 555 So. 2d 772 (Ala. Crim. App. 1989), aff'd, Ex parte Siebert, 555 So. 2d 780 (Ala. 1989). Siebert described his horrific crime as follows:

28

> He went to Sherri Weathers's apartment on the evening of February 19, 1986, and let himself in with a key which he had been given. Sherri and Linda Jarman were there. Eventually, Linda left. As he and Sherri were walking toward her bedroom, he strangled her with a piece of cloth that he had on his person. Then he woke up each of the boys individually and strangled them. He left town in a car, which he abandoned in Kentucky after it had two flat tires. After spending a couple of days at a campsite he set up near the car, he headed north and then went east, in an attempt to get as far away from Alabama as he could.

Siebert, 555 So. 2d at 775.  The State's interest in the timely carrying out its duly-adjudicated judgment is thwarted if Siebert obtains a stay to litigate his untimely filed lethal-injection challenge.

In addition, the Court must consider the timing and nature of Siebert request under general equitable principles.  Nelson, 541 U.S. at 650.  In this respect, the Supreme Court instructed that the courts should not countenance manipulation of the judicial process and emphasized that "there is a strong equitable presumption against the grant of a stay of execution where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay."  Id.

Siebert has been on death row for the past 20 years.  Siebert's conviction and sentence have been affirmed at every turn.  It is the appropriate time for Siebert's execution to be carried out.

By waiting as long as he did to file this lawsuit, Siebert "leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration in the manner in which it is carried out." Harris v. Johnson, 376 F.3d 414, 418 (5th Cir. 2004). Siebert's delay in this matter is of significant magnitude in and of itself to foreclose any claim to equity. See Gomez v. U.S. Dist. Ct. for the Northern Dist. of Cal., 513 U.S. 653, 653-54 (1992); Jones, 2007 WL 1225393, Hill, 464 F.3d at 1258-59; Rutherford, 466 F.3d at 973-74; Diaz, 472 F.3d at 850-51; Nelson, 541 U.S. at 650; Hill, 126 S.Ct. at 2104.

## CONCLUSION

For the foregoing reasons, the defendants respectfully request that this Court

affirm the district court's denial of Siebert's request for a stay of execution.

Respectfully submitted,

Troy King
*Alabama Attorney General*

J. Clayton Crenshaw
James W. Davis
Corey L. Maze
Jasper B. Roberts
*Alabama Assistant Attorneys General*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,126 words, including all "headings, footnotes, and quotations," and excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

J. Clayton Crenshaw
*Alabama Assistant Attorney General*

32

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2007, I filed the foregoing with the
United States Court of Appeals for the Eleventh Circuit via electronic mail as
follows:

>Joyce Pope
>joyce_pope@ca11.uscourts.gov

I also certify that on October 24, 2007, I served a copy of the foregoing via
electronic mail to the following:

>Anne E. Borelli
>Anne_borelli@fd.org
>
>Christine A. Freeman
>Christine_Freeman@fd.org
>
>Thomas M. Goggans
>tgoggans@tgoggans.com

J. CLAYTON CRENSHAW
*Alabama Assistant Attorney General*

Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, AL 36130
(334) 242-7300 Office
(334) 353-3637 Fax
ccrenshaw@ago.state.al.us
jimdavis@ago.state.al.us
cmaze@ago.state.al.us
jroberts@ago.state.al.us

EXHIBIT 3

SITE SEARCH   WEB SEARCH BY Google      Go

WSFA 12 News
Coverage, Community, Commitment

WSFA.COM
Home
News
Weather
Sports
Health
Community
FEATURES
Programming
Entertainment
Food
Lifestyle
Coupon Bug
CLASSIFIEDS
Job Link
ABOUT US
WSFA12 Television
Today in Alabama
Alabama Live
WSFA Jobs

Email    Print                                    A  A  A  Text Size

ADVERTISEMENT

## Only on 12: Prattville Woman Waits as Killer's Potentially Controversial Execution Nears

Oct 23, 2007 02:16 PM CDT

Lethal Injection Request



Tricia Harris' sister and two nephews, along with another woman, were murdered in 1986.

Governor Riley has cleared the way for Alabama's next execution to take the life of an admitted serial killer.

State prison officials say Daniel Siebert's execution should go forth Thursday evening with no delay.

But lethal injection is under fire in federal and state courts, and that might have an impact here.

WSFA 12 News reporter Chris Holmes spoke with one victim's family and examined the court case that may delay the execution.

It's a story you'll see only on WSFA 12 News and wsfa.com.

Tricia Harris has never seen Daniel Siebert's face and she never wants to.

Stay Informed and Help Us Cover The News

Talk to WSFA 12 News About This Story

Sign Up For Email News from WSFA 12 News

She's lived with the aftermath of his most heinous crime for the last 21 years, and the only reminder of her sister is Sherri Weathers' artwork.

"She was deaf, couldn't hear or talk, but she was one of a kind. There was just something about her," Harris said about her sister.

Siebert murdered Weathers, her two young sons and another woman in 1986, and he's confessed to killing even more people nationwide, so there's no doubt in Harris' mind he deserves to die.

"Maybe it will ease some of the pain we're going through," said Harris.

But Siebert is asking both federal district and state Supreme Court judges to stop his execution. He has cancer and is taking pain medication to manage it.

His lawyers claim those drugs would interfere with the lethal injection chemicals and cause him excruciating pain and cruel and unusual punishment.

Siebert's appeal also comes as the U.S. Supreme Court considers a Kentucky case in which two inmates claim the anaesthetic in lethal injections don't render the condemned person unconcious, and when the other two chemicals go into an inmates body, they cause undue pain.

So, in response, Alabama has adopted new procedures to check if Siebert is unconcious before those are administered.

'Number one, speaking his name, number two, raking a finger or brushing a finger across his eyelashes, and number three, a pinch on the arm," said Department of Corrections spokesman Brian Corbett.  "All of those are generally accepted practices."

The state has not changed the chemicals it will use in Siebert's execution.

New Homes & Homesites Now Available



LARKSPUR
AT
TAYLOR LAKES




Master Planned Community
taylor road

Tricia Harris says it doesn't matter to her either way.

"What about the pain he caused my sister and her two little boys? Why should anyone care his pain that he's going to be going through," she asked rhetorically.  "He never thought about the pain he's put everyone else through."

Sherri Weathers' mother is planning on witnessing Daniel Sieberts execution. Her sister will not.

Instead, Tricia Harris is giving her seat to a New Jersey woman.

Siebert has confessed to killing the woman's daughter after Sherri Weathers' death - but he never went to trial for that case. So now, Alabama's execution is her hope for justice as well.

Siebert's execution is set for 6 p.m. Thursday night pending any late court action, but the state says Siebert has exercised all of those avenues.

His attorneys did not return our calls.

*Reporter: Chris Holmes*

| Around Alabama                            more>> | News                                       more>> |
|---|---|
| **School Bus Crash Kills Driver in Greene County** | **Victim's Family Angry With Sex Offender's Plea Deal** |
| **Shelby County Sod Farmer, Utility Wrestle Over Water** | **Only on 12: Prattville Woman Waits as Killer's Potentially Controversial Execution Nears** |
| **Ala. attorney general says abolish parole** | **Taking Care of Children Through 'Focal'** |

| Hometown News                            more>> | Montgomery Area News            more>> |
|---|---|
| Autauga County | **Victim's Family Angry With Sex Offender's Plea Deal** |
| Barbour County | **'Selective Prosecution' Probe of Siegelman Case** |
| Bullock County | **Five State Robbery Spree Ends with Guilty Pleas** |
| Butler County | **Two Teens Arrested in Peres Murder Case** |
| Chambers County | **Allegations of Neglect Against Baptist South Medical Center In Montgomery** |

WORLDNOW    All content © Copyright 2000 - 2007 WorldNow and WSFA, a Raycom Media Station.
All Rights Reserved. For more information on this site, please read our Privacy Policy and Terms of Service.