IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DANIEL LEE SIEBERT, | ) |
| | ) **DEATH PENALTY -** |
| PLAINTIFF, | ) **CHALLENGE TO METHOD** |
| | ) **OF EXECUTION** |
| | ) |
| v. | )    CASE NO. 2:07-cv-295-MEF-WC |
| | ) |
| RICHARD ALLEN, et al, | ) (WO-Not Recommended for Publication) |
| | ) |
| DEFENDANTS. | ) |

## MEMORANDUM OPINION AND ORDER

On April 9, 2007, Daniel Lee Siebert ("Siebert"),[1] an Alabama death row inmate now

scheduled for execution on October 25, 2007, filed this civil rights action in which he seeks

declaratory and injunctive relief aimed at stopping the State of Alabama from executing him

using its current lethal injection protocol.    Siebert alleges that Alabama's method of

execution violates his rights under the Eighth and Fourteenth Amendment of the United

States Constitution and brings suit pursuant to the Civil Rights Act of 1871, 42 U.S.C. §

1983. ("§ 1983"). This cause is now before the Court on the Plaintiff's Emergency Motion

for Preliminary Injunction to Stay Execution (Doc. # 44) which was filed on October 9, 2007.

The motion came under submission at 5:05 p.m. on Friday, October 19, 2007. The Court has

carefully considered the applicable law and the arguments in support of and in opposition to

---

[1]  In the pleadings in this case, the plaintiff is identified as Daniel Lee Siebert. The
Court notes that it appears that Siebert's name is sometimes spelled Danial L. Siebert in
certain documents from the Courts of the State of Alabama.

this motion. For the reasons set forth in this Memorandum Opinion and Order, the Court finds that the Motion for Preliminary Injunction to Stay Execution is due to be DENIED.

This case is unique, and for the purposes of considering the motion pending before the Court, the case does not present a typical general challenge to Alabama's execution protocol for executions by lethal injection. Due to some rather unusual aspects of the procedural predicate for this case, the real issues this Court must decide in addressing Siebert's request for a preliminary injunction to stay his October 25, 2007 execution are quite narrow and quite specific to his particular medical condition. With respect to the motion for preliminary injunction to stay the October 25, 2007 execution, this Court does not find that it appropriately has before it any general challenge to Alabama's lethal injection protocol.

## JURISDICTION AND VENUE

Due to the nature of Siebert's claims, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343. Based on the allegations of the Amended Complaint, the Court further finds that venue is appropriate and that both defendants are subject to personal jurisdiction in this Court.

## BACKGROUND, FACTUAL ALLEGATIONS, AND PROCEDURAL HISTORY

### A. Siebert's Death Sentence for the Murder of Sherri Weathers and Her Sons

#### 1. Siebert's Conviction for the Weathers Murders

On June 17, 1987, a Lee County, Alabama jury convicted Siebert of the February 19, 1986 murder of a young woman named Sherri Weathers ("Weathers") and her two young

2

sons in Talladega County, Alabama.[2] *Siebert v. State,* 555 So. 2d 772, 773-75, 779 (Ala. Cr.

App. 1989), *aff'd by Ex parte Siebert,* 555 So. 2d 780 (Ala. 1989).[3]  On August 28, 1997,

Siebert was sentenced to death for the murders of Weathers and her sons. *Id.* at 779.[4]  The

details of Siebert's crime and of his confession are set forth in the opinion of the Alabama

Court of Criminal Appeals affirming Siebert's conviction and death sentence. *Siebert v.*

*State,* 555 So. 2d at 773-75.

### 2. Siebert's Post-Conviction Challenges to His Conviction and Sentence

#### a. Direct Appeal

Siebert pursued an unsuccessful direct appeal of his conviction and sentence for the

murder of Weathers and her sons. *See* Compl. at ¶ 13 & Am. Compl. at ¶ 14.  On April 28,

1989, the Alabama Court of Criminal Appeals affirmed Siebert's conviction and sentence.

*Siebert v. State,* 555 So. 2d 772 (Ala. Crim. App. 1989).  It later denied his petition for

rehearing. On December 15, 1989, the Alabama Supreme Court affirmed his conviction and

sentence. *Ex parte Siebert,* 555 So. 2d 780 (Ala. 1989).  On June 28, 1990, the United States

Supreme Court denied Siebert's petition for writ of certiorari. *Siebert v. Alabama,* 497 U.S.

---

[2]  Because of pretrial publicity in Talladega County, Alabama, where these murders occurred, Siebert filed a motion for change of venue which resulted in the case against him for the murder of Sherri Weathers and her children being transferred for trial in Lee County, Alabama. Lee County is within the area served by the United States District Court for the Middle District of Alabama.

[3]  *See also* Compl. at ¶ 12 & Am. Compl. at ¶ 13.

[4]  *See also* Compl. at ¶ 12.

3

1032 (1990).

### b. State Court Rule 32 Proceedings

After the completion of his unsuccessful direct appeal of his conviction and sentence for the murder of Weathers and her sons, Siebert pursued an equally unsuccessful collateral attack in the state court system. *See* Am. Compl. at ¶ 14. On June 30, 1992, Siebert filed a petition for post-conviction relief pursuant to Alabama Rule of Criminal Procedure 32 in the court of his conviction. *Siebert v. State,* 778 So. 2d 842, 846 (Ala. Cr. App. 1999). After a lengthy hearing, the circuit court denied Siebert's Rule 32 petition. *Id.* Siebert unsuccessfully appealed the denial of his Rule 32 petition. *See* Compl. at ¶ 13. On December 30, 1999, the Alabama Court of Criminal Appeals affirmed denial of his Rule 32 petition. *Siebert v. State*, 778 So. 2d 842 (Ala. Crim. App. 1999). On September 15, 2000, the Alabama Supreme Court denied Siebert's petition for writ of certiorari on Rule 32 petition. *Ex parte Siebert*, 778 So. 2d 857 (Ala. 2000).

### c. Federal Habeas Corpus Challenge

After Siebert exhausted his available legal challenges in the state courts of Alabama, he filed a federal challenge to his sentence and conviction. On September 14, 2001, Siebert filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2254 in the United States District Court for the Middle District of Alabama. Initially, the district court dismissed this petition on the grounds that it was barred by the statute of limitations. *Siebert v. Haley*, 193 F. Supp. 2d 1260 (M.D. Ala. 2002) (Albritton, J.). The Eleventh Circuit Court of Appeals

4

reversed this decision. *Siebert v. Campbell*, 334 F.3d 1018 (11th Cir. 2003). After remand, the district court dismissed Siebert's petition because it found that his claims were procedurally defaulted, and on appeal this ruling was affirmed. *Siebert v. Allen*, 455 F.3d 1269 (11th Cir. 2006). On March 19, 2007, the United States Supreme Court denied certiorari on Siebert's federal habeas challenge to his conviction and death sentence for the murder of Weathers and her sons. *Siebert v. Allen*, 127 S. Ct. 1823 (2007).[5]

### 3. Siebert's Execution Is Set for the Weathers Murders

Consistent with its practice of asking the Supreme Court of Alabama to set execution dates for death-sentenced prisoners shortly after the United States Supreme Court denies certiorari review of such prisoners' federal habeas petitions,[6] the State of Alabama filed a motion asking the Supreme Court of Alabama to set a date for the execution of Siebert's

---

[5] *See also* Compl. at ¶ 14.

[6] As the Eleventh Circuit Court of Appeals has explained,

> [t]he Alabama Supreme Court is authorized to enter an order fixing an inmates date of execution "at the appropriate time." Ala. R. App. P. 8(d) ("The supreme court *shall at the appropriate time* enter an order fixing a date of execution." (emphasis added)). It is common practice in Alabama for the State to seek an execution date soon after the Supreme Court denies *certiorari* review of an inmate's federal habeas petition. As a matter of common sense, completion of collateral review eliminates the last possible obstacle to execution, and [a death -sentenced inmate] should [foresee] that the execution date would likely be set promptly upon completion of collateral review.

*Jones v. Allen*, 485 F.3d 635, 639 n.2 (11th Cir. 2007).

5

death sentence for the murders of Weathers and her sons. *See* Ex. A to Doc. # 13. This request was filed on April 17, 2007. *Id.* Siebert filed an opposition to the motion. *See* Ex. 1 to Doc. # 19. On July 30, 2007, the Alabama Supreme Court entered an Order directing that October 25, 2007 be fixed as the date for the execution of Siebert for the murders of Weathers and her sons.[7] *See* Doc. # 22-2.[8]

## B. Siebert's Death Sentence for the Murder of Linda Jarman

### 1. Siebert's Conviction for the Murder of Linda Jarman

After murdering Weathers and her sons, Siebert went to the apartment of one of Weathers' neighbors where he killed Weathers' neighbor Linda Jarman ("Jarman") and stole her automobile. *Siebert v. State*, 562 So . 2d 586 (Ala. Cr. App. 1989). A jury in Talladega County, Alabama convicted Siebert of the capital offense of murder during a robbery in the first degree. *Id.* *See also* Am. Compl. at ¶ 13. The trial court sentenced Siebert to death for this crime. *Id.* In connection with the investigation of the murders of Jarman and the Weathers family, Siebert gave a statement implicating himself in several murders, including

---

[7] This Order does not identify Siebert's victims by name: rather, the Order only refers to Siebert's convictions in Lee County Circuit Court in case number CC-87-371. The Court finds it easier and less confusing to refer to Siebert's multiple convictions for capital murder in the State of Alabama by referring to his victims by name rather than by referring to the county in which he was convicted or the dates or the murders. In fact, all of the murders for which Siebert was convicted in the State of Alabama occurred in the same county and in close temporal proximity. His convictions only arise out of different counties because of a change of venue motion.

[8] At no point since the Alabama Supreme Court set his execution has Siebert asked this Court to expedite any aspect of this lawsuit.

but not limited to, the murders of Jarman and the Weathers family. *See Siebert v. State*, 562

So. 2d 586.

## 2. Siebert's Post-Conviction Challenges to His Conviction and Sentence

### a. Direct Appeal

With respect to the Jarman murder conviction, Siebert has exhausted his direct appeal.

*See Siebert v. State*, 562 So. 2d 586 (Ala. Crim. App. 1989), *aff'd by Ex parte Siebert*, 562

So. 2d 600 (Ala. 1990), *cert. denied by, Siebert v. Alabama*, 498 U.S. 963 (1990).

### b. State Court Rule 32 Proceedings

Siebert's state court post-conviction request for relief pursuant to Rule 32 was also

unsuccessful. *See Siebert v. State*, 778 So. 2d 842 (Ala. Crim. App. 1999), *cert. denied, Ex*

*parte Siebert*, 778 So. 2d 857 (Ala. 2000).

### c. Federal Habeas Corpus Challenge

Siebert filed a federal habeas corpus challenge to his sentence and conviction for the

Jarman murder. This challenge was filed in the United States District Court for the Northern

District of Alabama because the conviction arose out of Talladega County which is located

in that judicial district. Siebert's federal habeas challenge to his conviction for Jarman's

murder is still pending.

## 3. Current Status of Siebert's Death Sentence for the Jarman Murder

The Supreme Court of Alabama has not yet fixed a date for the execution of Siebert's

death sentence for the Jarman murder.

## C. Alabama's Method of Execution

### 1. Alabama's Change to Lethal Injection

On July 1, 2002, the State of Alabama changed its primary method of execution from electrocution to lethal injection and gave death row inmates thirty days from the date on which the Alabama Supreme Court's affirmed their death sentences to elect electrocution instead. *See Grayson v. Allen*, 491 F.3d 1318, 1320 (11th Cir. 2007); Ala. Code § 15-18-82.1. It is undisputed that Siebert did not elect electrocution and by operation of law must be executed by lethal injection.

### 2. Confidentiality of Alabama's Execution Procedures

The State of Alabama keeps its execution procedures confidential. This confidentiality policy makes it somewhat difficult for inmates facing execution by lethal injection to know the exact procedures used in lethal injection executions in the State of Alabama. Nevertheless, it is apparent from the allegations of this case and other similar cases and from the published news reports Siebert has submitted to this Court that the three drug combination the State of Alabama uses in its lethal injection protocol[9] is not a well-kept secret. █████████████████████████████████████████

███████████████████████████████████████████.

---

[9] The Court is using the phrase "lethal injection protocol" to encompass not only the specific drug sequence used to effect executions, but also to encompass the procedures and personnel employed in executions.

[10] ███████████████████████████████████████████████
███████████████████████████████████████

8

### 3. Recent Revision of Alabama's Lethal Injection Protocol

Further complicating the matters raised by this lawsuit is the eleventh hour revision of Alabama's lethal injection protocol. On October 18, 2007, the State of Alabama finalized a revision to its lethal injection protocol. While the revised protocol does not change either the type or quantity of any chemical used, it does add additional measures apparently aimed at verifying that an inmate is unconscious before ███████████████████████ are injected. For the sake of the clarity of the record, the Court notes that Siebert's counsel had an opportunity, albeit a brief one,[11] to review this change prior to submitting Siebert's final brief in support of Plaintiff's Emergency Motion for Preliminary Injunction to Stay Execution. The Court further notes that it is deciding this case based on the representation that the revised execution procedures filed with it on October 18, 2007 (Doc. # 56) are the execution procedures that will be employed to carry out Siebert's execution on October 25,

---

[11] While Siebert's counsel is understandably unhappy about receiving the revised protocol so close to Siebert's scheduled execution, the Court notes that Siebert obtained it *only* because the Court ordered it be produced. There is no evidence before the Court that Siebert's counsel had sought to use avenues of discovery to obtain information about the lethal injection protocol in place prior to October 18, 2007. Given this fact and the relatively small change to the protocol which tends to address some of Siebert's allegations (while the change may not help Siebert's lawsuit, it may help him should he be executed), the Court finds no prejudice to Siebert resulting from the State of Alabama's rather tardy change to the execution procedures. Had Siebert conducted discovery or obtained the Court's assistance in requiring Defendants to produce the prior version of the lethal injection protocol earlier in this litigation, revision to the policy on October 18, 2007, would have done little to impair his readiness to satisfy the burden the law imposes on him as he seeks a preliminary injunction to stay his execution. In this Court's view, any problems Siebert is having in satisfying his burdens in this case arise from his own approach to this litigation.

2007 if he is not granted a reprieve by the Governor of the State of Alabama[12] or a stay of execution by another court.[13]

### 4. Relevant Aspects of the Revised Execution Procedures for Executions by Lethal Injection

These matters aside, the Court will now briefly summarize certain relevant aspects of the revised lethal injection protocol as found in the revised execution procedures for the State of Alabama. The complete details of the revised execution procedures can be found in the record at Doc. # 56. All information below is taken from that sealed document.

### a. Preparations for Executions Prior to the Day of Execution

### b. Procedures Used on the Day of the Execution

---

[12] The Governor has announced that he does not intend to stay Siebert's execution.

[13] This Court has been informed that Siebert has sought a stay of his execution from the Supreme Court of Alabama. Additionally, based on his arguments, the Court assumes that Siebert intends to seek a stay of execution from the Eleventh Circuit Court of Appeals and from the United States Supreme Court if necessary.

14

15



## D. This Lawsuit

### 1. Original Complaint

On April 9, 2007, Siebert filed this lawsuit raising a general *Hill*-type challenge to the

methods and procedures the State of Alabama employs in carrying out executions by lethal

injection.[16] Siebert names two defendants: Richard Allen, the Commissioner of the Alabama

---

[16] In *Hill v. McDonough*, 126 S. Ct. 2096 (2006), the Supreme Court recognized that a death row inmate could bring a § 1983 action against state corrections officials challenging, as cruel and unusual, a particular method of lethal injection planned for his execution. Thus, § 1983 can be used for general challenges to the constitutionality of the method of lethal injection used by a particular state. In this Memorandum Opinion and Order, this type of challenge is referred to as a general or *Hill*-type challenge. In *Nelson v. Campbell*, 541 U.S. 637 (2004), the Supreme Court recognized that a death row inmate could bring a § 1983 action against state corrections officials challenging, as cruel and unusual a specific procedure to be applied to him because of his particular physical condition. *Nelson* involved the proposed use by the State of Alabama of a "cut-down" procedure to access the death row inmate's veins prior to the administration of the chemicals used in lethal injection executions in Alabama. The State of Alabama did not conduct all lethal injection executions in this fashion, but it believed that such a procedure was necessary for Nelson's execution because of the particular state of his physical health. Thus, § 1983 can also be used for specific challenges to the method of lethal injection as it will be applied to a specific inmate due to his physical condition. In this Memorandum Opinion and Order, this type of a challenge is referred to as a specific or *Nelson*-type challenge.

Department of Corrections, and Grantt Culliver, the Warden of Holman Correctional Facility (collectively referred to as "Defendants").[17] Compl. at ¶ 5. Siebert's claims, as articulated in his initial Complaint, are best characterized as a general challenge to the execution process that the State of Alabama will employ to execute the death sentence he received for the murder of Weathers and her sons. Compl. at ¶¶ 1 & 12. Siebert alleged that the State of Alabama conducts executions by lethal injection using Thiopental,[18] Pavulon,[19] and potassium chloride to anesthetize, paralyze, and induce cardiac arrest. Compl. at ¶¶ 17-21. Siebert further alleges that the three drug protocol Alabama uses in lethal injection executions is likely to cause him severe pain and suffering. Compl. at ¶¶ 1, 20, 22, 24-25, 28. In addition to challenging the actual drugs Alabama uses in executions, Siebert alleged that Alabama's anesthesia procedures lack medically necessary safeguards and increase the risk that he will suffer unnecessary pain during his execution for the murders of Weathers and her sons. Compl. at ¶¶ 8, 9, 12, & 15-28. He also challenged the qualifications of those tasked with injecting the drugs and the lack of the involvement of properly licensed and

---

[17] The Complaint also purports to bring claims against other unknown employees and agents of the Alabama Department of Corrections involved in the development and execution of lethal injections. Compl. at ¶ 5. Of course, there is no fictitious party practice in federal courts. *See, e.g.,* Fed. R. Civ. P. 10(a); *New v. Sports & Recreation, Inc.,* 114 F.3d 1092, 1094 n.1 (11th Cir. 1997); *Harris v. Palm Harbor Homes, Inc.,* 198 F. Supp. 2d 1303, 1304 n.6 (M.D. Ala. 2002); *Edwards v. Alabama Dep't of Corr.,* 81 F. Supp. 2d 1242, 1257 (M.D. Ala. 2000). Accordingly, there are only two proper party defendants to this lawsuit.

[18] This drug is also known as sodium pentothal. Compl. at ¶ 9.

[19] This drug is also known as pancuronium bromide. Compl. at ¶ 11.

14

credentialed medical personnel. *Id.*

The substance of Siebert's original challenge to the lethal injection protocol believed to be used by the State of Alabama was nearly identical to the challenges raised by several other death row litigants, including the plaintiffs in *Grayson* and *Williams*. *See generally Williams v. Allen*, 496 F.3d 1210 (11th Cir.), *stay of execution denied by,* 2007 WL 2398491 (Aug. 23, 2007), *cert. dismissed,* 2007 WL 2820303 (Oct. 1, 2007); *Grayson v. Allen,* 491 F.3d 1318 (11th Cir.), *cert. denied,* 2007 WL 2086662 (July 26, 2007).

Invoking this Court's equitable powers, Siebert seeks an injunction barring Defendants from executing him with inadequate anesthesia and execution procedures that violate the Eighth Amendment prohibition against cruel and unusual punishment. He also seeks a declaratory judgment that Defendants' inadequate anesthesia and execution procedures violate that prohibition. Finally, he seeks an award of attorney's fees pursuant to 42 U.S.C. § 1988 and the costs of this lawsuit.

## 2. Defendants' First Motion to Dismiss

Defendants filed a motion seeking dismissal of the Complaint. *See* Doc. # 13. Defendants argued that the Complaint fails to state a claim for which relief can be granted. Defendants also argued that the statute of limitations on the claims had run before the filing of the Complaint. Finally, Defendants argued that Siebert's claims for equitable relief were barred by his unreasonable delay in bringing them. Siebert opposed the motion. After Siebert later filed an Amended Complaint, this motion was denied as moot as part of the

15

Court's decision addressing the merits of the Defendants' motion to dismiss the Amended Complaint. *See* Doc. # 39.

### 3. Siebert's Amended Complaint

#### a. Addition of Siebert-Specific or *Nelson*-type Challenge

In late May of 2007, Siebert began experiencing symptoms of what was at that time an unknown illness. Siebert received a preliminary diagnosis that indicated he was suffering from pancreatic cancer and hepatitis C.[20] After receiving this preliminary diagnosis, Siebert filed an Amended Complaint (Doc. # 21).

This Amended Complaint restates all claims originally included in the Complaint. It also adds a *Nelson*-type challenge to Alabama's plans to execute him for the murders of Weathers and her sons. Specifically, Siebert claims that, because of his hepatitis C and pancreatic cancer and any possible treatment he might receive for those conditions, complications in the lethal injection process are likely to arise and result in an unacceptable risk of unnecessary pain in violation of the protections against cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution. *See* Am. Compl. at ¶¶ 2, 20-23. Siebert's specific allegations relating to this claim are as follows:

> 2.     Additionally, pursuant to Rule 15(a), Federal Rules of Civil Procedure, Plaintiff Daniel Lee Siebert amends his complaint on the basis of his recent preliminary diagnosis of hepatitis C and pancreatic cancer. Complications in the lethal injection process are likely to arise from the treatment or nontreatment of Mr. Siebert's illness or illnesses, as set forth more fully below.

---

[20] This preliminary diagnosis has since been confirmed.

See ¶¶ 20 through 23. Such complications are likely to result in an unacceptable risk of unnecessary pain, in violation of the protections against cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

19.    Plaintiff asserts upon information and belief that Alabama uses drugs to achieve first anesthesia, then paralysis, and finally execution by cardiac arrest. The chemicals used include Thiopental, Pavulon, and Potassium Chloride. The combination of drugs utilized by the State of Alabama in its execution protocol will likely subject Mr. Siebert to an excruciatingly painful and torturous death. This unconstitutional result is likely both on the basis of complications arising from Mr. Siebert's current medical condition and from the deficiencies in the protocol in and of itself.

20.    On information and belief, Mr. Siebert suffers from pancreatic cancer and hepatitis C. See Ex. 1 (Prison Health Services Authorization Letter, dated July 12, 2007, and Atmore Community Hospital X-ray Reports, dated June 7 and 8, 2007). These illnesses had not manifested any discernible symptoms before late May 2007, when Mr. Siebert was stricken with severe jaundice. See Exhibit 2 (Prison Health Services, Inc., Sick Call Request, dated May 26, 2007, and Nursing Evaluation Tool, dated May 27, 2007). To the best of counsel's knowledge, a biopsy was performed on July 12, 2007, to determine the malignancy and stage of cancer, but results are not yet available.

21.    Information available to counsel indicates that Mr. Siebert has not been prescribed any medications, other than Lortab, a painkiller, to treat the symptoms of his cancer as of this date and that Mr. Siebert suffers recurrent bouts of vomiting several times a week.

22.    Mr. Siebert's symptoms, if left untreated, will interfere with the Defendants' proposed execution procedures because of the potential for interruption, inability to keep Mr. Siebert restrained, and interference with assessment of unconsciousness, all of which increase the likelihood of ineffective delivery of the lethal chemicals.

23.    Mr. Siebert has been advised by a consulting expert that once treatment begins for his cancer and hepatitis C, other potential areas of difficulty in carrying out an underdeveloped protocol, with no emergency provision, arise from, inter alia, drug interactions and difficulty of intravenous access. Drug interactions are most likely with the Thiopental and could significantly affect

Mr. Siebert's sensitivity to the anesthetic, increasing the likelihood of consciousness during delivery of the two remaining drugs during the lethal injection process. Scarring of the veins may occur from some treatments and would increase the difficulty of obtaining intravenous access, especially by nonmedical personnel with limited training.

Doc. # 21-1 at ¶ 2, 19, 20, 21, 22, & 23.[21]

### b. Addition of General Challenge for Execution on Jarman Sentence

The other significant change to the allegations Siebert made in the Amended Complaint was the inclusion of facts relating to the Jarman murder conviction and death sentence. *See* Doc. # 21 at ¶¶ 8, 13, 14, & 15. Siebert has argued that these allegations constitute an additional general or *Hill*-type challenge to the lethal injection protocol.[22]

### 4. Defendants' Motion to Dismiss Siebert's Amended Complaint

On August 6, 2007, Defendants filed Defendants' Motion to Dismiss Siebert's Amended Complaint (Doc. # 24) on the same grounds articulated in their original motion. Siebert opposed this motion. The motion was fully briefed by September 4, 2007.[23]

---

[21] The Court does not mean to suggest that, as was true in the *Nelson* case, the State of Alabama intends to perform a cut-down procedure to access Siebert's veins for the execution by lethal injection. Instead, when Siebert refers to his specific claims relating to possible complications with the lethal injection protocol arising out of his current medical condition as *Nelson* claims, the Court considers Siebert to be analogizing to *Nelson*.

[22] As discussed in greater detail later, such a challenge would have to apply only to an execution of Siebert for the Jarman murder, which is not scheduled for October 25, 2007 and not for another death sentence which the State intends to execute on that date.

[23] The motion was initially due to be under submission by August 29, 2007. Siebert sought and was granted leave to submit a sur-reply. This effectively extended the period of time the parties spent briefing this motion.

## 5. This Court Dismisses Some of Siebert's Claims

On October 3, 2007, this Court issued a Memorandum Opinion and Order (Doc. # 39) ruling on Defendants' Motion to Dismiss Siebert's Amended Complaint.  The Court dismissed Siebert's general *Hill*-type challenge to the method of execution to be employed in executing him for the murder of Weathers and her sons.  In reaching this decision, the Court was mindful of the admonition of the United States Supreme Court that "[t]he federal courts can and should protect States from *dilatory* or speculative suits[.]" *Hill*, 126 S. Ct. at 2104 (emphasis added).  Additionally, this Court followed the dictates of the Eleventh Circuit Court of Appeals in several recent decisions.[24]  This Court held that like the plaintiffs in those cases, Siebert unreasonably delayed in raising his general *Hill*-type challenge to the lethal injection protocol which the State of Alabama was going to use to execute him for the murder of Weathers and her sons.  Because of this prior ruling, Siebert no longer has a viable claim in this lawsuit that raises a general *Hill*-type challenge to the method of execution that will be employed in the October 25, 2007 execution.

In its October 3, 2007 ruling, the Court denied Defendants' motion to dismiss the two

---

[24]  *See, e.g., Arthur v. Allen*, No. 07-13929, 2007 WL 2709942 (11th Cir. Sept. 17, 2007) (affirming dismissal of a § 1983 challenge to Alabama's lethal injection protocol on the basis of laches); *Williams v. Allen*, 496 F.3d 1210 (11th Cir. 2007) (affirming dismissal of general challenge to Alabama's lethal injection protocol because inmate's delay in filing § 1983 action was unreasonable); *Grayson v. Allen*, 491 F.3d 1318 (11th Cir. 2007) (explaining that district court properly dismissed action because of plaintiff's unnecessary delay in seeking equitable relief pursuant to § 1983); *Rutherford v. McDonough*, 466 F.3d 970 (11th Cir.), *cert. denied*, 127 S. Ct. 465 (2006) (affirming the district court's dismissal of § 1983 complaint on equitable grounds).

new claims that Siebert added when he filed his Amended Complaint. With respect to Siebert's new *Nelson*-type challenge to the method of execution to be employed at the October 25, 2007 execution of Siebert's death sentence for the murder of Weathers and her sons, the Court could not find that Siebert had delayed unreasonably in filing this claim because he only recently discovered the factual predicate for the claim. With respect to Siebert's new general *Hill*-type challenge to Alabama's method of execution as it will be used to execute him for the Jarman murder, once again the Court did not find that Siebert had unreasonably delayed in bringing the claim to the Court. His federal habeas corpus petition is still pending with respect to that conviction, and the date of his execution for the Jarman murder is neither set, nor about to be set.

While the Court's rulings on the Defendants' Motion to Dismiss Siebert's Amended Complaint were not subject to an interlocutory appeal as of right, the Court notes that neither party has attempted to appeal the ruling. Thus, for purposes of the instant motion the Court will only consider the merits of the arguments with respect to the claims which were not dismissed by its October 3, 2007 Memorandum Opinion and Order.

## 6. Plaintiff's Emergency Motion for Preliminary Injunction to Stay Execution

On October 9, 2007, Siebert filed Plaintiff's Emergency Motion for Preliminary Injunction to Stay Execution (Doc. # 44). Specifically, Siebert moves this Court to grant a preliminary injunction staying his October 25, 2007 execution for the murders of Weathers and her sons. In support of this motion, Siebert advances two main arguments. First, he

new claims that Siebert added when he filed his Amended Complaint. With respect to Siebert's new *Nelson*-type challenge to the method of execution to be employed at the October 25, 2007 execution of Siebert's death sentence for the murder of Weathers and her sons, the Court could not find that Siebert had delayed unreasonably in filing this claim because he only recently discovered the factual predicate for the claim. With respect to Siebert's new general *Hill*-type challenge to Alabama's method of execution as it will be used to execute him for the Jarman murder, once again the Court did not find that Siebert had unreasonably delayed in bringing the claim to the Court. His federal habeas corpus petition is still pending with respect to that conviction, and the date of his execution for the Jarman murder is neither set, nor about to be set.

While the Court's rulings on the Defendants' Motion to Dismiss Siebert's Amended Complaint were not subject to an interlocutory appeal as of right, the Court notes that neither party has attempted to appeal the ruling. Thus, for purposes of the instant motion the Court will only consider the merits of the arguments with respect to the claims which were not dismissed by its October 3, 2007 Memorandum Opinion and Order.

### 6. Plaintiff's Emergency Motion for Preliminary Injunction to Stay Execution

On October 9, 2007, Siebert filed Plaintiff's Emergency Motion for Preliminary Injunction to Stay Execution (Doc. # 44). Specifically, Siebert moves this Court to grant a preliminary injunction staying his October 25, 2007 execution for the murders of Weathers and her sons. In support of this motion, Siebert advances two main arguments. First, he

contends that this Court should or must[25] grant a preliminary injunction staying his execution because the United States Supreme Court has granted *certiorari* in a case, *Baze v. Rees*, in which it will, according to Siebert, decide the standard for determining what is cruel and unusual punishment under the Eighth Amendment. Second, he contends that the Court should grant a preliminary injunction staying his execution under 18 U.S.C. § 3626(a)(1) and Rule 65(a) of the Federal Rules of Civil Procedure. Siebert's motion was initially supported by the following: (1) documents establishing that the United States Supreme Court had granted *certiorari* in *Baze*; (2) a description of the questions presented in *Baze*; (3) news articles describing that some executions or other court proceedings in cases challenging lethal injection executions had been stopped by courts or otherwise after the grant of *certiorari* in *Baze*; (4) a copy of a letter from a lawyer for the State of Alabama to the Chief Deputy Clerk of the United States Supreme Court regarding unique procedural circumstances relating to Siebert's pending habeas case arising out of the Jarman murder; and (5) a number of newspaper articles containing descriptions of executions conducted by lethal injection in several states, including Alabama.

Defendants oppose Siebert's request for a preliminary injunction staying his execution

---

[25] In Plaintiff's Emergency Motion for Preliminary Injunction to Stay Execution (Doc. # 44), Siebert argued that the Court *should* issue a preliminary injunction because of the United States Supreme Court's decision in *Baze v. Rees* will set the standard for determining what is cruel and unusual punishment. In Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction (Doc. # 64), Siebert instead argued that this Court *must* grant the preliminary injunction because *Baze v. Rees* is pending before the United States Supreme Court.

for several reasons. On October 17, 2007, Defendants filed Defendants' Opposition to Siebert's Motion to a Stay of Execution (Doc. # 54). This thirty-one page brief is supported by: (1) an affidavit containing the expert opinions ███████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████, which includes the credentials of the expert; (2) an affidavit from ██████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████; and (3) two affidavits and an exhibit refuting certain allegations in the Amended Complaint concerning standards of the American Veterinary Medical Association for euthanasia of animals other than humans. Defendants contend that Siebert is not entitled to a stay of execution on his dismissed claim and that Siebert is not entitled to a stay of execution on the claims that were not dismissed on the basis of the grant of *certiorari* or otherwise.

On October 19, 2007, Siebert submitted Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction (Doc. # 64). In this brief, Siebert reasserts his contention that he should be granted a preliminary injunction staying his execution. Additionally, he submits additional evidence to the Court. In this Court's view, the most relevant piece of new evidence is a letter from Dr. ████████████████████ of ████████████████████████████ dated October 12, 2007. The Court is without any information whatsoever about Dr. ████████ education, scholarly

22

publications, qualifications, or expertise.  Moreover, Dr. █████ "letter" to Siebert's counsel is neither a sworn affidavit, nor a declaration under penalty of perjury.  Finally, the Court is without specific information concerning which medical records Dr. █████ reviewed[26] before writing the letter and whether Dr. █████ knew the specific quantities of chemical agents used in a lethal injection execution, which presumably might effect his opinions about likely consequences of their use.  For these reasons, the letter itself is of limited utility to the Court.  Because these concerns mainly go to the weight to be given to Dr. █████ opinions, the Court will not completely disregard the letter.  According to Dr. █████, ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████ █████████████████ About Siebert's October 25, 2007 execution, Dr. █████ states:

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

---

[26] It is evident from his letter that Dr. █████ examined Siebert's medical records, but did not examine Siebert.

[27] It is evident from his letter that Dr. █████ had been told the three active chemical agents used in the lethal injection protocol.

23



(Doc. # 64 at Ex. D).

## DISCUSSION

Siebert filed this lawsuit knowing his execution by lethal injection was merely a few months away. Now that the date of his execution is imminent, Siebert asks this Court to enter a preliminary injunction to stay his execution. Despite Siebert's urging, this Court cannot grant a preliminary injunction staying his execution because it seems like other executions by lethal injection may be on hold pending further guidance, if any is forthcoming, from the United States Supreme Court in *Baze v. Rees*. *See Baze v. Rees*, No. 07-5439, 2007 WL 2850507 (Oct. 3, 2007) (clarifying that the writ of certiorari is limited to Questions 1, 2, and 3 presented by the petition); *Baze v. Rees*, No. 07-549, 2007 WL 2075334 (Sept. 25, 2007) (granting writ of *certiorari* to the Supreme Court of Kentucky on a case involving execution by lethal injection).

The United States Supreme Court, in the very case that created Siebert's right to bring one of the two types of claims that Siebert brought in this lawsuit, stated that "[f]iling an

_____

28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮

action that can proceed under § 1983 does not entitle the complainant to an order staying an execution as a matter of course." *Hill*, 126 S. Ct. at 2104. A stay of execution is an equitable remedy. *Id. Accord Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004). Inmates seeking a temporary stay of execution due to their challenge to the manner in which the State plans to execute them "must satisfy all the requirements for a stay, including a showing of a significant possibility of success on the merits." *Hill*, 126 S. Ct. at 2104 (collecting cases). *Accord Arthur v. King*, No. 07-13933, 2007 WL 2744884, at * 4 (11th Cir. Sept. 21, 2007); *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001) (a death row inmate seeking a preliminary injunction to stay his execution based on a claim for declaratory relief in a pending action pursuant to § 1983 must show that there is a substantial likelihood of success on the merits; that the injunction sought is necessary to prevent irreparable injury; that the threatened injury outweighs the harm that the preliminary injunction would cause to the non-movant; and that the preliminary injunction would not be adverse to the public interest.) Indeed, in *Hill* the Supreme Court recognized that "federal courts can and should protect States from dilatory *or speculative* suits[.]" 126 S. Ct. at 2104 (emphasis added).

Rather than trying to read the tea leaves about what the Supreme Court might do next, this Court will take these binding precedents at face value. *See, e.g., Rutherford v. Crosby*, 438 F.3d 1087, 1093 (11th Cir. 2006) (declining to stay execution based on grant of *certiorari* in another case raising an issue identical to one movant was raising because circuit

precedent was unchanged by mere grant of *certiorari* and because the Supreme Court is in a better position to determine if a stay is appropriate).  This Court must engage in the specified legal analysis when considering a motion for preliminary injunction seeking a stay of execution.  Siebert's contention, which is without any support in statute or binding precedent, that this Court can issue a stay without engaging in the applicable legal analysis simply because of a grant of *certiorari* in *Baze* is not persuasive.  The grant of *certiorari* in a single case does not alter the application of the normal rules of procedure.  Thus, this Court cannot grant the relief requested on the basis of the grant of *certiorari* in *Baze v. Rees*.[29]

Siebert's arguments acknowledge that *Nelson v. Campbell* requires that prisoners bringing claims under § 1983 challenging the method of their execution must comply with the requirements of the Prison Litigation Reform Act of 1995 ("PLRA"), 18 U.S.C. § 3626(a)(1), to obtain preliminary or permanent injunctive relief. As Siebert himself admits, the PLRA provides that a district court

> shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.  The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

---

[29]  At this juncture, this Court cannot even begin to guess what, if anything, *Baze* might resolve on the general issue of the constitutionality of lethal injection procedures or how that case might inform this Court's analysis of Siebert's issues, which are not, for purposes of this motion, related to lethal injection procedures generally, but rather how lethal injection procedures in Alabama might interact with his peculiar medical condition.

18 U.S.C. § 3626(a)(1).  *See also* 18 U.S.C. § 3626(a)(2).  This requirement has a very important impact on Siebert's request for a stay of his execution: namely, it makes the very existence of his general *Hill*-type challenge to the execution of his sentence for the Jarman murder irrelevant to his pending request for preliminary injunction.

As previously explained, only two of Siebert's claims survived Defendants' motion to dismiss.  One is a specific *Nelson*-type challenge to the execution of his sentence for the murder of Weathers and her sons, which execution is set for  October 25, 2007.  The other is a general *Hill*-type challenge to the execution of his sentence for the murder of Jarman, which execution is not set.  Siebert's motion for a preliminary injunction seeks a stay only of his October 25, 2007 execution.  Siebert is entitled to a stay of his October 25, 2007 execution only if he shows he is likely to succeed on the merits of his specific *Nelson*-type challenge to the execution of his sentence for the murder of Weathers and her sons.  A stay of the October 25, 2007 execution of his sentence for the murder of Weathers and her sons cannot be said to be "necessary to correct the violation of the Federal right" alleged in his general *Hill*-type challenge to the execution of his sentence for the murder of Jarman at some unknown date in the future, as the PLRA requires.  The Court cannot find that Siebert is entitled to any preliminary injunctive relief staying his October 25, 2007 execution to the extent that the request for such relief is predicated on his general *Hill*-type challenge to the execution of his sentence for the murder of Jarman.  Therefore, the only claim upon which a preliminary injunction can be granted that would stay the October 25, 2007 execution is the

27

*Nelson*-type challenge.

The task before this Court is to determine whether Siebert has satisfied his burden of establishing he is entitled to a preliminary injunction staying the execution of his death sentence for the murder of Weathers and her sons: (1) by showing that he has not delayed unnecessarily in bringing that claim; (2) by establishing a substantial likelihood of success on the merits of his specific *Nelson*-type claim; (3) by establishing that the stay requested is necessary to prevent irreparable injury; (4) by establishing that the threatened injury outweighs the harm the stay or injunction would inflict; and (5) by establishing whether the stay requested would serve the public interest.

This task is made more difficult by the failure of the parties to focus on the Siebert-specific claim relating to the likelihood of a violation of his Eighth Amendment rights because of his specific condition. Much of the argument before this Court focuses instead on the general challenge to the lethal injection protocol which, as a procedural matter, is not properly before this Court on this motion. Indeed, Siebert's opening brief is solely predicated on general arguments and his initial evidentiary submissions could have been filed in any case raising a general challenge to the lethal injection protocol in any state. Nothing in the evidence or argument relates to Siebert's specific situation at all. Understandably, Defendants' arguments point out this deficiency in Siebert's submissions and do little more on the Siebert-specific claims. In Siebert's reply brief, he finally offers a brief argument about his specific condition and the letter from Dr. ███ about specific harm the lethal

injection protocol might create given Siebert's condition. The Court finds that such an offer of proof is insufficient to warrant the relief he seeks.

Siebert has not established a substantial likelihood of success on the merits of this claim. Most of the specific allegations of the Amended Complaint remain wholly unsupported by the letter from Dr. ███. To the extent that Dr. ███ identifies potential problems with the application of the three drug cocktail to Siebert, he does so without knowing the amounts of the chemicals to be injected. Indeed, in the circumstances of this case, this Court cannot give much weight to the unsworn statements of a medical doctor about whom the Court knows little,[30] especially when the Court does not know the materials on which he is basing his opinions. This is particularly warranted given the fact that, in this Court's view, Dr. ███ opinions are carefully qualified. Moreover, Dr. ███ himself indicates that it is "problematic" for him to predict what will occur if the three drugs are administered to Siebert. Dr. ███████████████████████

████████████████████████████████

████████████████.[31] The other concern Dr. ███ raises is about Siebert

---

[30] The Court accepts the representation that Dr. ███ is a ███████████ ███ While these qualifications give him insight into Siebert's medical condition, nothing about that credential gives him any special insight into anesthesiology, biochemistry, and molecular pharmacology.

[31] Importantly, it does not seem that this concern is in any way related to Siebert's unique physical condition. While Dr. ███ mentions that Siebert has █████████ ████████████████████████████████████████████ ████████████████████████████████ relates only to general challenges to



He bases this concern on his review of Siebert's medical records which indicate that he has

████████████████ 32 ████████████████████████████████████████████.

The Court's concerns about Dr. ████████ opinions are increased by its review of the

countervailing expert testimony from Dr. █████████████████████████

█████████████, whose sworn testimony and curriculum vitae are before this Court. It is Dr.

█████████ opinion to a reasonable degree of medical certainty that the dose of ████████

████████ used by Alabama would render most people unconscious within 60 seconds from the

time the injection of the ██████████████ begins and that by the time all of the ████████

████████ is injected, it is his opinion to a reasonable degree of medical certainty that more than

99.9999999% of the population would be unconscious. He is further of the opinion that this

dose would cause virtually all persons to stop breathing and that the injection of the

████████████████████████████████████████████████████████████████████

████████. Finally, Dr. ████████ concludes that the administration of the medications as

Alabama administers them results in the rapid and painless death of the inmate. While Dr.

█████████ testimony was developed in another case and does not specifically make any

reference to Siebert's condition, it is sworn testimony from an expert in the field of

---

the use of the three-drug cocktail generally and not to the Siebert-specific challenge to the method of execution. As previously explained, the general *Hill*-type challenges are not properly before this Court on this motion.

32 There is no indication in ████████████████████████████████████
████████████████████████████████████████████████████████████.

anesthesiology, biochemistry, and molecular pharmacology.

In light of all the evidence in the record before this Court, the Court finds that Siebert has failed to establish a substantial likelihood of success on the merits of his claim that because of his specific physical condition[33] the use of the Alabama lethal injection protocol will result in the violation of his constitutional rights. Moreover, given the speculative or unsupported nature of Siebert's *Nelson*-type claims, this Court must take care not to ignore the State of Alabama's "significant interest in meting out a sentence of death in a timely fashion." *Nelson*, 541 U.S. at 650. Additionally, the Court does not find that the public interest would be served by granting the stay Siebert requests.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1. Because of the Protective Order in place in this case and because of the detailed discussion in this Memorandum Opinion and Order of the confidential lethal injection protocol and information about Siebert's medical condition, the Clerk of the Court is DIRECTED to file this Memorandum Opinion and Order under SEAL.

2. Plaintiff's Emergency Motion for Preliminary Injunction to Stay Execution (Doc.

---

[33] Importantly, despite allegations about drug interactions. Siebert has offered no evidence whatsoever that any medication he is receiving as part of his palliative care would have any interaction with any of the chemicals used in Alabama's lethal injection protocol. What little evidence of his specific condition that he offers relates to ████████████ ████████████████████████████████.

# 44) is DENIED.

DONE this the 22nd day of October, 2007.

_____ /s/ Mark E. Fuller _____
CHIEF UNITED STATES DISTRICT JUDGE