IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DANIEL LEE SIEBERT,            )
                               )
      Plaintiff,               )
                               )
v.                             )   No.  2:07-cv-295-MEF-WC
                               )
RICHARD ALLEN, et al.,         )
                               )
      Defendants.              )

**DEFENDANTS' NOTICE OF FILING PETITION FOR REHEARING EN BANC**

The defendants hereby file a copy of a petition for rehearing en banc that is being filed by postal delivery in the Eleventh Circuit Court of Appeals.  See Exhibit A.  It appears that pursuant to FRAP 41(d)(1) the mandate will be stayed until the petition for rehearing en banc is decided.

Respectfully submitted,

Troy King (KIN047)
*Alabama Attorney General*


***s/  J. Clayton Crenshaw***
J. Clayton Crenshaw  (CRE007)
*Assistant Attorney General*

Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, AL  36130
Telephone:  334.242.7300
Fax:  334.353.3637
Email: ccrenshaw@ago.state.al.us

## CERTIFICATE OF SERVICE

This is to certify that on the 20th day of November, 2007, a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will electronically send a copy of the same to the following: **Anne E. Borelli, Christine Freeman, and Thomas M. Goggans.**

*s/ J. Clayton Crenshaw*
J. Clayton Crenshaw  (CRE007)
*Assistant Attorney General*

ADDRESS OF COUNSEL:

Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, AL  36130
Telephone:  334.242.7300
Fax:  334.353.3637
Email: ccrenshaw@ago.state.al.us

# EXHIBIT A

No. 07-14956-P

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

◆

DANIEL SIEBERT,

Plaintiff/Appellant,

VS.

RICHARD ALLEN, et al.,

Defendants/Appellees.

◆

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
(Civil Action Number 2:07-cv-00295-MEF-WC)

PETITION FOR REHEARING EN BANC

Troy King
*Attorney General*

J. Clayton Crenshaw*
James W. Davis
*Assistant Attorneys General*
* Counsel of Record

Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, AL 36130-0152
(334) 242-7300 Office
(334) 353-3637 Fax

November 19, 2007

*No. 07-14956-P*

*DANIEL SIEBERT V. RICHARD ALLEN, ET AL.*

**CERTIFICATE OF INTERESTED PERSONS**

Undersigned counsel certifies that the following persons may have an interest in the outcome of this case:

1. Richard Allen, Commissioner of Alabama Department of Corrections;

2. Anne Borelli, Counsel for Appellant;

3. J. Clayton Crenshaw, Assistant Attorney General;

4. Grantt Culliver, Warden of Holman Correctional Facility;

5. James W. Davis, Assistant Attorney General;

6. Christine A. Freeman, Counsel for Appellant;

7. Hon. Mark E. Fuller, United States District Judge;

8. Thomas M. Goggans, Counsel for Appellant;

9. Linda Jarman, capital murder victim;

10. Hon. Troy King, Alabama Attorney General;

11. Corey L. Maze, Assistant Attorney General;

12. Jasper B. Roberts, Jr., Assistant Attorney General;

13.    Daniel Siebert, death row inmate and appellant;

14.    Chad Weathers, capital murder victim;

15.    Joseph Weathers, capital murder victim; and

16.    Sherri Weathers, capital murder victim.

J. Clayton Crenshaw (CRE007)
*Alabama Assistant Attorney General*

## STATEMENT OF COUNSEL

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decisions of the Supreme Court of the United States or the precedents of this circuit and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this Court:

### Issue I

1. Hill v. McDonough, __ U.S. __, 126 S. Ct. 2096 (2006).

2. Nelson v. Campbell, 541 U.S. 677, 124 S. Ct. 2117 (2004).

3. Arthur v. King, 500 F.3d 1335, 1343-44 (11th Cir. 2007).

### Issue II

1. Nelson v. Campbell, 541 U.S. 677, 124 S. Ct. 2117 (2004).

2. Calderon v. Thompson, 523 U.S. 538, 118 S. Ct. 1489 (1998).

3. Jones v. Allen, 485 F.3d 635 (11th Cir. 2007).

4. Grayson v. Allen, 460 F.3d 1328 (11th Cir. 2007).

J. Clayton Crenshaw (CRE007)
*Alabama Assistant Attorney General*

i

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..................................................... C-1

STATEMENT OF COUNSEL ................................................................................ i

TABLE OF AUTHORITIES ................................................................................ iii

STATEMENT OF THE ISSUES........................................................................... 1

STATEMENT OF THE COURSE OF PROCEEDINGS AND
DISPOSITION OF THE CASE............................................................................ 2

      A.     District Court Proceedings....................................................... 3

      B.     Proceedings In This Court ...................................................... 6

I.     THE PANEL OPINION IS IN CONFLICT WITH THE
REQUIREMENT STATED IN HILL AND NELSON THAT
REQUIRES A STAY APPLICANT TO ESTABLISH A
SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE
MERITS.......................................................................................... 7

II.    THE PANEL OPINION IS IN CONFLICT WITH
SETTLED PRECEDENT FROM THIS COURT AND THE
SUPREME COURT THAT RECOGNIZES A STATE'S
INTEREST IN CARRYING OUT A SENTENCE OF
DEATH IN A TIMELY MANNER .............................................. 11

CONCLUSION................................................................................................. 14

CERTIFICATE OF SERVICE .......................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

Arthur v. King, 500 F.3d 1335 (11th Cir. 2007).................................................. i, 10

Baze v. Rees, No. 07-5439, 2007 WL 2850507 (U.S. Oct. 3, 2007)........................ 4

Calderon v. Thompson, 523 U.S. 538, 118 S. Ct. 1489 (1998)........................... i, 13

Ex parte Siebert, 555 So. 2d 780 (Ala. 1989) ................................................. 2

Ex parte Siebert, 562 So. 2d 600 (Ala. 1990) ................................................. 2

Grayson v. Allen, 460 F.3d 1328 (11th Cir. 2007) ........................................... i, 13

Hill v. McDonough, __ U.S. __, 126 S. Ct. 2096 (2006) ............................... passim

Jones v. Allen, 485 F.3d 635 (11th Cir. 2007)................................................ i, 13

Nelson v. Campbell, 541 U.S. 637, 124 S.Ct. 2117 (2004)............................ passim

Siebert v. Allen, __ F.3d __, 2007 WL 3104941 (11th Cir. Oct. 25, 2007).......................................................................................................... 6

Siebert v. Allen, __ F.3d __, 2007 WL 3244633 (11th Cir. Nov. 5, 2007).......................................................................................................... 7

Siebert v. Allen, __ F.3d __, 2007 WL 3244640 (11th Cir. Nov. 5, 2007).......................................................................................................... 7

Siebert v. Allen, 07-14956 (11th Cir. Oct. 24, 2007) .................................. 6

Siebert v. State, 555 So. 2d 772 (Ala. Crim. App. 1989) ............................ 2

Siebert v. State, 778 So. 2d 842 (Ala. Crim. App. 1989) ........................... 2

Thompson v. Wainwright, 714 F.2d 1495 (11th Cir. 1983) ..................... 13

## STATEMENT OF THE ISSUES

1.     On this particular record is the panel opinion in conflict with the requirement stated in <u>Hill</u> and <u>Nelson</u> that requires a stay applicant to establish a substantial likelihood of success on the merits when the only evidence supporting Siebert's as applied claim is a one and a half page unsworn letter from an oncologist who has not physically examined Siebert?

2.     Is the panel opinion in conflict with settled precedent from this Court and the Supreme Court that recognizes a State's interest in carrying out a sentence of death in a timely manner?

## STATEMENT OF THE COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE

Daniel Siebert ("Siebert") has been on Alabama's death row for over twenty years for the capital murder of Sherri Weathers and her two children, Chad and Joey. Siebert v. State, 555 So. 2d 772, 773-75 (Ala. Crim. App. 1989), aff'd, Ex parte Siebert, 555 So. 2d 780 (Ala. 1989).[1] It was only after his habeas proceedings concluded and he faced imminent execution did Siebert file a § 1983 action challenging Alabama's execution procedures.[2] See Doc. 1 (filed on April 9, 2007). Siebert's original complaint raised a general challenge to the methods and procedures the State of Alabama employs in carrying out executions by lethal injection. See id.

On July 19, 2007, Siebert filed an amended complaint adding a cause of action "on the basis of his recent preliminary diagnosis of hepatitis C and pancreatic cancer." Doc. 21 at ¶ 2. The district court interpreted Siebert's allegation as follows: "Siebert ... urges a specific challenge to that method of execution as it will be applied to him with his particular medical problems and the particular potential drug interactions between drugs he is taking for his medical

---

[1] Siebert was also sentenced to death for committing a different capital offense on the same evening. Siebert v. State, 778 So. 2d 842 (Ala. Crim. App. 1989), aff'd, Ex parte Siebert, 562 So. 2d 600 (Ala. 1990). The federal district court's order refers to that case as the "Jarman murder." Doc. 70 at 6 n.7.

[2] On July 30, 2007, the Alabama Supreme Court entered an order setting Siebert's execution for October 25, 2007. See Doc. 22.

problems and the drugs used in the lethal injection protocol." Doc. 39 at 7. Siebert

brought his as applied claim specifically under <u>Nelson v. Campbell</u>, 541 U.S. 637,

124 S.Ct. 2117 (2004). See Doc. 32 at 2.

## A.    District Court Proceedings

Even though the Alabama Supreme Court on July 30, 2007, set Siebert's

execution for October 25, 2007, see Doc. 22, Siebert did little to nothing to

expedite his as applied claim in the district court. On September 26, 2007, two

months after raising the as applied claim, Siebert gave his first noticeable

indication that he was seeking evidence to support his claims. On that day,

Siebert filed a motion requesting access to a physician. See Doc. 32. In the

motion, Siebert stated that "[s]uch an examination is necessary to [his]

presentation of his claims, which include potential complications between his

medical condition, its treatment, and the lethal injection process as conducted by

the Defendants." Doc. 32 at 1. The Magistrate Judge entered an order several

days later, on September 28, 2007, that granted Siebert's motion and that further

stated such "access" should take place within a week. Doc. 35. Siebert did not

schedule an evaluation within that time period and, to this very day, still has not

scheduled a physician's evaluation.

On October 3, 2007, the district court granted in part and denied in part the

Commissioner's motion to dismiss Siebert's amended complaint. See Doc. 39.

3

The district court ruled that "this Court is compelled to find that with respect to Siebert's general challenges to the execution protocol, Siebert is not entitled to injunctive relief because he delayed in filing his method-of-execution § 1983 suit until his execution was imminent." Doc. 39 at 18. However, the district court denied the Commissioner's request to dismiss Siebert's as applied claim, ruling that Siebert did not unreasonably delay in filing that claim. Although the district court entered this order at least three weeks before the scheduled execution, Siebert did not seek any discovery or an expedited hearing of his claim.

On October 9, 2007, Siebert filed "Plaintiff's Emergency Motion for Preliminary Injunction to Stay Execution." See Doc. 44. In that motion, Siebert contended primarily that a stay of execution should be granted because the United States Supreme Court has granted certiorari in <u>Baze v. Rees</u>, No. 07-5439, 2007 WL 2850507 (U.S. Oct. 3, 2007), that will, according to Siebert's motion, decide the standard for determining what is cruel and unusual punishment under the Eighth Amendment. Doc. 44 at 1-6. Although Siebert attached numerous exhibits to his motion for a stay, see Doc. 70 at 21 (listing exhibits), none of them supported his as applied claim. Thus, as of October 9, 2007, Siebert had not submitted one whit of evidence in support of his as applied claim. However, in his reply brief (filed on October 19, 2007), Siebert submitted a one and a half page (unsworn) letter from Dr. Jimmie Harvey, an oncologist, that stated several

"carefully qualified" opinions regarding Siebert's condition. Doc. 70 at 29. First,

Dr. Harvey's letter expressed "concern about regurgitation that <u>can</u> <u>be</u> caused by

the administration of Sodium Thiopental and Pancuronium Bromide especially

because Siebert will be lying flat." <u>Id.</u>[3] (emphasis in original). Second, "[t]he

other concern Dr. Harvey raises is about Siebert having compromised venous

access that could increase the risk of intravenous malfunction." <u>Id.</u> at 29-30. The

district court noted that Dr. Harvey's opinion was based "on his review of

Siebert's medical records which indicate that he has been wasting away [footnote

omitted] due to his diseases rather than on an actual inspection of Siebert's veins."

<u>Id.</u> at 30.

The district court ultimately denied Siebert's request for a stay because

"Siebert has not established a substantial likelihood of success on the merits of

[his as applied] claim." <u>Id.</u> at 29. The district court further noted that Siebert's as

applied claim was "speculative" and "unsupported." <u>Id.</u> at 31. The district court

stated that its "concerns about Dr. Harvey's opinions are increased by its review

of the countervailing expert testimony from Dr. Mark Dershwitz, an M.D. with a

Ph.D in Pharmacology, whose sworn testimony and curriculum vitae are before

---

[3] The district court emphasized that Dr. Harvey's opinion regarding regurgitation does not appear "in any way related to Siebert's unique physical condition." Doc. 70 at 29-30 n. 31. Thus, that part of Dr. Harvey's opinion "relates only to general challenges to the use of the three-drug cocktail generally and not to the Siebert-specific challenge to the method of execution." <u>Id.</u> The district court finally noted that "general <u>Hill</u>-type challenges are not properly before this Court on [the motion for a stay.]" <u>Id.</u>

this Court." Id. at 30. Dr. Dershwitz's affidavit concluded that "the administration of the medications as Alabama administers them results in the rapid and painless death of the inmate." Id. Finally, the district court stated that "given the speculative or unsupported nature of Siebert's Nelson-type claims, this Court must take care not to ignore the State of Alabama's 'significant interest in meting out a sentence of death in a timely fashion.'" Id. at 31 (quoting Nelson, 541 U.S. at 650).

## B.    Proceedings In This Court

On October 24, 2007, this Court entered a per curiam majority opinion reversing the district court's denial of a stay of execution. Siebert v. Allen, 07-14956 (11th Cir. Oct. 24, 2007). Specifically, the panel decision reversed "the district court's denial of Siebert's Emergency Motion for a Preliminary Injunction and we STAY his execution pending the Supreme Court's resolution of Baze v. Rees, after which the district court shall reconsider its decision in light of any guidance provided in the Supreme Court's disposition of that case." Id. The special concurring opinion did not agree with the majority's analysis but instead would have granted a stay of execution on Siebert's as applied claim. Id.

On rehearing en banc, this Court vacated the panel opinion and stayed the execution "pending further en banc consideration of this case." Siebert v. Allen, ___ F.3d ___, 2007 WL 3104941 (11th Cir. Oct. 25, 2007). This Court subsequently

6

vacated its order granting the petition for en banc consideration and "remanded to the panel for consideration of the issues raised by State of Alabama in its Petition for Rehearing En Banc." <u>Siebert v. Allen</u>, __ F.3d __, 2007 WL 3244640 (11th Cir. Nov. 5, 2007).

On remand, this Court issued a panel opinion that affirmed "the district court's denial of a preliminary injunction on Siebert's general challenge to Alabama's three-drug protocol." <u>Siebert v. Allen</u>, __ F.3d __, 2007 WL 3244633 at *2, n.3 (11th Cir. Nov. 5, 2007). However, the panel opinion "conclude[d] that the district court abused its discretion in denying preliminary injunctive relief as to Siebert's 'as applied' claim." <u>Id.</u> at *2. The panel opinion based this ruling on: (1) "the timeliness of the filing of Siebert's 'as applied' claim," (2) "Dr. Harvey's evaluation" and, (3) "the unique situation presented by Siebert's terminal pancreatic cancer." <u>Id.</u>

## I.   THE PANEL OPINION IS IN CONFLICT WITH THE REQUIREMENT STATED IN <u>HILL</u> AND <u>NELSON</u> THAT REQUIRES A STAY APPLICANT TO ESTABLISH A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

On the strength of two conclusions offered by Dr. Harvey, the panel opinion ruled that Siebert had established a "substantial likelihood of success on the merits." <u>Siebert</u> at *2. First, the panel opinion noted that "there is a 'great likelihood' that Siebert would regurgitate stomach content when administered the three-drug protocol and aspirate prior to death." <u>Siebert</u> at *2. Second, "Dr.

Harvey also noted that Siebert will have 'very compromised venous access' due to his particular serious medical contentions." Id.  Under close scrutiny, however, Dr. Harvey's opinions either do not relate to Siebert's as applied claim or are not supported by Siebert's medical records.  Because Dr. Harvey's letter is the only item supporting the merits of Siebert's as applied claim, Siebert failed to establish a substantial likelihood of success on the merits.  Thus, the panel opinion is in conflict with Hill and Nelson that require a stay applicant to satisfy all the requirements for a stay, including a showing of a significant possibility of success on the merits." Hill v. McDonough, 126 S. Ct. 2096, 2104 (2006); Nelson, 541 U.S. at 649-50, 124 S. Ct. at 2126 (emphasis added).

As stated above, Dr. Harvey first concludes that "there is a 'great likelihood' that Siebert would regurgitate stomach content when administered the current three-drug protocol and aspirate prior to death." Siebert at *2.  The panel opinion fails to acknowledge a key fact – namely, Dr. Harvey's opinion concerns every inmate subject to execution who lies flat on their back.  Thus, Dr. Harvey's opinion does not in anyway relate to Siebert's as applied claim.  Indeed, the district court rejected that part of Dr. Harvey's opinion because it related to Siebert's general method-of-execution challenge, an issue which was not before the district court on the stay motion. See Doc. 70 at 29-30 n.31.  As a result, the district court stated that "[w]hile Dr. Harvey mentions that Siebert has an

obstructive upper gastrointestinal tract due to his tumor, <u>he in no way connects</u> <u>that to the possibility that the lethal injection drugs might cause vomiting</u>." <u>Id.</u> (emphasis added).   Accordingly, the district court ruled that "[i]t seems that the regurgitation/choking on his own vomit while lying flat evidence from Dr. Harvey relates only to <u>general challenges</u> to the use of the three-drug cocktail generally and not to the Siebert-specific challenge to the method of execution." <u>Id.</u> (emphasis added).[4]  The panel opinion does not indicate that it thought the district court made an incorrect finding; it just apparently chose to ignore it.  In any event, one of Dr. Harvey's opinions relied on by the panel opinion is in no way related to Siebert's as applied claim.

The panel opinion also relied on Dr. Harvey's conclusion that "[b]ecause Mr. Siebert is cachetic he will have very compromised venous access increasing his risk of intravenous malfunction." <u>Siebert</u> at *2; also see Doc. 64, Exhibit D (Dr. Harvey's letter).  The district court did not reject Dr. Harvey's opinion out of hand but did seem to question its validity.  First, the district court noted that Dr. Harvey based his conclusion "on his review of Siebert's medical records which indicate that he has been wasting away [footnote omitted] due to his diseases rather than on an actual inspection of Siebert's veins." Doc. 70 at 30.  The district

---

[4] Considering that 929 inmates have been executed by lethal injection since 1976, see www.deathpenaltyinfo.org (last visited Nov. 15, 2007), it would seem there would be actual support out there in there in the public domain for Dr Harvey's "regurgitation theory."

court also noted that "[t]here is no indication in Dr. Harvey's letter that the medical records make mention of difficulty accessing Siebert's veins." Id. at 30 n.32. Thus, it appears the second part of Dr. Harvey's opinion that was relied upon by the panel opinion is not supported by any of Siebert's medical records or by an actual evaluation.

The panel opinion's ruling that was based on Dr. Harvey's letter is in conflict with the requirement that a stay applicant must establish a "substantial likelihood of success on the merits." Hill, 126 S. Ct. at 2104; Nelson, 541 U.S. at 649-50, 124 S. Ct. at 2126. Although this phrase has not been defined, it certainly requires a more substantial showing than that made by Siebert.

Finally, the State notes that the district court ruled that Dr. Harvey's letter was of "limited utility" because, among other reasons, it is not "a sworn affidavit [] nor a declaration under penalty of perjury." Doc. 70 at 23. The district court's ruling is in accord with Arthur v. King, 500 F.3d 1335, 1343-44 (11th Cir. 2007), that held the district court acted appropriately in not considering an unsworn affidavit. The panel opinion's reliance on an unsworn letter to wholly support its conclusion that Siebert established a likelihood of success on the merits is in conflict with Arthur.

10

## II. THE PANEL OPINION IS IN CONFLICT WITH SETTLED PRECEDENT FROM THIS COURT AND THE SUPREME COURT THAT RECOGNIZES A STATE'S INTEREST IN CARRYING OUT A SENTENCE OF DEATH IN A TIMELY MANNER

It should be emphasized that this case is on appeal from the denial of a stay of execution.  The <u>Nelson</u> Court held that "[a] stay is an equitable remedy, and equity must take into consideration the State's strong interest in proceeding with its judgment and attempts at manipulation." <u>Nelson</u>, 541 U.S. at 649, 124 S. Ct. at 2126 (internal punctuation omitted).  The <u>Nelson</u> Court further stated that "there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." <u>Id.</u>  Contrary to the panel's opinion, the equitable presumptions against granting a stay apply to Siebert's as applied claim.  See Doc. 32 at 2.

Although Siebert may not have unjustifiably delayed in raising his as applied claim, the strong equitable presumption against granting a stay exists because Siebert inexcusably delayed after filing the claim.  Despite raising his as applied claim on July 19, 2007, see Doc. 21 (amended complaint), Siebert incredibly did nothing "to expedite any aspect of this lawsuit." Doc. 70 at 6.  Two months after filing his amended complaint, Siebert filed a motion to allow a physician to perform a "general physical examination." Doc. 32 at 1 (filed on September 26, 2007).  Siebert further stated in that motion that "[s]uch an

11

examination is necessary to Mr. Siebert's presentation of his claims, which include potential complications between his medical condition, its treatment, and the lethal injection process as conducted by the Defendants." Id. Even though Siebert's motion was granted, see Docs. 35, 40, such an examination has not been scheduled to this day. In addition, Siebert has not presented any evidence to support his conclusion that the pain medication he is presently taking will counteract the effects of the drugs used in a lethal injection, which is the primary allegation in his amended complaint. Doc. 70 at 17.

If Siebert had truly wanted to litigate his as applied claim, he would have sought to expedite the case. Although Siebert had three months from the time he filed his as applied claim until his scheduled execution, he did not take any action to litigate this claim. The district court found, with no dispute from Siebert, that "[at no point since the Alabama Supreme Court set his execution [in an order entered on July 30, 2007] has Siebert asked this Court to expedite any aspect of this lawsuit." Doc. 70 at 6 n.8.

The balance of the equities stated in Nelson must be applied here. There can be no dispute that Siebert has not taken any action to litigate his as applied claim. Siebert's lack of action is an indication of his "attempt at manipulation." Nelson, 541 U.S. at 649, 124 S. Ct. at 2126. "Moreover, given the speculative or unsupported nature of Siebert's Nelson-type claims, this Court must take care not

to ignore the State of Alabama's 'significant interest in meting out a sentence of death in a timely fashion.'" Doc. 70 at 31 (quoting Nelson, 541 U.S. at 650). The Supreme Court recognizes that the State's strong interest in meting out a sentence of death in a timely manner acquires "an added moral dimension" when post-trial proceedings have run their course. See Calderon v. Thompson, 523 U.S. 538, 556, 118 S. Ct. 1489 (1998). "To unsettle these expectations is to inflict a profound injury to the powerful and legitimate interest in punishing the guilty, an interest shared by the State and the victims of crime alike." Id. (internal citation and quotation marks omitted). Even a cursory review of this Court's precedent affirms this interest. See, e.g., Jones v. Allen, 485 F.3d 635, 640 (11th Cir. 2007) ("We will not interfere with the State's strong interest in enforcing its judgment in this case."); Grayson v. Allen, 460 F.3d 1328, 1342 (11th Cir. 2007) ("[T]he government has a strong interest in the finality of duly adjudicated criminal judgments."); Thompson v. Wainwright, 714 F.2d 1495, 1506 (11th Cir. 1983) ("Each delay, for its span, is a commutation of a death sentence to one of imprisonment."). The sentiment is firmly rooted in the jurisprudence of this circuit, and the panel opinion is in conflict with these cases.

## CONCLUSION

For the foregoing reasons, this Court should grant this petition and affirm the district court's denial of the stay of execution.

Respectfully submitted,

Troy King
*Alabama Attorney General*

J. Clayton Crenshaw
*Alabama Assistant Attorney General*

14

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2007, I filed the foregoing with the

United States Court of Appeals for the Eleventh Circuit and served a copy as

follows:

Anne E. Borelli
Federal Defender's Office
201 Monroe Street, Suite 407
Montgomery, AL 36104

Thomas M. Goggans
529 S. Perry Street, Suite 14-F
Montgomery, AL  36104

Christine Freeman
Federal Defender's Office
201 Monroe Street, Suite 1960
Montgomery, AL  36104

J. Clayton Crenshaw
*Alabama Assistant Attorney General*

ADDRESS OF COUNSEL:

Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, AL 36130
(334) 242-7300 Office
(334) 353-3637 Fax
ccrenshaw@ago.state.al.us